**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
55 Broadway, 10th Floor
New York, New York 10006
Tel.:  (212) 363-7500
Fax:  (212) 363-7171
Email: ek@zlk.com

*Counsel for Movant Matthew Dass*
*and Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN AND JUNE VITIELLO, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:20-cv-04240-MCA-MAH |
| Plaintiff, | **MOVANT MATTHEW DASS'S OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF** |
| v. | |
| BED BATH & BEYOND INC., MARK J. TRITTON, MARY A. WINSTON, and ROBYN M. D'ELIA, | **MOTION DATE: July 20, 2020** |
| Defendants. | |
| JERRY KIRKLAND, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 2:20-cv-05339-MCA-MAH |
| v. | |
| BED BATH & BEYOND INC., MARK J. TRITTON, MARY A. WINSTON, and ROBYN M. D'ELIA, | |
| Defendants. | |

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................1

II.   ARGUMENT...................................................................................................3

A. The PSLRA Process ...................................................................................3

B. Bakhda Does Not Have Any Financial Interest in the Litigation. ..................4

C. Bakhda Will Face Numerous Challenges If Appointed Lead Plaintiff. ..........6

1. Bakhda's Assignment Will Be Contested for Lack of Consideration. ......7

2. Bakhda's Role in the Litigation Is to Conceal His Mother's History of Securities Fraud. ..................................................................................8

3. Bakhda Cannot Testify about His Mother's Investment Strategy. ..........11

4. Bakhda's Foreign Residence Raises Additional Issues that Prevent the Court from Appointing Him as Lead Plaintiff. ........................................12

5. Bakhda Has Not Been Fully Candid to the Court Regarding The Assignment. ..........................................................................................13

D. Bakhda Has Failed to Make a *Prima Facie* Showing of Adequacy..............14

E. Kahn Cannot Trigger the Lead Plaintiff Presumption..................................16

1. Kahn has Failed to Make a Prima Facie Showing of Adequacy..............16

2. Kahn is Atypical Because Was Betting Against the Company During the Class Period ...................................................................................17

F. Dass is the Most Adequate Lead Plaintiff ...................................................18

III.   CONCLUSION..............................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Aviva Life & Annuity Co.* v. *Davis*,
    20 F. Supp. 3d 694 (S.D. Iowa 2014) ................................................................12

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988)............................................................................................11

*Beck v. Maximus, Inc.*,
     457 F.3d 291, 301 (3d Cir. 2006) .......................................................................7

*Blue Chip Stamps* v. *Manor Drug Stores,*
    421 U.S. 723 (1975)...................................................................................... 11, 12

*In re Boeing Co. Aircraft Sec. Litig.*,
    2019 U.S. Dist. LEXIS 198259 (N.D. Ill. Nov. 15, 2019) ......................... 15, 16

*In re BP P.L.C. Sec. Litig.,* MDL No. 4:10-md-2185, 2016 U.S. Dist. LEXIS
    417 (S.D. Tex. Jan. 4, 2016) ..................................................................... 8, 9, 10

*Buettgen v. Harless,*
    263 F.R.D. 378 (N.D. Tex. 2009).......................................................................13

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) ..................................................................... 3, 4, 6, 16

*CP Stone Fort Holdings, LLC v. Doe,*
    No. 16-cv-4991, 2016 U.S. Dist. LEXIS 141078 (N.D. Ill. Oct. 11, 2016).......10

*In re Critical Path, Inc. Sec. Litig.,*
    156 F. Supp. 2d 1102 (N.D. Cal. 2001)..............................................................18

*Degulis v. LXR Biotechnology, Inc.,*
    176 F.R.D. 123 (S.D.N.Y. 1997) .......................................................................11

*In re Fine Paper Litig. State of Wash.*,
    632 F.2d 1081 (3d Cir. 1980) .............................................................................13

*Gross v. AT&T Inc.,*
    No. 19-CV-2892-VEC, 2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. June 24,
    2019) ...................................................................................................................16

*In re IMAX Securities Litigation*,
No. 06-cv-6128, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009).........8

*Karp v. Diebold Nixdorf, Inc.,*
2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019)......................... 15, 16

*In re Merck & Co., Inc. Securities,*
No. 05-cv-1151, 2013 U.S. Dist. LEXIS 13511 (D.N.J. Jan. 20, 2013) ............18

*In re Oxford Health Plans, Inc. Sec. Litig.*
182 F.R.D. 42 (S.D.N.Y. 1998) ....................................................................7

*Perez v. Hexo Corp.*,
2020 U.S. Dist. LEXIS 32381 (S.D.N.Y. Feb. 25, 2020) ...................... 4, 14, 16

I*n re PharmaPrint, Inc. Sec. Litig.,*
No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845 (D.N.J. April 17, 2002) . 18, 19

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,*
275 F.R.D. 187 (S.D.N.Y. 2011) ..................................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.,*
229 F.R.D. 395 (S.D.N.Y. 2004) .............................................................. 10, 15

*Rocco v. Nam Tai Elecs., Inc.,*
245 F.R.D. 131 (S.D.N.Y. 2007) .................................................................18

