**Law Offices of Jan Meyer & Associates, P.C.**
Jan Meyer, Esq.
Richard Elem, Esq.
1029 Teaneck Road
Second Floor
Teaneck, New Jersey 07666
Telephone: 201-862-9500
Email: jmeyer@janmeyerlaw.com
        relem@janmeyerlaw.com
Proposed Liaison Counsel for the Proposed Class

(*Additional Counsel on signature page*)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN AND JUNE VITIELLO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BED BATH & BEYOND, INC., MARK J. TRITTON, MARY A. WINSTON, and ROBYN M. D'ELIA, <br><br> Defendants. | Case No. 2:20-cv-04240 <br><br> CLASS ACTION <br><br> **MOTION DAY: July 20, 2020** |
| JERRY KIRKLAND, individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BED BATH & BEYOND INC., MARK J. TRITTON, MARY A. WINSTON, and ROBYN M. D'ELIA, <br><br> Defendants. | Case No. 2:20-cv-05339 <br><br> CLASS ACTION <br><br> **MOTION DAY: July 20, 2020** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF KAVIN BAKHDA TO CONSOLIDATE THE RELATED ACTIONS, FOR APPOINTMENT AS LEAD PLAINTIFF, FOR APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN FURTHER OPPOSITION TO THE COMPETING MOTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 4

    I.    BAKHDA IS THE PRESUMPTIVE LEAD PLAINTIFF ..................................... 4

        A.   There is No Contest That Bakhda Has The Largest Financial Interest ........................... 4

        B.   Bakhda Also Handily Satisfies the PSLRA's Rule 23 Requirements ........................... 4

    II.   DASS' SELF-SERVING SPECULATIONS AND GROUNDLESS ARGUMENTS FAIL TO REBUT THE STRONG PRESUMPTION IN FAVOR OF APPOINTING BAKHDA ........................................................................................................... 6

        A.   Bakhda's Assignment Is Valid, And Courts Regularly Appoint Assignees Like Bakhda As Lead Plaintiff ................................................................................. 6

        B.   Dass' Other Speculative Attacks Do Not Come Close to the "Proof" Required to Rebut the Strong Presumption in Bakhda's Favor ........................................... 9

        C.   The Purported Unique Defenses Dass Raises Are Also Groundless And Do Not Rebut The Strong Presumption in Bakhda's Favor .................................................. 10

           1.   Bakhda Has A Powerful Motive to Litigate These Claims .................................. 11

           2.   The Over 10-Year Old Fine Paid By Bakhda's Mother Is A Frivolous Unique Defense .................................................................................................... 11

           3.   Bakhda's Option Investments Are An Asset, not a Liability – And, Regardless, He Has the Largest Financial Without Them ................................... 12

           4.   Dass' *Res Judicata* Concerns Are Also Illusory ................................................ 13

    III.  DASS IS UNFIT TO SERVE AS LEAD PLAINTIFF .................................................. 14

CONCLUSION.................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
No. 2:17-CV-6454-KM-MAH, 2018 WL 1960444 (D.N.J. Apr. 25, 2018) .............................. 6

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ........................................................................ 9

*Blake Partners, Inc. v. Orbcomm, Inc.*,
No. CIV.A. 07-4517 (WHW), 2008 WL 2277117 (D.N.J. June 2, 2008) ................................ 13

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975) ................................................ 7

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
No. 3:16-CV-1106, 2017 WL 5759361 (N.D. Ohio Nov. 28, 2017) ...................................... 7

*Buettgen v. Harless*,
263 F.R.D. 378 (N.D. Tex. 2009) ...................................................................... 14

*City of Providence v. Aeropost*ale, Inc.,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.
Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) .................................................. 9

*Cohen v. Luckin Coffee Inc.*,
No. 1:20-CV-01293-LJL, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) ................................ 14

*CP Stone Fort Holdings, LLC v. Doe(s)*,
No. 16 C 4991, 2016 WL 5934096 (N.D. Ill. Oct. 11, 2016) .......................................... 9, 10

*Delgado v. New Albertson's, Inc.*,
No. SACV 08-0806 DOC (MLGx), 2010 WL 11507599 (C.D. Cal. Mar. 15, 2010) .............. 12

*Fields v. Biomatrix, Inc.*,
198 F.R.D. 451 (D.N.J. 2000) .......................................................................... 13

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ...................................................................... 14

*Hufnagle v. Rino Int'l Corp.*,
No. CV 10-8695-VBF (VBKx), 2011 WL 710704 (C.D. Cal. Feb. 14, 2011), *adopted by* No.
CV 10-1754-VBF (VBKx), 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) ................................ 7

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) .................................................. 5

*In re BP P.L.C. Sec. Litig*,
MDL No. 4:10-md-2185, 2016 WL 29300 (S.D. Tex. Jan. 4, 2016) ...................................... 10

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .................................................................................................. 5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)..................................................................................................... 5

*In re Cent. European Distribution Corp. Sec. Litig.*,
No. CIV.A. 11-6247 JBS-K, 2012 WL 5465799 (D.N.J. Nov. 8, 2012).................................. 10

