**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com

*Counsel for Movant Matthew Dass*
*and Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN AND JUNE VITIELLO, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:20-cv-04240-MCA-MAH |
| Plaintiff, | **MOVANT MATTHEW DASS'S SUR-REPLY** |
| v. | **MOTION DATE: July 20, 2020** |
| BED BATH & BEYOND INC., MARK J. TRITTON, MARY A. WINSTON, and ROBYN M. D'ELIA, | |
| Defendants. | |
| JERRY KIRKLAND, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 2:20-cv-05339-MCA-MAH |
| v. | |
| BED BATH & BEYOND INC., MARK J. TRITTON, MARY A. WINSTON, and ROBYN M. D'ELIA, | |
| Defendants. | |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................1

II.   ARGUMENT...................................................................................................3

    A. Bakhda's Declaration Contains Self-Serving Statements and Speculation Concerning His Mother's Affairs.............................................................3

    B. Bakhda's "Motive" to Litigate This Case Does Not Equate to a "Financial Interest." ...................................................................................................5

    C. Bakhda's Experience as a "Business Development Manager" Does Not Cure the Deficiencies in His Motion.........................................................6

III.  CONCLUSION................................................................................................7

# TABLE OF AUTHORITIES

**Cases**

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975).................................................................................. 5

*Knox v. Yingli Green Energy Holding Co.,*
   136 F. Supp. 3d 1159 (C.D. Cal. October 6, 2015) ........................................ 1

*Maldonado v. Ramirez*,
   757 F.2d 48 (3d Cir. 1985) ............................................................. 3

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999)........................................................... 6

*Perez v. Hexo Corp.*,
   No. 19 Civ. 10965 (NRB), 2020 U.S. Dist. LEXIS 32381 (S.D.N.Y. Feb. 25,
   2020) ........................................................................................ 7

*Shaw by Strain v. Strackhouse*,
   920 F.2d 1135 (3d Cir. 1990) ......................................................... 3

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)(iii)(bb) ........................................................ 5

**Rules**

Fed. R. Evid. 602 ....................................................................... 3

## I.   PRELIMINARY STATEMENT

Matthew Dass, a shareholder of Bed Bath & Beyond, Inc. ("Bed Bath & Beyond"), moved to be the lead plaintiff in this securities fraud class action lawsuit. Dkt. No. 17 (motion for lead plaintiff). At this point, only one other shareholder opposes the motion, Kavin Bakhda. Dkt. No. 19.[1] On July 13, 2020, Dass and Bakhda filed competing reply briefs arguing in support and opposition of their respective motions. Bakhda's brief, however, was accompanied by a declaration containing additional facts meant to resolve several key issues raised by Dass in the briefing. Dkt. No. 28-1. Procedurally, the declaration was improper given that it was filed belatedly at the conclusion of the briefing process. Substantively, it does nothing in terms of rectifying the flaws with his motion raised by Dass in the briefing.

Bakhda's motion suffers from several significant flaws, the majority of which arise from the "assignment" he received from his mother, Ragini Dhanvantray. Dkt. No. 19-5, p. 5. As explained in detail by Dass in the briefing, Bakhda's only connection to this lawsuit is the assignment. That assignment, however, does not bestow upon him a "financial interest" in the litigation. Instead, the assignment explicitly requires him to "remit any proceeds received as a result of [the] assignment" to his mother. *Id*. Additional issues stemming from the assignment include: the validity of the assignment itself; the purpose of the assignment; and Bakhda's inability to explain why his mother purchased atypical securities in Bed

---

[1] As explained previously, movant Richard R. Kahn filed a notice of non-opposition. Dkt. No. 23. Kahn's non-opposition is a decision to abandon the lead plaintiff process. *See*, *e.g.*, *Knox v. Yingli Green Energy Holding Co.,* 136 F. Supp. 3d 1159, 1162 n.2 (C.D. Cal. October 6, 2015) (Filing a non-opposition in favor of another movant's appointment is "a withdrawal of [the] request to be appointed lead plaintiff.").

Bath & Beyond. Although Bakhda intended for his reply declaration to resolve these issues, they do not.

Bakhda's mother, as the true purchaser of the Bed Bath & Beyond securities and the assignor of the claims at hand, is the appropriate individual to explain why she appointed Bakhda to litigate these claims. Bakhda's explanation relating to the "COVID pandemic" is self-serving, outside the scope of his personal knowledge, and otherwise constitutes impermissible hearsay. Similarly, Bakhda cannot speak to his mother's purchase of the "accumulator contracts," given that his mother was the one who purchased them.