*Ross v. RBS Citizens,*
N.A., No. 09-cv-5695, 2010 U.S. Dist. LEXIS 107779 (N.D. Ill. Oct. 8, 2010) ......................................................................................................9

*Sanfilippo v. Edge Thereapeutics, Inc.*,
No. 18-8236-JLL-JAD, 2018 U.S. Dist. LEXIS 233700 (D.N.J. Dec. 7, 2018) ......................................................................................................7

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595-596 (3d Cir. 2009) ......................................................................................................6

*Searcy v. eFunds Corp.,*
No. 08-C-985, 2010 U.S. Dist. LEXIS 31627 (N.D. Ill. Mar. 31, 2010) ...........10

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007).................................................................13

iv

*Sklar v. Amarin Corp. PLCC.,*
C.A. No. 13-cv-06663-FLW-TJB, 2014 U.S. Dist. LEXIS 103051 (D.N.J.
July 29, 2014).................................................................................................7

*In re SLM Corp. Sec. Litig.,*
258 F.R.D. 112 (S.D.N.Y. 2009) ...................................................................8

*Smith v. Ayres,*
977 F.2d 946 (5th Cir. 1992) .......................................................................11

*Sokolow v. LJM Funds Mgmt.,*
No. 18-cv-01039, 2018 U.S. Dist. LEXIS 107339 (N.D. Ill. June 26, 2018) 9, 15

*Sprint Communications Co., L.P. v. APCC Services, Inc.,*
554 U.S. 269 (2008)....................................................................................6, 8

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.,*
No. 11-6247-JBS-KMW, 2012 U.S. Dist. LEXIS 118693 (D.N.J. Aug. 22,
2012) ..........................................................................................................7, 14

*Stoneridge Inv. Partners, LLC v. Sci.–Atlanta, Inc.,*
552 U.S. 148 (2008).....................................................................................17

*Tomaszewski v. Trevena, Inc.,*
383 F. Supp. 3d 409 (E.D. Pa. 2019)........................................................4, 17

*In re Vonage Initial Pub. Offering Sec. Litig.,*
No. 07-cv-177-FLW, 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 7, 2007).....17

*Wallach v. Eaton Corp.,*
837 F.3d 356 (3d Cir. 2016) ..........................................................................7

*Weikel v. Tower Semiconductor, Ltd.,*
183 F.R.D. 377 (D.N.J. 1998)................................................................. 11, 18

*Weisz v. Calpine Corp.,*
No. 4:02-cv-1200, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 15, 2002) ..18

**Statutes**

15 U.S.C. § 78u-4(a) .................................................................... passim

**Other Authorities**

H.R. Conf. Rep.
No. 104-369 (1995) reprinted in 1995 U.S.C.C.A.N. 730 ...................................4

## I.    PRELIMINARY STATEMENT

Of the movants who timely filed motions to be appointed lead plaintiff, Matthew Dass is the movant "most capable of adequately representing the interests of class members" and, accordingly, the Court should appoint him lead plaintiff in this securities fraud class action lawsuit. When enacting the Private Securities Litigation Reform Act of 1995, Congress was concerned about the lack of supervision by lead plaintiffs over the prosecution and settlement of securities class actions and determined that the best supervision would be undertaken by lead plaintiffs with the greatest financial interest in the litigation and are not otherwise adverse to or atypical from the class. Dass fits that bill. As explained below, Dass holds the largest financial interest in this litigation, does not have any interests adverse to the class, and meets the adequacy requirements for the purposes of serving as the lead plaintiff.

Movant Kavid Bakhda, though he claims a loss of $824,034.87, has zero financial interest in the litigation. In fact, Bakhda's only connection to this lawsuit is by way of an assignment from his mother, Ragini Dhanvantray. While Bakhda's mother could have filed a motion for lead plaintiff on her own behalf, she opted not to in favor of having her son stand in her place. Her assignment, however, explicitly requires her son to remit any and all proceeds from the lawsuit. Consequently, Bakhda is left with zero financial interest in this lawsuit and has no incentive to actively prosecute this case or maximize the recovery for the class. Appointing Bakhda would thus directly contradict Congress's purpose in enacting the lead plaintiff provisions of the PSLRA and would likely leave the management and prosecution of this class action entirely in the hands of proposed lead counsel without any effective supervision.

In addition to having no financial interest in the litigation, Bakhda is inadequate to represent the class. Pursuant to the PSLRA, a movant cannot be

1

appointed lead plaintiff if he or she is subject to unique defenses that risk becoming a focus of the litigation. There are at least four issues concerning Bakhda that potentially disqualify him from adequately representing the class. *First*, Bakhda's ability to demonstrate his standing to participate in this lawsuit rests squarely on the validity of the assignment from his mother, Ms. Dhanvantray. The assignment, however, does not specify any consideration given in exchange and, therefore, may be invalid. *Second*, the purpose of the assignment itself appears to be related to the fact that Ms. Dhanvantray recently pleaded guilty to securities fraud charges under Singapore's Companies Act. Thus, the assignment is nothing but a facile attempt to conceal the charges from this Court and the class at large. *Third*, if allowed to serve as lead plaintiff, Bakhda will be unable to testify as to the reasons his mother invested in BBBY, why she purchased exotic option instruments, or any other material aspect of the case. *Fourth*, appointing Bakhda runs a serious risk that any judgment obtained in this case may not be enforced, as Bakhda could relitigate claims in Singapore (his country of residence) if he is unsatisfied with the outcome of this case (regardless of the class's interests).