*In re Groupon, Inc. Sec. Litig.*,
No. 12 C 2450, 2012 WL 3779311 (N.D. Ill. Aug. 28, 2012).................................................. 12

*In re Herley Indus. Inc. Sec. Litig.*,
No. CIV.A. 06-2596, 2009 WL 3169888 (E.D. Pa. Sept. 30, 2009) ........................................ 6

*In re IMAX Sec. Litig.*,
No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009).................................................. 8

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) .............................................................................................. 8

*In re: Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part*,
862 F.3d 250 (2d Cir. 2017)................................................................................................... 14

*Karp v. Diebold Nixdorf, Inc.*,
19 Civ. 6180 (LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) .......................................... 5

*KBC Asset Mgmt. NV on behalf of Chemed Corp. v. McNamara*,
78 F. Supp. 3d 599 (D. Del. 2015)........................................................................................... 7

*McCall v. Drive Fin. Servs., L.P.*,
236 F.R.D. 246 (E.D. Pa. 2006).............................................................................................. 12

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010)........................................................ 14

*Odeh v. Immunomedics, Inc.*,
No. CV 18-17645, 2019 WL 8091604 (D.N.J. Sept. 10, 2019) ................................................. 5

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
63 F. Supp. 3d 394 (D. Del. 2014)................................................................................... 10, 14

*Ortiz v. Canopy Growth Corp.,* Order,
No. 2:19-cv-20543-KM-ESK (D.N.J. Feb. 10, 2020) .................................................. 7

*Perez v. Hexo Corp.,*
19 Civ. 10965 (NRB), 2020 WL 905733 (S.D.N.Y. Feb. 25, 2020) .......................... 5

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.,*
275 F.R.D. 187 (S.D.N.Y. 2011) ................................................................................ 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.,*
229 F.R.D. 395 (S.D.N.Y. 2004) .......................................................................... 5, 12

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Investment Corp.,*
256 F.R.D. 620 (E.D. Wisc. 2009)... ........................................................................ 13

*Rieckborn v. Velti PLC*, No. 13-CV-03389-WHO,
3889-WHO, 2013 WL 6354597 (N.D. Cal. Dec. 3, 2013) ........................................ 6

*Roby v. Ocean Power Techs., Inc.,*
No. 14-CV-3799 (FLW)(LHG), 2015 WL 1334320 (D.N.J. Mar. 17, 2015)........................ 14

*Ross v. RBS Citizens, N.A.,*
No. 09-cv-5695, 2010 WL 3980133 (N.D. Ill. Oct. 8, 2010), *aff'd*, 667 F.3d 900 (7th Cir.
2012), *vacated and remanded on other grounds*, 133 S. Ct. 1722 (2013)................................ 12

*Scuderi v. Mammoth Energy Servs., Inc.,*
No. CIV-19-522-SLP, 2019 WL 4397340 (W.D. Okla. Sept. 13, 2019) ................................ 12

*Searcy v. eFunds Corp.,*
No. 08 C 985, 2010 WL 1337684 (N.D. Ill. Mar. 31, 2010) .................................... 12

*Sgalambo v. McKenzie,*
268 F.R.D. 170 (S.D.N.Y. 2010) ................................................................................ 7

*Sokolow v. LJM Funds Mgmt., Ltd.,*
No. 18-CV-01039, 2018 WL 3141814 (N.D. Ill. June 26, 2018)........................ 7, 8, 9, 11

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.,*
No. CIV.A. 11-6247 JBS, 2012 WL 3638629 (D.N.J. Aug. 22, 2012)................................ 10

*Wallach v. Eaton Corp.,*
837 F.3d 356 (3d Cir. 2016)........................................................................................ 7

*Weikel v. Tower Semiconductor Ltd.,*
183 F.R.D. 377 (D.N.J. 1998)................................................................................... 13

**Statutes**

15 U.S.C.A. § 78u-4(a)(3) .......................................................................................... 1

15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(I) ...................................................................................... 4, 5, 9

15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(II) ......................................................................................... 5

**Regulations**

17 CFR § 401(f)(2) ...................................................................................................................... 12

Lead Plaintiff movant Kavin Bakhda respectfully submits this reply memorandum of law in further support of his motion to consolidate the related actions ("Actions"), to be appointed as Lead Plaintiff, for approval of his selection of Bernstein Liebhard LLP as Lead Counsel for the Class and the Law Offices of Jan Meyer P.C. as Liaison Counsel to the Class, and in further opposition to the competing Lead Plaintiff motions.[1]

## PRELIMINARY STATEMENT

Bakhda has the largest financial interest in these Actions by a wide margin and he has also demonstrated his *prima facie* typicality and adequacy. Thus, under the PSLRA, he is the presumptive lead plaintiff. To overcome Bakhda's presumptive status, it is black letter law that competing movants must offer "proof" – not speculation – that he is either atypical or somehow inadequate to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3). No such proof exists here. Nevertheless, Dass, whose losses place him in a very distant third place among the movants (Bakhda's losses are twelve times greater than those of Dass), wildly contests Bakhda's motion. Dass' opposition is purely self-serving and opportunistic, but more importantly, Dass fails to rebut Bakhda's presumptive lead plaintiff status because his opposition is entirely based on rank speculation and groundless arguments that courts have repeatedly rejected. Accordingly, Bakhda's motion should be granted and all other competing motions should be denied.