In addition, although Bakhda purports to have "all the motive in the world" to represent his mother's interests and "obtain the best possible recovery" for the class, he does not support that statement with any facts or explanation. Pursuant to the "assignment" he received from his mother, Bakhda is required to "remit any proceeds received as a result of [the] assignment" to his mother, *i.e.*, Bakhda will not receive any compensation from this lawsuit. Dkt. No. 19-5, p. 5. Thus, the Court, Dass, and the unnamed class at large are left guessing as to what Bakhda's motives are and, despite what he states in his declaration, whether those motives will endure during the pendency of the litigation. The Private Securities Litigation Reform Act of 1995 requires the lead plaintiff to have a "financial interest" in the litigation. A mother's appreciation or a son's desire to do a good deed, for example, do not qualify as a "financial interest." Consequently, Bakhda's declaration does not resolve the issue raised in detail by Dass in his motion papers.

Bakhda also discusses his "experience working with and overseeing attorneys" due to his role as a "Business Development Manager," but provides no additional detail. His claim in this regard raises more questions than it answers. Indeed, Bakhda's "LinkedIn" page indicates that he is employed by Rikvin Capital, a finance and lending company owned and managed by his mother, Ms.

2

Dhanvantray, as its Chief Executive Officer.[2] Presumably, if any of Bakhda's legal experience was relevant to the issues currently before the Court (as opposed to unrelated or irrelevant family legal matters), he would have elaborated in some capacity, however minor.

For the reasons stated below, the Court should deny Bakhda's motion for lead plaintiff in its entirety, and appoint Dass and his counsel as lead plaintiff and lead counsel.

## II. ARGUMENT

### A. Bakhda's Declaration Contains Self-Serving Statements and Speculation Concerning His Mother's Affairs.

Bakhda's reply declaration introduces new facts which did not appear in his opening motion papers or brief in opposition to Dass's motion. These facts include conclusory statements about his mother's reasons for appointing him as the "point person" in this litigation and his mother's purchase of "accumulator contracts" through "over the counter" markets. Dkt. No. 28-1 at ¶¶4, 7. There is no factual basis for these statements. Bakhda's mother, not Bakhda, was the appropriate person to make these statements.

It is well-established that a declarant is not competent to testify to matters beyond his or her personal knowledge. *See* FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Declarations in violation of this fundamental rule are inadmissible and subject to striking. *See Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1144 (3d Cir. 1990) (citing *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985)).

---

[2] A true and accurate copy of Bakhda's "LinkedIn" page is attached hereto as Exhibit A.

Bakhda's declaration violates this simple, straight-forward rule. Specifically, Bakhda claims that his mother appointed him to pursue the claims for "practical reasons," including that it would be "safer for [Bakhda] to travel to the U.S." during the "COVID pandemic." Dkt. No. 28-1 at ¶4. That decision, however, was made by Bakhda's mother and, as such, she should be the one relating that information to the Court. The fact that Bakhda's mother did not make the declaration suggests that other reasons altogether may have motivated her to make the assignment. Either way, to accept Bakhda's explanation at face value would be inappropriate and prejudicial to Dass in the context of his motion.

Similarly, Bakhda's statement that his mother purchased the "accumulator contracts" at issue "over the counter and were not privately negotiated" is also lacking a factual foundation. There is no indication that Bakhda was personally involved in his mother's purchase of these securities or has any basis for knowing how and why his mother purchased them. An "accumulator contract" is a financial derivative product that requires the buyer to buy shares at a predetermined price for a specified period of time. They are uncommon, not traded on the national stock market exchanges, and typically acquired through private sales with investment banks.[3]

The lack of foundation for these statements underscores a key problem with appointing Bakhda as lead plaintiff. As Dass previously argued, the fact that Bakhda did not purchase the Bed Bath & Beyond securities at issue renders him unable to speak to many important issues in the case, such as whether and to what extent certain statements were materially misleading. This issue is analogous to the one

---

[3] A true and correct copy of The Wall Street Journal article titled "Accumulators Are Collecting Fans Again," dated August 31, 2009, is attached hereto as Exhibit B. It provides a general background about the type of security that Bakhda's mother purchased, explaining how it works and how the derivative product is typically sold.

described by the Supreme Court in *Blue Chip Stamps* when discussing the "high value of oral testimony" and the risk that juries would be exposed to unverifiable claims if the securities laws were expanded to protect investors who neither purchased nor sold stock. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 743, 746 (1975).