In stark comparison, Dass personally purchased his shares of BBBY on the open market, and his interests exactly align with those of the unnamed class members. Moreover, Dass is a sophisticated investor with more than twelve years of investing experience, has a master's degree in clinical psychology, and resides in Indianapolis, Indiana.  Dass is entitled to appointment as Lead Plaintiff as the only movant with the largest financial interest that otherwise meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Further, because the competing movants cannot offer any proof demonstrating that Dass fails to meet the typicality or adequacy requirements of Rule, his motion should be granted in its entirety.

2

## II.   ARGUMENT

### A.   The PSLRA Process

The PSLRA sets forth the procedure for the selection of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see* 15 U.S.C. §78u-4(a)(3)(B). Following the required notice announcing the class action, class members interested in serving as Lead Plaintiff and required to file a motion seeking such relief within 60 days thereafter. 15 U.S.C. § 78u-4(a)(3)(A)(i). From the movants that file timely motions, the court then selects the one that "has the largest financial interest in the relief sought by the class" that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Whichever movant the court selects on this issue is presumed to be the "most adequate plaintiff" to serve as Lead Plaintiff and, according to the PSLRA, shall be appointed so. *Id*.

The Court is to not simply presume "that the movant with the largest financial interest in the relief sought by the class satisfies the typicality and adequacy requirements." *In re Cendant Corp. Litig.,* 264 F.3d 201, 264 (3d Cir. 2001). Rather, the Court should identify the movant with the largest loss, and then question if the movant otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, to determine if that movant is the presumptively most adequate plaintiff. *Id*.

If the Court then finds that the movant with the largest loss "cannot make a threshold showing of typicality or adequacy, then the court should explain its reasoning on the record . . . and disqualify that movant from serving as lead plaintiff." *Cendant*, 264 F.3d at 267. The Court must then repeat the process with the movant with the next largest loss until a presumptive lead plaintiff is identified. *Id*.

**B.      Bakhda Does Not Have Any Financial Interest in the Litigation.**

Bakhda's assignment states, in pertinent part, that he shall "remit any proceeds received as a result of this assignment to the Assignor," his mother, Dhanvantray. Dkt. No. 19-5. Consequently, regardless of Bakhda's standing to pursue these claims, he possesses zero financial interest in the outcome of the litigation. Appointing Bakhda as the lead plaintiff would, therefore, contradict the spirit of the PLSRA.

Indeed, when Congress enacted the PSLRA in 1995, it sought to ensure that "'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders" would be appointed lead plaintiff, thus protecting the class from lawyer-driven litigation. *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 412, n.11 (E.D. Pa. 2019); *see also Cendant*, 264 F.3d at 266 "[T]he goal of the [PSLRA's] lead plaintiff provision is to locate a person or entity whose sophistication and ***interest in the litigation*** are sufficient to permit that person or entity to function as an ***active agent*** for the class[.]" (*citing* H.R. Conf. Rep. No. 104-369, at 32 (1995) reprinted in 1995 U.S.C.C.A.N. 730, 731; S. Rep. No. 104-98, at 10 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 689; Weiss & Beckerman, 104 Yale L.J. at 2105—06).

The PSLRA also sought to ensure that courts would appoint a lead plaintiff that "will play a ***meaningful role*** in limiting…lawyer-driven litigation…[and] who would be ***motivated*** to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation is delivered[.]" *Perez v. Hexo Corp.*, 2020 U.S. Dist. LEXIS 32381, at *5 (S.D.N.Y. Feb. 25, 2020) (emphasis added, internal quotations & citations omitted). Given the purpose behind the PSLRA, appointing Bakhda, an individual with zero financial interest in the outcome of the litigation, would be entirely at odds with the statute. He cannot function as an active agent for the Class, nor is he at all motivated, as

4

Congress intended the lead plaintiff to be, because he has no stake in the outcome of the litigation.

Without anything at stake, there will be no assurance that Bakhda will act in the best interests of the class and not, for example, at the sole direction of his lawyers. For example, the Court can already see a pattern of misrepresentations being drawn by Bakhda's counsel in his opening brief. Repeatedly, Bakhda tells the Court that he is similarly situated as other class members by suffering losses, but this is simply not the case. *See* Dkt No. 19-2 at *2 ("Mr. Bakhda lost approximately $824,0262 on Bed Bath & Beyond securities during the Class Period."; *Id*. at *6 (same); *Id*. at *8 ("Mr. Bakhda's claims are typical of the Class in that he: (i) suffered the same injuries as a result of the same, or substantially the same, course of conduct by the named Defendants); *Id*. at *7 ("Mr. Bakhda has the largest financial interest in this litigation"); *Id*. at *8 ("Mr. Bakhda's claims are typical of the Class in that he: (i) suffered the same injuries[.]"); *Id.* at *9 ("Mr. Bakhda and members of the Class have the same interest…[and] [b]ecause of [his] financial stake in the litigation…Class members can be assured that [he] has the incentive to vigorously prosecute the claims."). Bakhda has not "suffered the same injuries" as the Class or suffered any losses in connection with the claims in this litigation. Indeed, in his memorandum of law arguing that he in the identical circumstance as purchasers of BBBY securities on the open market, Bakhda never mentions that he personally *never* purchased a single BBBY security during the Class Period and is only asserting claims based on purchases by Dhanvantray. Bakhda barely mentions the assignment of claims from Dhanvantray, relegating it to a mere footnote. *Id*. at 2, n.2. Yet, nowhere in his memorandum of law, , does Bakhda or his counsel mention that all proceeds are being remitted back to Dhanvantray and that, therefore, he will personally receive nothing as a result of this litigation.