In his opposition, Dass makes a litany of unavailing arguments regarding the assignment of claims by Bakhda's mother, Rigni Dhavrantray, to Bakhda. As detailed herein, Dass'

---

[1] On May 11, 2020, five movants filed timely motions for appointment as Lead Plaintiff: (i) Kavin Bakhda; (ii) Richard R. Kahn; (iii) Matthew Dass; (iv) Shawn Ruebush; and (v) Olufemi Salu. Kahn, who suffered the second largest losses of any movant, filed a non-opposition recognizing that he does not possess the largest financial interest in these Actions. ECF No. 23. Ruebush and Salu did the same. ECF Nos. 21, 22. Only Dass, a movant with less than a twelfth of the losses sustained by Bakhda, contests Bakhda's presumptive lead plaintiff status. "Br." refers to Dass' opposition (ECF No. 25). "Opp." refers to Bakhda's opposition (ECF No. 24). Otherwise undefined terms have the definitions set forth in Bakhda's opening brief. ECF No. 19.

arguments are purely speculative, lack any legal basis, and/or flatly ignore existing legal precedent – none come close to rebutting the strong presumption in Bakhda's favor.

First, Dass claims that Bakhda cannot serve as lead plaintiff because he purportedly has no financial interest in these Actions. Dass offers no support for this argument, and ignores that courts routinely appoint assignees who represent the financial interests of assignors as lead plaintiffs, particularly when they are, as here, close family members of the assignor. *See infra* at 6-7.

Second, Dass speculates, again without any support, that Bakhda's assignment is somehow invalid because it does not provide consideration for Bakhda. In making this argument, Dass ignores that there is no requirement that assignments provide for consideration. In fact, the one case Dass cites in making this argument expressly found that consideration was *not* necessary for an assignment to be valid. *See infra* at 7. Nevertheless, as set forth herein, Dass' underlying claim that Bakhda purportedly has "no motive" to represent the interests of the Class here is completely unfounded and utterly wrong.

Third, Dass speculates that Bakhda's assignment was procured solely to avoid dealing with a fine from over 10 years ago that Dhavrantray paid to the Singapore government. That is inaccurate. Bakhda entered the assignment to assist his mother, which alone is a sufficient reason. Nevertheless, as is further explained in Bakhda's accompanying declaration (the "Bakhda Decl."), there were other practical considerations for the assignment, including that Bakhda, at his parents' request, became the point person to communicate with counsel; Bakhda has experience supervising attorneys; and Bakhda's assignment addresses health safety concerns about his mother traveling during the COVID pandemic. *See id. ¶* 4.

Fourth, Dass speculates that Bakhda is subject to numerous unique defenses that militate against his appointment as Lead Plaintiff. For example, Dass wonders whether Dhavrantray's 10-year old fine will become a focal point of the litigation. It will not. First, Dhavrantray is not moving for lead plaintiff; Bakhda is, and courts have recognized that an assignor's past infractions are not relevant to the assignee or the proceeding. *See infra* at 11. Second, courts have likewise recognized that dated infractions (here, over 10 years old and not even by the movant) do not militate against serving in a representative capacity for a class. *See infra* at 12 n.9. Third, it is black letter law that an infraction that is over 10 years old is not admissible at trial under the Federal Rules of Evidence; SEC rules likewise recognize this time limit to the relevance of a past infraction. *See infra* at 12. Thus, even if Dhavrantray was moving for appointment as lead plaintiff here (which she is not), there would be no issue to bar her appointment. Fourth, while the Levi & Korsinsky firm shamelessly labels Bakhda's mother a "criminal" for its own gain – which is startling and unprofessional – she is no criminal. Dhavrantray made a mistake long ago and paid a civil fine. The Court should not be persuaded that this will now become a side-show.

Fifth, Dass confusingly speculates that trading in BBBY accumulators (in addition to common stock) could subject Bakhda to a unique defense. In fact, this is a point in Bakhda's favor because, unlike Dass, he can represent a broader class of BBBY securities holders – particularly where both complaints define class members as investors in BBBY "securities", not just BBBY common stock. *See infra* at 13. Moreover, Bakhda has the largest financial interest of any movant even without the accumulator trades, which only account for $118,803 of his $824,026 in losses. Thus, even without his losses in accumulators Bakhda's losses would still be 10 times greater than Dass'. *See id.*

Finally, Dass also speculates that a Singapore court might not recognize a U.S. judgment and that this subjects Bakhda to a unique *res judicata* defense because he may seek to re-litigate this claim in Singapore if this case is dismissed. This is a losing argument. In fact, courts have repeatedly rejected this argument when, like here, a lead plaintiff movant bought shares of a U.S. company on a U.S. stock exchange. *See infra* at 13-14.