**B.  Bakhda's "Motive" to Litigate This Case Does Not Equate to a "Financial Interest."**

Bakhda purports to have "all the motive in the world" to represent his mother's interests and "obtain the best possible recovery" for the class. Dkt. No. 28-1 at ¶6. Notwithstanding, Bakhda does not describe what this motive actually is or how it translates into something capable of amounting to a "financial interest" in the litigation, as the Private Securities Litigation Reform Act of 1995 requires. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(bb) (requiring movant to demonstrate "largest financial interest in the relief sought by the class").

Dass argued at length in his prior motion papers that Bakhda did not have any "financial interest" in the litigation because the "assignment" he received from his mother explicitly requires him to "remit any proceeds received as a result of [the] assignment" to his mother. Dkt. No. 19-5, p. 5. Bakhda's declaration does not resolve this issue. The "motive" to which he alludes is not described. Dass, the Court, and the unnamed class at large can only assume or infer that Bakhda is referring to his desire to aid his mother or earn his mother's appreciation. That is, of course, speculation and, as such, cannot suffice for facts.

In any event, the securities laws require that the lead plaintiff possess a "financial interest" in the litigation. While "[t]he PSLRA does not define 'largest financial interest' or provide guidance as to how such a determination is made," courts routinely consider "four factors 'surely relevant' to this inquiry: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net

funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 105 (D.N.J. 1999). Bakhda's "motive," whatever it is, does not fall into any of these "financial interest" categories. Consequently, while the assignment may confer Bakhda with standing to pursue the claims at hand, its requirement that he remit any and all proceeds precludes him from having a "financial interest." Bakhda's declaration does not change this fact and, therefore, does not resolve the issue raised in detail by Dass in his motion papers.

> **C.  Bakhda's Experience as a "Business Development Manager" Does Not Cure the Deficiencies in His Motion.**

Bakhda claims "experience working with and overseeing attorneys" due to his role as a "Business Development Manager," but provides no additional detail. Dkt. No. 28-1 at ¶3. He does not provide any further description for this claim and offers no explanation as to how his supposed "experience" is relevant to the matter at bar.

In fact, this statement raises more questions than it answers. Bakhda's "LinkedIn" page indicates that he is employed by Rikvin Capital, a finance and lending company owned and managed by his mother, Ms. Dhanvantray, as its Chief Executive Officer. Given their relative roles within Rivkin Capital, it is far more likely that Bakhda's mother oversees the company's litigation and, to the extent any litigation is managed by Bakhda, it is likely outside the scope of his employment and unrelated to his job. Presumably, if any of Bakhda's legal experience was relevant to the issues currently before the Court (as opposed to unrelated or irrelevant family legal matters), he would have elaborated in some capacity.

Bakhda could have provided this background information earlier in the motion briefing, such as in his opening brief when discussing his "investing experience" and residency in Singapore. *See* Dkt. No. 19-2 at 2. He did not, however. Instead, he waited until the end of the briefing process to reveal this information.

6

"[G]iven [Bakhda's] failure to provide [this] information regarding his experience in his preliminary motion, the Court [should] question[] whether [he] will meaningfully oversee and control the prosecution of this consolidated class action." *See Perez v. Hexo Corp.*, No. 19 Civ. 10965 (NRB), 2020 U.S. Dist. LEXIS 32381, at \*7 (S.D.N.Y. Feb. 25, 2020).

## III.    CONCLUSION

Based on the foregoing, Dass respectfully request that the Court grant his motion: (1) consolidating the actions; (2) appointing him as Lead Plaintiff; (3) approving his selection of Levi & Korsinsky as Lead Counsel; and (4) granting such other relief as the Court deems just and proper.

Dated:  July 24, 2020                                 Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 *s/ Eduard Korsinsky*
Eduard Korsinsky
Nicholas I. Porritt (*pro hac vice* to be submitted)
Adam M. Apton (*pro hac vice* to be submitted)
55 Broadway, 10th Floor
New York, New York 10006
Tel.:  (212) 363-7500
Fax:  (212) 363-7171
Email: ek@zlk.com
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Counsel for Movant Matthew Dass*
*and Proposed Lead Counsel for the Class*

7

## <u>CERTIFICATE OF SERVICE</u>

I, Eduard Korsinsky, hereby certify that on July 24, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*s/ Eduard Korsinsky*
Eduard Korsinsky