This question of Bakhda's financial interest is entirely separate from whether or not Bakhda may have Constitutional standing to serve as plaintiff. Under *Sprint Communications Co., L.P. v. APCC Services, Inc.,* 554 U.S. 269, 271-72, (2008), an assignment from Dhanvantray to Bakhda may be sufficient to confer standing under Article III, even though it requires the remittance of all proceeds back to Dhanvantray. But this says nothing about Bakhda's financial interest in the litigation, the relevant consideration under the PSLRA. Dhanvantray's financial interest is not his own. Although remitting payments back to assignors is valid for Article III's redressability inquiry, redressability is not be conflated with the "largest financial interest" inquiry under the PSLRA. *See Sprint*, 554 U.S. at 286. Redressability for Article III standing *does not* cure the blatant fact that Bakhda possesses *no interest* nor benefit to keep him engaged in the litigation as an active agent for the class. Whether this case settled for $1, $100 million, or is dismissed entirely - Bakhda would still be getting $0 because **he is not a class member**.

Ultimately, Bakhda does not have a financial interest in these Actions, **at all**, he does not trigger the presumption of "most adequate lead plaintiff". Therefore, the Court need not address his typicality and adequacy under Rule 23. *See Cendant*, 264 F.3d at 264 (the court must first identify "the movant with the largest financial interest in the relief sought by the class" *and then* question if that movant satisfies the requirements of Rule 23); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Regardless, even if the Court were to examine Bakhda's typicality and adequacy, it would find that he fails to meet those requirements as well.

C. **Bakhda Will Face Numerous Challenges If Appointed Lead Plaintiff.**

"It is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become a major focus of the litigation.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595-596 (3d Cir. 2009) (quoting *Beck v. Maximus, Inc.*, 457

6

F.3d 291, 301 (3d Cir. 2006)); *accord In re Oxford Health Plans, Inc. Sec. Litig.* 182 F.R.D. 42, 44 (S.D.N.Y. 1998). A "proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Beck,* 457 F.3d at 301; 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb) (lead plaintiff cannot be "subject to unique defenses that render such plaintiff incapable of adequately representing the class"). The unique defense need not be proven at the lead plaintiff stage, and the mere probability that the defense might play a significant role at trial is enough. *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.,* No. 11-6247-JBS-KMW, 2012 U.S. Dist. LEXIS 118693, at *26-27 (D.N.J. Aug. 22, 2012).

    1.    **Bakhda's Assignment Will Be Contested for Lack of Consideration.**

In securities cases, one of the most important aspects of appointing a lead plaintiff is that "the proposed lead plaintiff ha[ve] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Sanfilippo v. Edge Thereapeutics, Inc*., No. 18-8236 (JLL) (JAD), 2018 U.S. Dist. LEXIS 233700, at *5 (D.N.J. Dec. 7, 2018))(*citing Sklar v. Amarin Corp. PLCC.,* C.A. No. 13-cv-06663-FLW-TJB, 2014 U.S. Dist. LEXIS 103051, at *19 (D.N.J. July 29, 2014)).

As explained *infra*, Bakhda was transferred his mother's claims by assignment. Not only does the assignment itself show that Bakhda does not have sufficient interest in the litigation, the language of the assignment further underscores his lack of typicality and adequacy. This is because Dhanvantray transferred all her claims to Bakhda for *no consideration*, thus assigning no value to the claims in the Actions. ECF. No. 19-5. This issue could undoubtably be brought up by defendants later in the litigation if Bakhda were to be appointed lead, further distracting from the actual issues at hand. *See Wallach v. Eaton Corp.,* 837 F.3d 356, 361 (3d Cir. 2016) (defendants arguments regarding consideration to confer standing

7

by way of assignment became major focus of an antitrust claim); *see also Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,* 275 F.R.D. 187, 191 (S.D.N.Y. 2011) ("At this stage, however, it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class."). As the Court observed in *In re IMAX Securities Litigation*, No. 06-cv-6128, 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. June 29, 2009): "irrespective of whether the assignments of claim cure [lead plaintiff's] deficient Article III standing, [it] now faces unique legal issues that other class members do not. Were we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal. There seems little reason for us to subject the class members to such a risk." *Id.* at *3, *quoting In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009). (internal quotations omitted). Similarly, in *SLM* the Court replaced a previously-appointed lead plaintiff who had assigned claims with a movant who purchased in the open-market. 258 F.R.D. at 116-17.