For all these reasons and those given below, Bakhda respectfully requests that the Court grant his Lead Plaintiff motion in its entirety and deny the competing motions.

## ARGUMENT

## I. BAKHDA IS THE PRESUMPTIVE LEAD PLAINTIFF

Bakhda has the largest financial interest of any movant by a wide margin and also satisfies the typicality and adequacy requirements of Rule 23. Therefore, Bakhda is entitled to the PSLRA's "strong presumption" that he is the "most adequate plaintiff" to represent the Class in these Actions. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption can only be rebutted with "proof" that Bakhda is somehow atypical or inadequate. No such proof exists here.

### A. There is No Contest That Bakhda Has The Largest Financial Interest

Bakhda's financial interest of $824,026 dwarfs that of Dass and any other movant. Indeed, Bakhda's financial interest is twice the size of the next largest movant (Kahn) and twelve times larger than that of Dass. *See* Opp. at 4 (ECF No. 24).

### B. Bakhda Also Handily Satisfies the PSLRA's Rule 23 Requirements

As discussed in his Opp., Bakhda is typical of other Class members and adequate to serve as lead plaintiff. *See* Opp. at 1-3 (ECF No. 24). *See also* Bakhda's opening motion (ECF 19-2 at 2) (Bakhda has five years of investing experience); Bakhda Decl. ¶¶ 2-3 (Bakhda has a finance and accounting degree, has experience supervising attorneys, and is a Business Development Manager). Thus, in accordance with the PSLRA, Bakhda is entitled to a strong presumption of

4

being the "most adequate plaintiff". 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). That presumption can only be rebutted "upon proof" that Bakhda is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).[2]

As the Third Circuit noted in *Cendant*, "once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair[] and adequate[] job." *In re Cendant Corp. Litig*, 264 F.3d 201, 268 (3d Cir. 2001). In *Cendant*, this Court has noted that "both the statutory structure and the legislative history suggest that the court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive". 264 F.3d at 264 (cited by *Odeh v. Immunomedics, Inc.*, No. CV 18-17645, 2019 WL 8091604, at *2 (D.N.J. Sept. 10, 2019)). *See also In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (the Ninth Circuit held that "a straightforward application of the [PSLRA] provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case").

As discussed below, Dass has failed to offer any "proof" whatsoever that Bakhda is either atypical of other class members or inadequate to serve as lead plaintiff.

---

[2] Dass' case citations as to what information is required on lead plaintiff motions are distinguishable. *See Perez v. Hexo Corp*, 19 Civ. 10965 (NRB), 2020 WL 905733, at *3 (S.D.N.Y. Feb. 25, 2020) (unlike here, movant included no information on opening motion); *Karp v. Diebold Nixdorf, Inc.*, 19 Civ. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (rejecting movants "with little to go on with respect to their alleged capacity to manage this litigation" whereas Bakhda has a finance and accounting degree, works as a Business Development Manager, has five years of investing experience, and has supervised attorneys before, *see* Bakhda Decl. ¶¶ 2-3); *Pirelli Armstrong Tire Corp. Retiree med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (business did not demonstrate it could manage litigation); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *7 n.10 (N.D. Ill. Nov. 15, 2019) (after challenged, family of purportedly "modest means" provided no detail to substantiate their claim to have invested $40 million in two months).

**II. DASS' SELF-SERVING SPECULATIONS AND GROUNDLESS ARGUMENTS FAIL TO REBUT THE STRONG PRESUMPTION IN FAVOR OF BAKHDA**

As discussed above, Congress passed the PSLRA to place securities class actions in the hands of those with the largest financial interest because they have the greatest motive to litigate actions vigorously. Dass – the movant with the distant third largest financial interest – opportunistically throws a litany of groundless arguments against the wall, hoping something will stick to rebut the strong presumption in favor of Bakhda. Nothing does.

**A. Bakhda's Assignment Is Valid, And Courts Regularly Appoint Assignees Like Bakhda As Lead Plaintiff**

Dass raises numerous groundless arguments about Bakhda's assignment in an attempt to rebut the presumption. All of them fail. First, Dass absurdly claims that assignees cannot serve as lead plaintiffs because it is the assignors, not the assignees, that have the financial interest in the case. Not so. In fact, courts around the country routinely appoint assignees like Bakhda as lead plaintiff – particularly where, like here, the assignment is from a close family member. *See, e.g., Aguilar v. Vitamin Shoppe, Inc.*, No. 2:17-CV-6454, 2018 WL 1960444, at *5, 8 (D.N.J. Apr. 25, 2018) (allowing assignment of claims by grandmother to grandson); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2013 WL 6354597, at *2 (N.D. Cal. Dec. 3, 2013) (appointing lead plaintiff whose mother and brother assigned claims to investment fund he owned and managed); *see also In re Herley Ind. Inc. Sec. Litig.*, No. CIV.A. 06-2596, 2009 WL 3169888, at *15 (E.D. Pa. Sept. 30, 2009) (allowing lead plaintiff to continue serving even where claims were assigned later in case; also appointing lead plaintiff as class representative). Moreover, contrary to Dass' claim, foreign movants such as Bakhda are also commonly appointed as lead

plaintiffs,[3] and courts regularly allow foreign assignees to serve as lead plaintiffs as well.[4]