      2.    **Bakhda's Role in the Litigation Is to Conceal His Mother's History of Securities Fraud.**

Bakhda appears to merely be a litigation vehicle seeking to recover losses actually suffered by Dhanvantray, the actual purchaser of BBBY stock, who is not a party to these Actions. Although "there is a long-standing rule allowing the assignment of legal claims," this rule is not without exception. *In re BP P.L.C. Sec. Litig.,* MDL No. 4:10-md-2185, 2016 U.S. Dist. LEXIS 417, at *44-45 (S.D. Tex. Jan. 4, 2016) (*citing Sprint,* 554 U.S. at 271-72). Specifically, "additional prudential questions might perhaps arise if an assignment was made in bad faith or made for purposes other than ordinary business purposes." *Id.* at *45 (internal quotations and citations omitted).

8

In *BP,* the Court distinguished the relevant assignments from the assignments permitted in *Sprint,* by noting that the claimants were struggling to articulate an ordinary business purpose for the assignments, and that the assignments "allow[ed] claimants to skirt important rules of evidence and procedure". *Id*. Dhanvantray's assignment of her claims to her son, Bakhda, are no different than the assignments rejected by the Court in *BP*. Bakhda does not give any reason whatsoever why Dhanvantray, the non-party purchaser, assigned her claims over to him in this case or otherwise from vindicating her rights with respect to her BBBY purchases. *See also Sokolow v. LJM Funds Mgmt.,* No. 18-cv-01039, 2018 U.S. Dist. LEXIS 107339, at \*25 (N.D. Ill. June 26, 2018) (assignment accepted by the Court when assignees filed detailed affidavits regarding circumstances of assignments.). Rather, upon further review of Dhanvantray's background, it appears she assigned her claims to Bakhda, at least in part, in an attempt to sanitize the lead plaintiff motion due to her conviction under Section 401(2A)(b) of Singapore's Companies Act, Cap. 50. Specifically,   Dhanvantray was charged by Singapore's Accounting and Corporate Regulatory Authority, and pled guilty to, authorizing the lodging of false information under the Companies Act. *See* Press Release, Ex. A to Korsinsky Decl. Research shows that Dhanvantray authorized an employee to change the residential addresses of five foreign directors to her own company's address, knowing the information was false, to satisfy the requirements of Section 145(1) of the Companies Act. *Id.* Had Dhanvantray moved for lead plaintiff herself, her criminal history would have made her an inadequate class representative.  *See Ross v. RBS Citizens,* N.A., No. 09-cv-5695, 2010 U.S. Dist. LEXIS 107779, at \*14 (N.D. Ill. Oct. 8, 2010) (Courts may find a movant inadequate for personal integrity issues when a "representative's credibility is questioned on issues directly relevant to the litigation or there are *confirmed examples of dishonesty, such as a criminal conviction for fraud*.") (emphasis added); *Pirelli Armstrong Tire Corp. Retiree Med.*

9

*Benefits Tr. v. LaBranche & Co.,* 229 F.R.D. 395, 416 (S.D.N.Y. 2004) ("[H]onestly and trustworthiness are relevant factors in assessing a candidate's ability to serve[.]"); *Searcy v. eFunds Corp.,* No. 08-C-985, 2010 U.S. Dist. LEXIS 31627, at *15 (N.D. Ill. Mar. 31, 2010) ("[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.").

If the Court were to allow Dhanvantray to assign her rights to Bakhda given the facts at hand, the Court would be allowing a criminal, convicted for fraud, who does not meet Rule 23 requirements, and is not a party to these Actions, to "skirt the important rules of evidence and procedure". *See BP,* 2016 U.S. Dist. LEXIS 417, at *48. This would then set precedent to allow others who do not meet Rule 23 requirements to circumvent the important Federal Rules of Evidence and Procedure by assigning their claims to other "adequate" individuals.

Consequently, Dhanvantray's assignment to Bakhda was not for "ordinary business purposes," but completed to allow Bakhda to stand in her shoes in this litigation while she remains out of the reach of the Federal Rules. *See Id.* at *54-55 (Court found assignee lacked standing when assignment appeared on its face to be a litigation strategy). ; *CP Stone Fort Holdings, LLC v. Doe,* No. 16-cv-4991, 2016 U.S. Dist. LEXIS 141078, at *9 (N.D. Ill. Oct. 11, 2016) (Court allowed assignment because "Defendant has raised nothing to suggest that the assignment is a sham designed to allow plaintiff….to avoid their litigation obligations under the Federal Rules of Civil Procedure or otherwise."). Appointing Bakhda as the lead plaintiff will place the class at serious risk of attack, given Dhanvantray's history and his likely inability to effectively oversee this litigation.