Dass cites to *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) in support of his claim that assignments of 10(b) claims are "extremely rare". In *Blue Chip*, the Supreme Court held that holders of stock – unlike purchasers or sellers – could not recover under 10(b). *See id*. at 754. *Blue Chip* says nothing about, and has no bearing on, whether 10(b) claims by *purchasers or sellers* can be assigned. And as the citations above show, assignees serving as lead plaintiffs is by no means rare. *See supra* at 6. Second, even if it was rare (and it is not), that would not mean it was unjustified – particularly where contradicting well-settled law allowing assignees to serve as lead plaintiffs would violate the spirit of the PSLRA by appointing the movant in third place above the movant with a far larger financial interest.

Dass also speculates, without any support, that Bakhda's assignment does "not specify any consideration given in exchange and, therefore, may be invalid." Br. 2. Courts have flatly rejected that argument. *See, e.g. HCP, Inc.*, 2017 WL 5759361, at *6 (appointing assignee as lead plaintiff when assignments did "not explicitly reflect any consideration given"). Indeed, Dass' only citation in support of his argument, *Wallach v. Eaton Corp*., 837 F.3d 356, 361 (3d Cir. 2016), was an antitrust case where the Third Circuit held that "assignment of a federal antitrust claim need ***not be supported by bargained-for consideration*** in order to confer…standing." *Id*. Thus, *Wallach* found that consideration ***was not a prerequisite*** for a

---

[3] *See, e.g.,* Order, *Ortiz v. Canopy Growth Corporation*, No. 2:19-cv-20543-KM-ESK, ECF No. 27 (D.N.J. Feb. 10, 2020) (appointing Cayman Islands entity); *Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF (VBKx), 2011 WL 710704, at *7 (C.D. Cal. Feb. 14, 2011), *adopted by* No. CV 10-1754-VBF (VBKx), 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) ("courts routinely appoint foreign investors as lead plaintiffs") (collecting cases); *Sgalambo v. McKenzie*, 268 F.R.D. 170, 176-77 (S.D.N.Y. 2010) (appointing Belgian investors).

[4] *See*, *e.g.*, *KBC Asset Mgmt. NV on behalf of Chemed Corp. v. McNamara*, 578 F, Supp. 3d 599, 605 (D. Del. 2015) (appointing lead plaintiff KBC Asset Management whose claims were assigned to it by clients); *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, No. 3:16-CV-1106, 2017 WL 5759361, at *8, 12 (N.D. Ohio Nov. 28, 2017) (appointing as lead plaintiff German fund whose clients assigned claims); *Sokolow*, 2018 WL 3141814, at *5.

valid assignment. In fact, the situation of an assignee serving as a lead plaintiff is no different from a broker or investment advisor litigating claims assigned to it by its clients, or pension funds litigating claims for their members, which happens all the time. *See, e.g., Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-CV-01039, 2018 WL 3141814, at \*5 n.4 (N.D. Ill. June 26, 2018) ("[g]iven that the PSLRA favors institutional investors, *there is nothing improper with an investment advisor pursuing claims it holds title to in order to recover money for its clients*).

Dass also improperly speculates that Bakhda was not candid with the Court because he "never mention[ed] that he [did not] personally" purchase BBBY securities. Br. 5. That is false. Bakhda clearly addressed the nature of his mother's assignment of claims on page two of his opening brief. *See* ECF 19-2 at 2 ("Bakhda has been assigned the claims of his mother in these Actions"). Likewise, Dass absurdly claims that "Bakhda's counsel" made numerous "misrepresentations" by arguing that Bakhda is similarly situated as other class members or will receive a pro rata share of any recovery (Br. 5). In fact, Bakhda *is* similarly situated to other class members *because he has been assigned claims similar to those of other class members,* and he will receive a pro rata share of any recovery *as assignee*. The numerous courts that have appointed assignees to serve as lead plaintiffs make that crystal clear. *See supra* at 6-7. *See also Sokolow*, 2018 WL 3141814, at \*12 ("[b]ecause the clients assigned their claims, the investment advisors are the real parties in interest").[5]

In sum, Dass' arguments attacking Bakhda's assignment are fundamentally wrong, and do not rebut the strong presumption in Bakhda's favor.

---

[5] Dass' case authorities on assignments only highlight the weakness of his argument. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011) (standing of foreign fund was a unique defense where it did not own securities *and there was no assignment*); *In re IMAX Sec. Litig.*, No. 06-cv-6128(NRB), 2009 WL 1905033, at \*3 (S.D.N.Y. June 29, 2009) (assignments *after* being appointed as lead plaintiff insufficient); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (same).