10

### 3. Bakhda Cannot Testify about His Mother's Investment Strategy.

Dhanvantray engaged in an abnormal and atypical trading strategy during the Class Period. As reflected in Bakhda's motion, his mother purchased a financial derivative referred to as an "accumulator purchase." *See* ECF No. 19-2 at 3, n. 2. These accumulator purchases, also known as exotic barrier options, are not exchange-listed, and likely occur either through over-the-counter trades or private negotiations. This raises the question of what information Dhanvantray relied on when making these exotic investments, what personal representations she received, and whether she can invoke the presumption of reliance under *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). *See Weikel v. Tower Semiconductor, Ltd.,* 183 F.R.D. 377, 392 (D.N.J. 1998) (Lead plaintiff found inadequate to serve as class representative when reliance issues were raised by defendants). Whether and to what extent Dhanvantray sustained damages in connection with these purchases and, in turn, has assigned a valid claim to her son to litigate these claims is unknown and may never be known given the complexity of the security. In any event, Bakhda would be unable to testify to the purchasing and/or trading strategies taken by his mother when she decided to invest in these derivatives. See *Degulis v. LXR Biotechnology, Inc*., 176 F.R.D. 123, 126 (S.D.N.Y. 1997) (typicality can be "affected by any unique defenses relating to an investment strategy.").

Further, allowing Bakhda to be a class representative would be directly inapposite to the evidentiary concerns set forth in *Blue Chip Stamps* v. *Manor Drug Stores,* 421 U.S. 723 (1975). *Blue Chip Stamps* made clear that Rule 10b-5 actions be strictly limited to persons who are either purchasers or sellers of a security, thus making the assignability of Exchange Act claims limited to extremely rare circumstances. *See Blue Chip Stamps,* 421 U.S. at 731-32; *Smith v. Ayres*, 977 F.2d 946, 949-50 (5th Cir. 1992); *Aviva Life & Annuity Co.* v. *Davis*, 20 F. Supp. 3d 694,

11

702 (S.D. Iowa 2014). A major concern of the Supreme Court of the United States in *Blue Chip Stamps* was "the high value of oral testimony" and the need for juries to hear reliable testimony. 421 U.S. at 743, 476. In this case, Bakhda would be unable to proffer *any* testimony, let alone reliable, because he is *not an actual purchaser or seller* of BBBY stock. His inability to testify on behalf of his mother further undermines his ability to act as a lead plaintiff in the Actions, and thus his appointment should be denied.

4.      **Bakhda's Foreign Residence Raises Additional Issues that Prevent the Court from Appointing Him as Lead Plaintiff.**

Bakhda provides in his opening brief that he lives in Singapore, over 9,500 miles away from this Court. *See* ECF No. 19-2 at 3. Even assuming Bakhda has standing to participate in the litigation, defendants will undoubtedly object to any class certification motion seeking to confirm Bakhda as the class representative because Bakhda is a Singaporean citizen and Singapore does not recognize judgments entered in the United States of America.

According to the Laws of Singapore, Chapter 265, Reciprocal Enforcement of Foreign Judgments Act (the "REFJA" a copy of which is attached to the Declaration of Eduard Korsinsky as Exhibit B) Singapore will enforce foreign judgments in Singapore only if the Singaporean Minister is "satisfied" that the foreign entity issuing the judgment would likewise enforce a Singaporean judgment. REFJA, Part I, Section 3.  The United States of America is not a party to any bilateral treaty or convention regarding the enforcement of judgments from another country. Consequently, any judgment rendered by this Court would not be enforced in Singapore.

Singapore's refusal to recognize a judgment from this Court raises a significant issue for the defendants in this action and, in turn, the unnamed members of the class.  From the defendants' point of view, they are subject to the risk of re-

litigation in Singapore notwithstanding a favorable outcome in this Court. In other words, even if the defendants were to obtain a dismissal of the action here, Bakhda could easily re-litigate the entire matter in Singapore because Singapore courts would not give *res judicata* effect to this Court's ruling.

Consequently, the defendants in this Action will take any and all steps necessary to protect themselves from this risk and, in so doing, will subject the class to extreme prejudice and delay while the litigation is sidetracked over issues pertaining to the *res judicata* effect of a judgment from this Court. See *Buettgen v. Harless,* 263 F.R.D. 378, 382-83 (N.D. Tex. 2009) ("entrusting [Swiss entity] with the responsibility of prosecuting a case where the lead plaintiff might be plagued with *res judicata* issues jeopardizes the interests of the entire class").

5. **Bakhda Has Not Been Fully Candid to the Court Regarding The Assignment.**

As a movant for lead plaintiff, and future class representative, Bakhda owes a duty of utmost candor to the Court. *See In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1086 (3d Cir. 1980) (class representative acts as a fiduciary); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316–17 (E.D. Va. 2007)( "[a]s a fiduciary for the class, [plaintiff class representative] ... [is] required to adhere to the highest standards of honesty and integrity.")(citations omitted). Bakhda has failed to meet this obligation. He persistently represents that he is similarly situated to all purchasers of BBBY securities during the Class Period without disclosing that he personally never purchased *any* BBBY securities. The assignment from Dhanvantray is barely mentioned in his memorandum of law. Most egregiously, Bakhda *never* mentions in his memorandum of law that he will not personally receive a single cent from this litigation as the entire proceeds of the litigation will, under the terms of the assignment, be remitted back to Dhanvantray. This critical fact is buried in an exhibit to an attorney declaration and never discussed. *See* Dkt No. 19-5. The assignment

13

from Dhanvantray to Bakhda follows a sworn certification by Bakhda where he certifies that Dhanvantray's transactions are in fact his own transactions and certifying that he expects a "pro rata share in any recovery" by the Class. *Id*. Failing to discuss and explain the circumstances of the assignment, his lack of any direct financial interest in the proceeding, and how that will affect his prosecution of the case while pretending that he is similarly situated to open market purchasers is not consistent with Bakhda's duty of candor towards the Court and raises questions about his adequacy as lead plaintiff and class representative.