**B.      Dass' Other Speculative Attacks Do Not Come Close to the "Proof" Required to Rebut the Strong Presumption in Bakhda's Favor Either**

Dass raises numerous other speculative arguments in an attempt to rebut the PSLRA's strong presumption in favor of appointing Bakhda.  However, as noted *supra*, it is black letter law that mere speculation is insufficient to rebut the presumption.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  For example, Dass speculates that Bakhda "does not give any reason" why his mother assigned her claims to him – and thus she must have only been seeking to "skirt" evidentiary rules.  Br. 10.  That is untrue.  Bakhda is Dhavrantray's son, which was plainly disclosed in Bakhda's initial moving papers, and that alone is a "legitimate purpose" for assignment. *CP Stone Fort Holdings, LLC, v. Doe(s)*, No. 16 C 4991, 2016 WL 5934096, at *3 (N.D. Ill. Oct. 11, 2016).

Nevertheless, as explained further in Bakhda's declaration, his mother assigned her claims to him for practical reasons, including that Bakhda has experience supervising attorneys and to address health safety concerns about his mother traveling during the COVID pandemic.  Bakhda Decl. ¶ 4.  Dhavrantray, nevertheless, will still abide by all rules of evidence and procedure here and, if it becomes necessary, will sit for a deposition.  Under similar circumstances, third parties routinely sit for depositions in securities class actions. *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *1, 4 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 App'x 73 (2d Cir. 2015) (noting that institutional investor City of Providence "as well as two representatives of its investment manager" were deposed).  Thus, Dass' concern with the "value of oral testimony" (Br. 12) is of no moment.[6]

---

[6] Dass cites to *Sokolow*, 2018 WL 3141814, at *7 n.6, in support of his contention that a reason for assignment must be given for it to be valid.  Br. 9.  But the *Sokolow* court did not hold that providing reasons for assignments were necessary for validity.  In addition, the lead plaintiff movants in *Sokolow*

Dass cites to *In re BP P.L.C. Sec. Litig.*, MDL No. 4:10-md-2185, 2016 WL 29300, at *6 (S.D. Tex. Jan. 4, 2016), in purported support of his speculation that Dhavrantray only assigned her claims to "skirt the rules of evidence and procedure". Br. 9. Apart from Dass' speculation being flatly wrong, *BP* is inapposite and does not help Dass. Indeed, *BP* did not concern an assignee seeking to serve as lead plaintiff; rather, it concerned a group of assignee plaintiffs that formed shell companies for no legitimate purpose, raising genuine issues of avoiding legal obligations. Here, there are no such issues as Dhavrantray assigned her claims to her son, Bakhda, for a legitimate purpose. *See* Bakhda Decl. ¶ 4. Dass' other citation, *CP Stone Fort*, fares no better as that court also allowed an assignment where, like here, it was for a "legitimate purpose". *CP Stone Fort Holdings, LLC, v. Doe(s)*, 2016 WL 5934096, at *3.

> **C.** **The Purported Unique Defenses Dass Raises Are Also Groundless And Do Not Rebut The Strong Presumption in Bakhda's Favor**

Dass further speculates that numerous "unique defenses" supposedly affect Bakhda's ability to serve as lead plaintiff. Not so. Dass must "come forward with some proof" that the unique defenses he raised are legitimate issues that will *likely be litigated at trial*. *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014). Dass has not done so, cannot do so, and his laundry list of groundless unique defenses are meritless.[7]

---

submitted affidavits relating to their assignments because the situation was far more complicated with over 200 assignments. Here, in stark contrast, the assignment is simply from a mother to son. Moreover, this relationship alone provides a reason for assignment though one is not necessary.

[7] Dass' citation to *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, CIV.A. No.11-6247-JBS-KMW, 2012 WL 3638629, at *13 (D.N.J. Aug. 22, 2012), is not to the contrary. In *Steamfitters*, the court reiterated that unique defenses will only preclude lead plaintiff appointment if they are "likely to become a major focus at litigation". As discussed above, that is not the case here. Moreover, the *Steamfitters* court held that five of the lead plaintiff movants that suffered losses had "not assigned their claims" to the only lead plaintiff movant with authority to bring the lawsuit. *Id*. at *2, 11. That is not the case here.

### 1. Bakhda Has A Powerful Motive to Litigate These Claims

Dass speculates, without any basis, that Bakhda has no "incentive" to litigate these claims. Br. 1. *See also* Br. 4 (Bakhda has no "motive[]" to litigate these claims). This is utterly ridiculous. What better incentive is there than to redress the substantial investment losses suffered by one's mother and the shareholder class that she is part of? *See also* Bakhda Decl. ¶ 6 ("I have all the motive in the world to vigorously represent my mother's interests in these actions and to obtain the best possible recovery for her and for the class of BBBY investors harmed by the alleged fraud.").

### 2. The Over 10-Year Old Fine Paid By Bakhda's Mother Is A Frivolous Unique Defense

Dass also argues that a 10-year old fine paid by Dhavrantray, which Dass' counsel self-servingly and unapologetically uses to label her a "criminal", subjects Bakhda to a unique defense that is likely to overwhelm the case. Not so. First, because Bakhda, not Dhavrantray, is moving for lead plaintiff, the fine is irrelevant here as Dass' own cited case, *Sokolow*, 2018 WL 3141814, at \*7 n.6, expressly recognizes. *See id*. (rejecting argument that lawsuit involving assignor was relevant to assignee's ability to serve as lead plaintiff, noting that "[assignor] Jarr Equities LLC has not moved to be appointed lead plaintiff in this matter; [assignee] Traditional [Capital LLC] has").