*        *        *

Whether or not any of the foregoing issues will in fact be raised during the litigation is unknown; however, the critical point is that they ***may be raised*** and, if so, will become a distraction to the litigation and jeopardize the class's recovery. For that reason, Bakhda is an atypical lead plaintiff.  *See Cent. European Distribution,* 2012 U.S. Dist. LEXIS 118693, at *26-27 ("no requirement…to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial trial…[t]he point . . . is not to adjudicate the case before it has even begun, but rather to ***protect the absent class members*** from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.") (emphasis added and internal quotations omitted).

### D.    Bakhda Has Failed to Make a *Prima Facie* Showing of Adequacy

A recent trend in caselaw throughout the country has begun to interpret the PSLRA to mean that a *prima facie* showing of adequacy requires movants to include information necessary to determine if the movant has any conflicts with other class members, and if the movant will be able to effectively oversee counsel. *See Hexo,* 2020 U.S. Dist. LEXIS 32381, at *6 (denied appointing movant with largest loss for providing no information about themselves in opening motion, despite filing a supplemental declaration including additional information); *Karp v. Diebold*

14

*Nixdorf, Inc.,* 2019 U.S. Dist. LEXIS 188670, at \*16 (S.D.N.Y. Oct. 30, 2019) (denying lead plaintiff motion of individual investors who "have provided the Court with little to go on with respect to their alleged capacity to manage this litigation."); *Pirelli,* 229 F.R.D. at 417 ("While the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class."); *In re Boeing Co. Aircraft Sec. Litig.,* 2019 U.S. Dist. LEXIS 198259, at \*23-24 & n.10 (N.D. Ill. Nov. 15, 2019) (The failure to include any details in an individual investor's motion is a "red flag[]" because "a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff selection process.").

Due to Bakhda living in Singapore, Counsel was unable to determine his age, education, or sophistication, precluding the necessary inquiry into whether Bakhda has any conflicts with other class members, or whether he can effectively monitor class counsel. If Courts are to expect movants that live in the United States to provide more information about themselves to be make a *prima facie* showing of adequacy, a foreign movant with an assignment would have to provide, at the least, more information than just his name, country of origin, and investing experience.

Furthermore, given the extensive issues the assignment has created, Bakhda needed to provide a greater evidentiary showing to substantiate a *prima facie* showing of adequacy, which he has failed to do. Unlike the movants in *LJM Funds,* who provided detailed affidavits regarding the assignments in question, Bakhda has provided ***not one reason*** why the assignment from Dhanvantray even exists. 2018 U.S. Dist. LEXIS  107339, at \*25 The Court nor the class has been given any information as to why this assignment is necessary, its purpose, nor how Bakhda intends to manage the litigation on behalf of Dhanvantray.

15

### E.     Kahn Cannot Trigger the Lead Plaintiff Presumption

##### 1.     Kahn has Failed to Make a Prima Facie Showing of Adequacy

Under the PSLRA, lead plaintiff movants must meet the typicality and adequacy requirements of Rule 23 to be the presumed lead plaintiff. *Cendant,* 264 F.3d at 264. "While the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class." *Hexo,* 2020 U.S. Dist. LEXIS 32381, at *7 (internal quotations omitted).

Here, Kahn has not provided sufficient evidence establishing that he is the type of movant that the PSLRA intended to be appointed lead plaintiff. In fact, Kahn has provided absolutely *no information* about himself aside from his name. By not giving the Court even the basic of facts about himself, such as where he lives, his education level, or sophistication, Kahn has failed to show he is capable of overseeing and controlling the prosecution of the Actions. *Id.* at *7 ("Indeed, failure to provide *any* information regarding…experience in [the] preliminary motion, the Court questions whether Wong will meaningfully oversee and control the prosecution of this consolidated class action."); *see also Diebold,* 2019 U.S. Dist. LEXIS 188670, at *16; *Boeing,* 2019 U.S. Dist. LEXIS 198259, at *23-24 & n.10; *Gross v. AT&T Inc.,* No. 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 225777, at *5-6 (S.D.N.Y. June 24, 2019) (appointing movant with lower losses finding that ""[w]hile the Court agrees with Pro-Alpha that mere speculation is not enough to disqualify a prospective lead plaintiff, it is an undisputed fact that Pro-Alpha has failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation").