Second, even if Dhavrantray's 10-year old fine is somehow deemed tangentially relevant to her son's lead plaintiff motion (and it is not), it would not render Bakhda (or even Dhavantray if she had moved) inadequate to serve as lead plaintiff. Over 10 years ago (March 2010),

Dhavrantray paid a $21,000 fine for filing false addresses for directors who were not residing in Singapore. ECF 25-2 at 1. This fine is well in the past and tantamount to time served.[8]

In fact, Dhanvantray's fine is inadmissible under the Federal Rule of Evidence 609(b), which concerns evidence of a crime – and here, Dhavrantray paid a fine – for which more than 10 years have passed. Likewise, the SEC has determined that directors or offices of a company do not have to disclose past convictions that are more than ten years old. 17 CFR § 401(f)(2) provides, in relevant part, that a company must only disclose legal proceedings of directors or executive officers that are (i) less than ten years old and (ii) material to evaluate the ability or integrity of the individual.[9]

### 3. Bakhda's Option Investments Are An Asset, not a Liability – And, Regardless, He Has the Largest Financial Without Them

Dass speculates that Bakhda is subject to a unique defense because Dhanvantray made accumulator option investments.[10] Dass guesses about possible "private negotiations"

---

[8] Dass also exaggerates and mischaracterizes Dhanvantray's infraction. *See*, *e.g.*, Br. 10 (referring to Dhavrantray as a "criminal"); *id*. (characterizing Dhavrantray as "convicted for fraud"); *id*. at 2 (representing Dhavrantray's infraction as "securities fraud" when it had nothing to do with securities). Dass' shameless equating of a 10-year old fine with criminal activity and securities fraud should not be countenanced.

[9] Courts have repeatedly appointed individuals with infractions far worse than a fine as lead plaintiffs or class representatives. *See*, *e.g.*, *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 252 (E.D. Pa. 2006) (holding that a fifteen year old conviction for robbery did not give rise to a conflict between the proposed class representative and class members); *Delgado v. New Albertson's Inc.*, No. SACV080806 DOC (MLGx), 2010 WL 11507599, at *4 (C.D. Cal. Mar. 15, 2010) (certifying a class where the class representative had prior felony convictions); *Scuderi v. Mammoth Energy Servs.*, Inc., No. CIV-19-522-SLP, 2019 WL 4397340, at *4 (W.D. Okla. Sept. 13, 2019) (appointing movant with 27-year old felony drug conviction as part of lead plaintiff group); *In re Groupon, Inc. Sec. Litig.,* No. 12 C 2450, 2012 WL 3779311, at *4 (N.D. Ill. Aug. 28, 2012*)* (appointing individual investor as lead plaintiff where the investor had three DUI convictions and declared bankruptcy previously). These cases apply with greater force when the infraction here was far less serious and relates not to a lead plaintiff or class representative but to an assignor. Dass' citations on this point all concerned past acts by class representatives or lead plaintiffs – not assignors. *See Ross v. RBS Citizens, N.A.*, No. 09-cv-5695, 2010 WL 3980133, at *4 (N.D. Ill. Oct. 8, 2010), *aff'd*, 667 F.3d 900 (2012), *vacated and remanded on other grounds*, *RBS Citizens, N.A. v. Ross*, 133 S. Ct. 1722 (2013); *Pirelli,* 229 F.R.D. at 417; *Searcy v. eFunds Corp.*, No. 08 C 985, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010).

[10] An accumulator is essentially a contract that obliges investors to purchase a security, currency or commodity at regular intervals at a fixed price. It is, thus, similar to an option.

surrounding the options.  There were none.  *See* Bakhda Decl. ¶ 7 ("[t]he accumulator contracts that my mother entered into were purchased over the counter and not privately negotiated").  Option investments are nothing new and, if anything, Dhanvantray's investments are a point in Bakhda's favor because they reflect a broader class of BBBY securities – and both complaints here define class members as investors in BBBY "securities", not just BBBY common stock.  *See Vitiello* Cmplt. ¶ 1; *Kirkland* Cmplt. ¶ 1.  Indeed, courts routinely appoint lead plaintiffs who bought different kinds of securities.  *See, e.g., Blake Partners, Inc. v. Orbcomm, Inc*., Civ.A. No. 07-4517 (WHW), 2008 WL 2277117, at *5 (D.N.J. June 2, 2008).[11]  In fact, at the lead plaintiff stage courts routinely review with skepticism movants who seek to somehow limit a class as such arguments are usually self-serving.  *Cf. Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Investment Corp*., 256 F.R.D. 620, 624 n.7 (E.D. Wisc. 2009).  Moreover, Bakhda has the largest financial interest even without the accumulator trades, which only account for $118,803 of his $824,026 in losses.  *See* ECF No. 19-5.  Thus, even if his losses in BBBY accumulators were removed, Bakhda's losses would still be 10 times greater than Dass'.