16

Aside from Kahn not providing any details about himself, his adequacy is further undermined by material errors in the transaction records provided to the Court with his PSLRA certification. Kahn purports to have purchased 15,000 shares of BBBY on February 3, 2020, at $15.00 per share, yet BBBY stock only traded at prices between $14.16 and $14.96 on February 3, 2020. *See* ECF No. 18-3 at 4, 65. Further, it appears that Kahn's certification not only contains incorrect information, but it is missing relevant trade information as well. Kahn lists that he purchased 900 BBBY shares at $14.50 per share on January 31, 2020, but the certification does not list a corresponding option contract, unlike all his other trades listed. These types of errors are red flags that Kahn is an inadequate lead plaintiff. *See Tomaszewski,* F. Supp. 3d at 414 ("[E]rrors in…sworn statements highlight issues of carelessness, which undermine…adequacy to serve … as lead plaintiff.").

When combined, the above raises serious questions about Kahn's ability to take on the lead plaintiff role and his ability to effectively monitor his proposed class counsel. *See In re Vonage Initial Pub. Offering Sec. Litig.,* No. CIV A 07-177 FLW, 2007 U.S. Dist. LEXIS 66258, at *30 (D.N.J. Sept. 7, 2007) (refusing to appoint movant who did not understand parts of the lead plaintiff role before moving and failed to demonstrate he was sufficiently sophisticated to lead the litigation).

2. **Kahn is Atypical Because Was Betting Against the Company During the Class Period**

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge Inv. Partners, LLC v. Sci.–Atlanta, Inc.,* 552 U.S. 148, 159 (2008). Here, Kahn's trading strategy is quite unique in that he traded in both the selling of puts and calls at the same time.  By selling both puts and calls, Kahn was essentially betting that BBBY stock would both rise *and* fall, at the same time. By betting against BBBY, Kahn was not relying on the alleged misstatements that are the subject of this litigation, thus he is subject

17

to a unique defense and is not typical of the class. Courts have found that both short sales and this type of trading pattern rise to the level of a unique defense that would threaten to become the focus of the litigation. *See e.g. Weikel,* 183 F.R.D. at 392 (concluding that a movant with short sales is unsuitable to serve as a class representative); *In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) (denying proposed lead plaintiff's appointment because of short sales); *Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 U.S. Dist. LEXIS 27831, at *28, (N.D. Cal. Aug. 15, 2002) (same). Given that courts have recognized this real risk to the class, Kahn's  motion for appointment as Lead Plaintiff should be denied as "class members are entitled to be represented by someone unhindered by unique defenses." *Rocco v. Nam Tai Elecs., Inc.,* 245 F.R.D. 131, 135 (S.D.N.Y. 2007).

## F.        Dass is the Most Adequate Lead Plaintiff

Dass is the movant before the Court that has satisfied the *prima facie* showing of typicality and adequacy under Rule 23 and suffers from none of pitfalls that Bakhda faces. Dass, as a United States citizen and resident, easily satisfies the requirements of Rule 23. In his certification, Dass attested to the city and state of his residence, education level, current employment, and investing experience – more than enough information to allow the Court and the Class to determine if he has any conflicts with other class members, which he does not. *See* ECF No. 17-3.

The claims asserted Dass are based on the same legal theory and arise out of the same course of events as the other purported class members' claims.  Dass, unlike Bakhda, purchased securities of Bed Bath & Beyond, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby.  *See In re Merck & Co., Inc. Securities,* No. 05-cv-1151, 2013 U.S. Dist. LEXIS 13511, at *39-40 (D.N.J. Jan. 20, 2013), I*n re PharmaPrint, Inc. Sec. Litig.,* No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845, at *16 (D.N.J. April 17, 2002).

A movant can demonstrate adequacy by showing that "(a) the [movant's] attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the [movant] must not have interests antagonistic to those of the class." *PharmaPrint,* 2002 U.S. Dist. LEXIS 19845, at *16-17. Dass' interests are also clearly aligned with the members of the proposed Class.  Not only is there no evidence of any antagonism between Dass' interests and those of the class, but Dass has a significant and compelling interest in prosecuting the Action based on the large financial losses he, *himself*, has suffered as a result of the wrongful conduct alleged in the Action. *Id.*

Dass has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class. Levi & Korsinsky is highly experienced in securities class actions and is well qualified to litigate the Action on behalf of the Class and its appointment should also be approved. See ECF No. 17-6, Ex. D (firm résumé of Levi & Korsinsky).

Having the largest financial interest and satisfying the Rule 23 requirements of adequacy and typicality, Dass is entitled to the presumption of "most adequate plaintiff." This presumption may be rebutted only upon proof by a class member that Dass "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II). No such proof exists.

## III.    CONCLUSION

Based on the foregoing, Dass respectfully request that the Court grant his motion: (1) appointing him as Lead Plaintiff; (2) approving their selection of Levi & Korsinsky as Lead Counsel; and (3) granting such other relief as the Court deems just and proper.

Dated:  July 6, 2020                           Respectfully submitted,

19

**LEVI & KORSINSKY, LLP**

/s/ Eduard Korsinsky
Eduard Korsinsky
Nicholas I. Porritt (*pro hac vice* to be submitted)
Adam M. Apton (*pro hac vice* to be submitted)
55 Broadway, 10th Floor
New York, New York 10006
Tel.:  (212) 363-7500
Fax:  (212) 363-7171
Email: ek@zlk.com
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Counsel for Movant Matthew Dass
and Proposed Lead Counsel for the Class*

20