### 4.      Dass' *Res Judicata* Concerns Are Also Illusory

Dass also claims Bakhda might be subject to unique *res judicata* issues if this case if this case is dismissed, Bakhda tries to litigate in Singapore, and Singapore does not recognize a U.S. judgment.  Courts have rejected this argument time and again where, like here, the proposed lead plaintiff bought shares of a U.S. company on a domestic (not foreign) stock exchange.  *See, e.g., Roby v. Ocean Power Techs., Inc*., No. 14-CV-3799 (FLW)(LHG), 2015 WL 1334320, at *11-14

---

[11] Dass' citation to *Weikel v Tower Semiconductor Ltd.*, 183 F.R.D. 377, 392 (D.N.J. 1998) is not relevant here because Weikel held that short sellers had reliance issues.  Bakhda is not a short seller.  And even if he was, a later case in this District shows that would not be an issue.  *See Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 461 (D.N.J. 2000) (making "some short sales does not render its claims atypical of the other plaintiffs in the putative class or subject to unique defenses such that it is incapable of adequately representing the case").

(D.N.J. Mar. 17, 2015 (rejecting *res judicata* argument against, and appointing, foreign lead plaintiff – represented by Dass' counsel – where it bought on a domestic exchange); *Cohen v. Luckin Coffee Inc.*, No. 1:20-CV-01293-LJL, 2020 WL 3127808, at \*8 (S.D.N.Y. June 12, 2020) (same); *OFI Risk Arbitrages*, 463 F. Supp. 3d at 403 (rejecting *res judicata* arguments and appointing French fund as lead plaintiff); *Foley v. TransOcean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("res judicata concerns in not appointing foreign investors as lead plaintiffs ... ha[ve] been explicitly rejected when the foreign lead plaintiff movants are suing as a result of purchases made on a domestic securities exchange").[12]

### III.    DASS IS UNFIT TO SERVE AS LEAD PLAINTIFF

In these lead plaintiff motions, Dass was a distant third in financial interest, which itself is sufficient to deny Dass' motion.  *See* Opp. at 1 (ECF No. 24).  Movants have the right to try to rebut the presumptive status of the movant with the largest financial interest (here, Bakhda) *when there are legitimate grounds for doing so*.  Dass has utterly failed to rebut the presumption in Bakhda's favor.  Instead, Dass, through his counsel, has demonstrated that he is willing to undermine the spirit of the PSLRA – which is to appoint the movant with the largest financial interest – and cannibalize any movant in his way through rank speculation and groundless and *ad hominem* attacks.  Dass has already demonstrated that he cannot serve as a fiduciary, but is only concerned with his own self-interests.  Accordingly, Dass' motion should be denied.

---

[12] After *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010), which limited the reach of U.S. securities laws to securities traded on a U.S. exchange or purchased in domestic transactions, the *res judicata* concerns raised by Dass have all but disappeared.  *Cf. In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 366 (S.D.N.Y. 2016) ("*Morrison* materially lessens the foreign *res judicata* concerns"), *aff'd in part, vacated in part*, 862 F.3d 250 (2d Cir. 2017).  Dass' one citation relating to *res judicata* is pre-*Morrison*. *See Buettgen v. Harless*, 263 F.R.D. 378, 382-83 (N.D. Tex. 2009).  *Buettgen* is also inapposite because, as noted by a court in this district, the *Buettgen* court "[u]nusually,…did not examine where the foreign plaintiff purchased the securities at issue").  *Roby*, 2015 WL 1334320, at \*13.

**CONCLUSION**

For the foregoing reasons and those given in his earlier submissions, Bakhda respectfully requests that the Court consolidate the Actions, appoint him as Lead Plaintiff and approve his selection of Bernstein Liebhard Lead Counsel for the Class and the Law Offices of Jan Meyer & Associates, P.C., as Liaison Counsel to the Class.

Dated: July 13, 2020

Respectfully submitted,

/s/ Richard Elem
**Law Offices of Jan Meyer & Associates, P.C.**
Jan Meyer, Esq.
Richard Elem, Esq
1029 Teaneck Road
Second Floor
Teaneck, New Jersey 07666
Telephone: 201-862-9500
Email: jmeyer@janmeyerlaw.com
        relem@janmeyerlaw.com

*Proposed Liaison Counsel for the Proposed Class*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Laurence J. Hasson
Joseph R. Seidman, Jr.
Matthew E. Guarnero
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: bernstein@bernlieb.com
        lhasson@bernlieb.com
        mguarnero@bernlieb.com

*Counsel for Kavin Bakhda and Proposed Lead Counsel for the Proposed Class*

## CERTIFICATE OF SERVICE

I, Richard Elem, hereby certify that on July 13, 2020, a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all parties with an email address of record who have appeared and consented to electronic service in this action.

Dated: July 13, 2020
/s/Richard Elem
Richard Elem