UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN AND JUNE VITIELLO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BED BATH & BEYOND INC., *et al.*, <br><br> Defendants. | No. 2:20-cv-04240-MCA-MAH |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF KAVIN BAKHDA'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF CLASS, AND APPROVAL TO PROVIDE NOTICE TO THE CLASS**

00668871;V2

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ...................................................................................1

I.      FACTUAL AND PROCEDURAL BACKGROUND..........................................3

     **A.**   Procedural History ....................................................................................3

     **B.**   Negotiations and the Terms of the Proposed Settlement ...........................5

II.     STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e).......6

     **A.**   Preliminary Approval Should Be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, and Adequate" .......................................6

     **B.**   Settlement Should be Preliminarily Approved Where There Are No Grounds to Doubt its Fairness ...................................................................7

     **C.**   Public Policy Favors Settlement of Securities Class Actions.................7

III.    ARGUMENT...................................................................................................8

     **A.**   The Proposed Settlement Warrants Preliminary Approval.......................8

        **1.**   The Settlement is Fair, Reasonable, and Adequate Pursuant to Rule 23(e)(2)(A) ..................................................................................... 8

          **a)** Lead Plaintiff and Lead Counsel Adequately Represented the Proposed Class ........................................................................... 8

          **b)** The Settlement Was Negotiated at Arm's Length ............................... 9

          **c)** The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal, Support Preliminary Approval    10

          **d)** The Settlement Is a Good Result in Light of the Benefits of the Settlement and the Risks of Continued Litigation .............................. 12

             (i)     Risks of Proving Liability.................................................. 13

             (ii)    Effective Process for Distributing Relief.......................... 14

             (iii)   The Anticipated Attorney's Fees are Reasonable............. 15

             (iv)    Disclosure of Other Agreements....................................... 15

          **e)** Class Members Are Treated Equitably Relative to One Another ........ 16

     **B.**   Certification of the Class for Settlement Purposes is Appropriate ........16

        **1.**   The Class Meets the Requirements of Rule 23(a) ................................... 17

          **a)** Rule 23(a)(1): Numerosity ................................................................ 17

          **b)** Rule 23(a)(2): Questions of Law or Fact Are Common ..................... 17

00668871;V2

**c)** Rule 23(a)(3): Lead Plaintiff's Claims are Typical of Other Class Members' 18

**d)** Rule 23(a)(4): Lead Plaintiff Is an Adequate Representative .............. 19

2. The Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority ................................................... 20

    **a)** Common Legal and Factual Questions Predominate ........................... 20

    **b)** A Class Action is Superior to Other Methods of Adjudication ........... 21

3. The Court Should Appoint Lead Counsel as Class Counsel for the Class ................................................................................. 22

**C.** The Notice Program Satisfies Rule 23, Due Process and the PSLRA ................... 22

**D.** Proposed Settlement Schedule ........................................................................... 24

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ........................................................................................ 20

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 17

*Basic v. Levinson*,
  485 U.S. 224 (1988) ........................................................................................ 20

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) .............................................................................. 23

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .............................................................................. 7

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ....................................................................... 10, 11

*Glover v. Ferrero USA, Inc.*,
  No. CV 11-1086 (FLW), 2012 WL 12996302 (D.N.J. Sept. 18, 2012) ................... 19

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*
  No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ...................................... 13

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ............................................................................ 13

*In re Carrier IQ, Inc. Consumer Privacy Litigation*,
  No. 12-md-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016), *amended in part*
  No. 12-md-02330-EMC, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016) ...................... 16

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................................ 10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .............................................................................. 19

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ............................................................................ 10

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013) .......................................................................... 18

*In re Lucent Techs., Inc., Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004) ................................................................. 11, 21

*In re Nat'l Football League Players Concussion Injury Litig.*,
   *821* F.3d 410 (3d Cir. 2016) ......................................................................... 17, 18

*In re Ocean Power Techs., Inc.*,
   No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ..................................... passim

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) .............................................................................. 21

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
   No. CIV.A. 04-374 (JAP), 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ................................. 10

*In re Schering-Plough Corp. Sec. Litig.*,
   No. CIV.A. 01-0829, 2003 WL 25547564 (D.N.J. Oct. 10, 2003) ................................... 19

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
   No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020) ......... 6, 17, 19, 23

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .............................................................................. 16

*Jones v. Commerce Bancorp, Inc.*,
   No. 05-cv-5600 (RBK), 2007 WL 2085357 (D.N.J. July 16, 2007) ................................... 6

*Lazy Oil Co. v. Witco Corp.*,
   95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) .............................. 13

*Mack Trucks, Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of
   Am.-UAW*, No. 07-3737, 2011 WL 1833108 (E.D. Pa. May 12, 2011) ................................... 7

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) .............................................................................. 18

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
   No. CV 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017) .................................................. 15

*Schuler v. Medicines Co.*,
   No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ..................................... 13

*Shapiro v. All. MMA, Inc.*,
   No. CV 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018) ........................... 23

*Singleton v. First Student Mgmt. LLC*,
   No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ..................................... 10

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*,

No. 06-cv-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ..................................................... 7

*Stewart v. Abraham,*
  275 F.3d 220 (3d Cir. 2001) ............................................................................................. 17

*Varacallo v. Mass. Mut. Life Ins. Co.,*
  226 F.R.D. 207 (D.N.J. 2005) ........................................................................................ 8, 10

*Yedlowski v. Roka Bioscience, Inc.,*
  No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ......................... 15, 20

## STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................................. 20

15 U.S.C. § 78u-4(a)(7)(A)-(F) ............................................................................................... 24

## RULES

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 17

Fed. R. Civ. P. 23(a)(2) ............................................................................................................ 17

Fed. R. Civ. P. 23(a)(3) ............................................................................................................ 18

Fed. R. Civ. P. 23(a)(4) ............................................................................................................ 19

Fed. R. Civ. P. 23(b)(3) ............................................................................................... 20, 21, 22

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................ 22, 24

Fed. R. Civ. P. 23(e) ............................................................................................................... 2, 6

Fed. R. Civ. P. 23(e)(1) ............................................................................................................. 6

Fed. R. Civ. P. 23(e)(1)(A) ....................................................................................................... 6

Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 6

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................................... 9

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................................... 16

Fed. R. Civ. P. 23(e)(3) ............................................................................................................. 7

Fed. R. Civ. P. 23(g) ................................................................................................ 20, 22

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................................ 22

## OTHER AUTHORITIES

4 *Newberg on Class Actions* § 13:44 (5th ed. 2021)....................................................... 7

*Manual for Complex Litigation* §21.633 ....................................................................... 24

Lead Plaintiff Kavin Bakhda ("Lead Plaintiff"), on behalf of himself and the proposed Class, respectfully submits this memorandum in support of his unopposed motion seeking: (i) preliminary approval of the proposed Settlement[1] set forth in the Stipulation and Agreement of Settlement dated October 25, 2021 (the "Stipulation"); (ii) certification of the proposed Class and appointment of Lead Plaintiff as "Settlement Class Representative"; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Class Members; and (iv) the scheduling of a hearing date ("Settlement Fairness Hearing") at which the Court will consider (a) final approval of the Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses and award of costs to Lead Plaintiff relating to his representation of the Class.

## PRELIMINARY STATEMENT

Defendant Bed Bath & Beyond Inc. ("BBBY") has agreed to pay SEVEN MILLION DOLLARS to settle all claims in this Action on behalf of all Defendants (the "Settlement"). Lead Plaintiff respectfully submits that the Settlement is a fair and adequate resolution of this Action and hereby requests that the Court preliminarily approve the Settlement.

By the time the Settlement was reached, Lead Plaintiff and Lead Counsel were well-informed about the strengths and weaknesses of the claims and defenses in the Action. Prior to reaching the Settlement, Lead Plaintiff, through Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of BBBY's filings with the U.S. Securities and Exchange Commission ("SEC"), public

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation.  The Stipulation (with attached exhibits) is attached to the accompanying Declaration of Richard Elem ("Elem Declaration") as Exhibit 1.

00668871;V2

reports and news articles concerning BBBY, transcripts of BBBY's investor calls, interviews with former BBBY employees, and consultation with a damages expert; (ii) drafted the Amended Class Action Complaint (the "Amended Complaint") based on their investigation; (iii) opposed Defendants' motion to dismiss the Amended Complaint; and (iv) engaged in negotiations regarding the terms of the proposed Settlement, including a two-day mediation session before experienced mediator Jed Melnick, Esq., of JAMS.

Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval given that it is the result of vigorous arm's-length negotiations by experienced counsel, represents a favorable recovery that falls within the range of approval, readily satisfies the approval factors required by Fed. R. Civ. P. 23(e), is supported by due-diligence discovery performed by Plaintiffs' Counsel, and is in the best interests of the putative Class.

Accordingly, Lead Plaintiff requests that the Court (a) preliminarily approve the proposed Class; (b) preliminarily approve the form, manner, and content of the notice of the Settlement to the Class (the "Notice Plan"); (c) preliminarily approve the plan to allocate the Settlement proceeds ("Plan of Allocation'); and (d) set relevant dates for disseminating the Notice, for Class Members to file claims, opt out of, or object to the Settlement, and to set a date for a hearing on final approval of the Settlement.

Entry of Lead Plaintiff's proposed Preliminary Approval Order[2] will begin the process of considering final approval by authorizing notice of the Settlement to Members of the Class. A final Settlement Hearing will then be conducted, after the Class has been given an opportunity to object or seek exclusion from the Settlement, so that the Court can make a final determination as to

---

[2] Lead Plaintiff's proposed Preliminary Approval Order is attached as Exhibit 1-A to the Elem Declaration.

whether the Settlement is fair, reasonable, and adequate.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Procedural History

On April 14, 2020, Stephen and June Vitiello filed a securities class action complaint, styled *Vitiello v. Bed Bath and Beyond Inc., et al.*, No. 2:20-cv-04240-MCA-MAH, in the United States District Court for the Eastern District of New Jersey (the "Court") (ECF No. 1).  A second class action complaint asserting similar claims was filed with the Court by Jerry Kirkland on April 30, 2020, and styled *Kirkland v. Bed Bath and Beyond Inc., et al.*, 2:20-cv-05339-MCA-MAH. Pursuant to the procedures of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), by Order dated August 14, 2020, the Court consolidated the actions, and appointed Kavin Bakhda as Lead Plaintiff and Bernstein Liebhard LLP as Lead Counsel (ECF No. 35).

On October 20, 2020, Lead Plaintiff filed the Amended Complaint, asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act on behalf of all persons and entities that purchased BBBY securities between September 4, 2019 and February 11, 2020 (the "Class Period") (ECF No. 42).

Plaintiff's allegations center on BBBY's misrepresentations to the public, beginning in September 2019, about its ability to carry out a plan to rid itself of $1 billion in excess inventory over the course of eighteen months (known as the "Program"), and to do so without eroding margins and cannibalizing the critical 2019 holiday season.  Specifically, the Amended Complaint alleges that the Defendants misled investors by asserting that the Program was the product of adequate and careful planning by BBBY, which had meaningful oversight over the Program. BBBY also repeatedly assured investors that the Company safeguarded against the Program having adverse effects such as margin erosion and sales cannibalization, and that the risks of these

00668871;V2                                                    -3-

adverse effects were eliminated through the use of highly functional industry software that tracked the Program's progress in real time, among other measures.

The Amended Complaint alleges that these representations were materially false and misleading when made because Defendants knew or recklessly disregarded that the Program was not the product of adequate and careful planning by BBBY; that BBBY's management overhaul (which continued through 2020) left the Company without key personnel to properly execute and oversee the Program; and that the Program was causing precisely the adverse consequences Defendants assured investors it would not cause – aggressive erosion of BBBY's margins and cannibalization of BBBY's 2019 holiday sales.

On January 8, 2020, BBBY pulled its previously announced financial guidance completely and reported that its gross margins had dropped by 80 basis points.  On this news, BBBY's share price plummeted almost 20%, falling $3.20 to close at $13.40 per share on January 9, 2020.  One month later, on February 11, 2020, BBBY revealed the full truth when it announced preliminary results for 4Q19 and disclosed that BBBY's inventory management – *i.e.* the personnel, planning, and tools for the Program – was not functioning effectively, its gross margins had plummeted by 300 basis points (the largest drop in 10 years), and the Program had not only cannibalized BBBY's sales, but also led to empty and minimally stocked shelves of higher margin products needed to ensure a successful 2019 holiday season. On this news, BBBY's share price plummeted again – this time by over 20% – to close at $11.79 per share on February 12, 2020, on unusually heavy trading volume.

On December 21, 2020, Defendants moved to dismiss the Amended Complaint (ECF No. 47).  On February 12, 2021, Lead Plaintiff filed his Opposition to Defendants' Motion to Dismiss (ECF No. 51).  On March 15, 2021, Defendants filed their Reply (ECF. No. 54).

00668871;V2                                             -4-

On May 5, 2021, Defendants sent a letter informing the Court that the Settling Parties were discussing the possibility of convening a mediation in order to resolve the Action (ECF No. 57). On June 4, 2021, Defendants informed the Court that the Settling Parties had agreed to engage in mediation (ECF No. 59). Subsequently, on June 7, 2021, the Court administratively terminated Defendants' pending motion to dismiss, subject to reinstatement if the mediation was unsuccessful, and ordered the parties to update the Court on the status of the mediation (ECF No. 60).

On August 16, 2021, Defendants wrote the Court, apprising it that the Settling Parties had reached a settlement in principle.  ECF No. 61.

On October 26, 2021, Defendants wrote the Court, informing it that the Settling Parties had executed the Settlement Agreement and that, if plaintiffs continue to wish to proceed with the proposed settlement after conducting the due-diligence discovery, they should move for preliminary approval by the end of the year or in January 2022.  ECF No. 63.

On October 26, 2021, Defendants also filed the executed the Confidentiality Discovery Order.  ECF No. 63-1.  On October 28, 2021, the Court signed the Confidentiality Discovery Order.  ECF No. 65.

Between October 26, 2021 and December 14, 2021, Plaintiffs' Counsel conducted due-diligence discovery.

**B.      Negotiations and the Terms of the Proposed Settlement**

The Settling Parties exchanged mediation statements concerning causation and damages on July 20, 2021.  On August 3 and 4, 2021, the Settling Parties participated in two full days of mediation led by Jed D. Melnick, Esq., of JAMS.  At the conclusion of the August 4, 2021 mediation session, the Settling Parties reached an agreement in principle on the primary terms of a settlement, which was subject to various conditions.  On August 16, 2021, the Settling Parties

informed the Court of the status of the existence of the agreement in principle (ECF No. 60).

Thereafter, the Settling Parties negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action and related claims, in return for a cash payment by BBBY (on behalf of all Defendants) of $7,000,000 (the "Settlement Amount"), for the benefit of the proposed Class.

## II.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

### A.   Preliminary Approval Should Be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, and Adequate"

Rule 23(e) of the Federal Rules of Civil Procedure, recently amended, provides that a class action settlement must be presented to the Court for preliminary approval and should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020)*, report and recommendation adopted*, No. 3:15-CV-07658 (MAS) (LHG), 2021 WL 358611, at *6 (D.N.J. Feb. 1, 2021).  Preliminary approval is the prerequisite for disseminating notice to class members so that they may decide whether to approve or reject the settlement.  *See* Fed. R. Civ. P. 23(e)(1)(A); *see also Jones v. Commerce Bancorp, Inc.*, No. 05-cv-5600 (RBK), 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).  Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

Rule 23(e)(2) sets forth the following factors for the Court to consider:

(A)   have the class representative and class counsel adequately represented the class;

(B)   was the proposal negotiated at arm's length;

(C)   is the relief provided for the class adequate, taking into account:

(i)      the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitably relative to each other.

**B.    Settlement Should be Preliminarily Approved Where There Are No Grounds to Doubt its Fairness**

When evaluating a settlement for preliminary approval, a court "need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute" but instead consider whether the "proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval. This analysis often focuses on whether the settlement is the product of arms-length negotiations." *Mack Trucks, Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.-UAW*, No. 07-3737, 2011 WL 1833108, at *2 (E.D. Pa. May 12, 2011) (citations omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-cv-4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007).

**C.    Public Policy Favors Settlement of Securities Class Actions**

The law favors settlement, particularly in class actions and other complex cases. William B. Rubenstein, 4 *Newberg on Class Actions* § 13:44 (5th ed. 2021) ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because

they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."). Due to this presumption in favor of settlement, it is appropriate for a court to give substantial weight to the recommendations of experienced attorneys who negotiated the settlement. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005).

## III.    ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval

#### 1.    The Settlement is Fair, Reasonable, and Adequate Pursuant to Rule 23(e)(2)(A)

##### a)    Lead Plaintiff and Lead Counsel Adequately Represented the Proposed Class

Lead Plaintiff and Lead Counsel have adequately represented the interests of the proposed Class for purposes of Rule 23(e)(2)(A). Throughout the litigation, and in connection with the Settlement, the interests of Lead Plaintiff have been fully aligned with the proposed Class. Lead Plaintiff's claims are typical of and coextensive with the claims of the proposed Class, and he has no antagonistic interests; indeed, his interests in obtaining the largest recovery possible are aligned with other Class Members. Further, Lead Plaintiff has actively contributed to the Action by overseeing the litigation, communicating with counsel, and participating in settlement discussions with Lead Counsel.

Lead Counsel is well-versed in shareholder class action litigation and securities fraud cases and is among the most experienced firms in the securities litigation field. *See* Bernstein Liebhard LLP Firm Resume, attached to the Elem Declaration as Exhibit 2. Lead Counsel vigorously litigated the Action since its inception by, among other things: (i) representing Lead Plaintiff in the initial consolidation and lead plaintiff appointment process; (ii) conducting a thorough investigation of the facts underlying the Amended Complaint, which included the review of publicly available information regarding the Company; (iii) conducting detailed interviews with

00668871;V2                                                    -8-

former BBBY employees; (iv) preparing the Amended Complaint; (v) opposing Defendants' motion to dismiss; (vi) engaging in settlement negotiations; (vii) engaging and consulting with an expert concerning damages and loss causation; and (viii) reviewing due-diligence discovery in connection with the Settlement. Throughout the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims.

### b)    The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the Settlement was the result of lengthy negotiations between Lead Counsel and Defendants' Counsel over several months. The Settling Parties first discussed the potential for settlement in April 2021. The Settling Parties then discussed a potential Settlement in more detail in May and June 2021. The Settling Parties later agreed to mediate the Action in June 2021, submitting mediation briefs on causation and damages on July 20, 2021. The Settling Parties subsequently agreed to settle the Action in principle on August 4, 2021 for $7 million. The Settling Parties continued negotiations until the execution of the Stipulation on October 25, 2021.

Lead Counsel and Defendants' Counsel are experienced in complex securities class action litigation. As mentioned, and as further discussed below, prior to agreeing to the Settlement, Lead Counsel had reviewed publicly available information about the Company, interviewed former BBBY employees, and consulted with an expert concerning damages and loss causation. Accordingly, given the depth of their investigation and analysis, Lead Counsel was in an excellent position to evaluate the strength of the proposed Class's claims and reach a fair and reasonable settlement. Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable if it is reached by experienced counsel after arm's-length

negotiations. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012); *Varacallo,* 226 F.R.D. at 240; *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001). Plaintiffs' Counsel has also reviewed thousands of pages of documents in discovery in connection with the Settlement, none of which calls into question the adequacy of the Settlement.

> c) **The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal, Support Preliminary Approval**

In determining whether to grant final approval of class action settlements, courts in this Circuit consider the *Girsh* factors:

> "(1) complexity, expense and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

*Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). Although *Girsh* referenced factors for final approval of a class action settlement, these factors also guide a court's preliminary assessment of a class action settlement. *Id*.

> 1) **The *Girsh* Factors Support Preliminary Approval**

The first *Girsh* factor – the complexity, expense and likely duration of the litigation – supports approval of the Settlement. Securities class actions are notoriously complex and expensive to litigate because they require extensive investigations, discovery, and the retention of experts to opine on topics such as on market efficiency, loss causation, and damages. *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 (JAP), 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008) ("Federal securities class actions by definition involve complicated issues of law and

00668871;V2

-10-

fact").

The third factor, the stage of the proceedings, also supports approval.[3]  Although formal discovery was not conducted prior to the Settlement given the PSLRA discovery stay, "[c]ourts in this Circuit frequently approve class action settlement [sic] despite the absence of formal discovery." *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *17 (D.N.J. Nov. 15, 2016).  In any event, Plaintiffs' Counsel conducted due diligence in connection with the Settlement that confirmed the adequacy and fairness of the Settlement.  Lead Counsel also conducted an extensive pre-discovery investigation, which included reviewing the Company's SEC filings and public statements, reviewing analyst reports and news articles, as well as retaining an investigator. This culminated in Lead Plaintiff filing the Amended Complaint. Additionally, the motion to dismiss was fully briefed, and thus Lead Plaintiff had a clear understanding of the merits of the Action.

Further, the fourth, fifth, and sixth *Girsh* factors – the risks of establishing liability, establishing damages, and maintaining the class action through the trial – also support approval. Lead Plaintiff believes his claims are strong, but there is no guarantee that the Amended Complaint would survive the pending Motion to Dismiss. Even if the Court denied the Motion to Dismiss, Lead Plaintiff would still face significant hurdles in this litigation such as class certification, summary judgment, and trial. Courts have recognized that proof of the elements of securities fraud claims can be difficult to establish, particularly with respect to scienter. *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (finding settlement reasonable, in part, because proving scienter "would have been very difficult").

---

[3] The second *Girsh* factor, the class's reaction to a settlement, is not possible to gauge before notice of a settlement is disseminated. Lead Plaintiff, however, supports the Settlement.

**d)    The Settlement Is a Good Result in Light of the Benefits of the Settlement and the Risks of Continued Litigation**

When evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).

The proposed Settlement provides an immediate cash payment of $7,000,000 for the benefit of the proposed Class.  This is a good result in light of the significant risks attendant to continued litigation described above.

The Settlement Amount also provides a favorable recovery as a proportion of estimated damages for this Action.  According to the Settling Parties' damages experts, the Settlement represents approximately 3.1% of estimated damages.  This 3.1% is reached by averaging (i) the 2.3% recovery of Plaintiff's $300 million maximum estimated damages; and (ii) the 3.8% recovery of Defendants' estimated damages of $184 million. The amount and percentages of the Settlement are reasonable in light of the median settlement amount and percentage recovered as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements.  According to Cornerstone Research, the median 2020 settlement was $5.8 million and the recovery was 4.9% of damages for cases settling during a pending motion to dismiss – which is when this case was settled.  *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis*, Cornerstone Research (the "Cornerstone Report") at 14 (attached to accompany Elem Declaration as Exhibit 3).  Thus, this case settled for a slightly higher amount and recovered a slightly lower percentage of damages than the 2020 averages.

Courts in the Third Circuit have approved settlements with similar and even smaller recoveries. *See*, *e.g.*, *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *3, *7, *13 (E.D. Pa. Nov. 21, 2008) (approving settlement for 2.5% of damages); *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving settlement amount of approximately 4% of recoverable damages); *In re AT&T Corp.*, 455 F.3d 160, 169-70 (3d Cir. 2006) (affirming settlement for 4% of total damages); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"), *aff'd*, 166 F.3d 581 (3d Cir. 1999).

(i)     **Risks of Proving Liability**

Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation poses real risks that substantially less or no recovery at all might be achieved. At the time of the Settlement, Defendants' Motion to Dismiss the Amended Complaint had been fully briefed.  While Lead Plaintiff believes the Amended Complaint should be sustained, risks were shown through Defendants' motion. For example, Defendants have strenuously argued, and would continue to argue, that their challenged statements were not materially false and misleading when made because (i) the allegations of contemporaneous data contradicting Defendants' purported false statements were not sufficiently detailed; (ii) Defendants disclosed the risks associated with the Program; (iii) many of Defendants' statements were forward-looking and, thus, protected by the PSLRA's safe harbor; (iv) BBBY had new management in charge right before the Class Period; and (v) Defendants had no duty to disclose BBBY's lack of experience with the new markdown and based promotional based strategy. Further, Defendants would have continued to argue that even if Lead Plaintiff could establish a material misstatement or omission, there was no evidence

00668871;V2                                     -13-

upon which Lead Plaintiff could prove the requisite mental state of scienter – *i.e.,* that Defendants misled investors intentionally or with extreme recklessness.

If the Amended Complaint was sustained in full (or in part), there was still the risk that a Class would not be certified for all potential Class Members. Defendants would also likely have sought summary judgment and there was no guarantee that Lead Plaintiff would prevail against Defendants' challenges. Even if Lead Plaintiff did prevail, there are risks regarding how the Court's rulings would affect damages or how the case would be presented to the jury.

These risks aside, discovery would have been protracted and the trial of Lead Plaintiff's claims would inevitably be long and complex and even a favorable verdict would undoubtedly spur a lengthy post-trial and appellate process.

### (ii)    **Effective Process for Distributing Relief**

The method for processing Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  The Claims Administrator selected by Lead Counsel (subject to Court approval), JND Legal Administration (the "Claims Administrator"), is an experienced claims administrator that will process claims under the guidance of Lead Counsel. Potential class members will submit the Claim Form through the Settlement website or by hard copy, if necessary.  Based upon the trading information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Claim" based on the Court-approved Plan of Allocation.  Lead Plaintiff's claim will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection and cure deficiencies.  Any claim disputes that cannot be resolved will be presented to the Court for determination. This claims process is similar to that typically used in securities class action settlements.  *See P. Van Hove*

*BVBA v. Universal Travel Grp., Inc.,* No. CV 11-2164, 2017 WL 2734714, at *9 (D.N.J. June 26, 2017).

After the Settlement reaches the Final Settlement Date (*see* Stipulation ¶33) and all applicable deadlines have passed, Authorized Claimants will be issued checks. Any portion of the Settlement Fund that cannot be distributed will be distributed pursuant to the *cy pres* doctrine, to a beneficiary or beneficiaries chosen by the Settling Parties and approved by the Court. *Id*. at p.23 paragraph 7.

(iii)    **The Anticipated Attorney's Fees are Reasonable**

As set forth in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33 1/3% to compensate them for the services they have rendered to the Class.[4] The proposed fee amount is reasonable in light of the work performed and the result obtained. It is also consistent with awards in similar complex class actions within the Third Circuit. *See*, *e.g.*, *Yedlowski v. Roka Bioscience, Inc*., No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *22 (D.N.J. Nov. 10, 2016) ("For smaller securities fraud class actions, courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses"). The basis of Lead Counsel's fee and expense request will be detailed in their upcoming motion requesting fees and expenses.

(iv)    **Disclosure of Other Agreements**

The Settling Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively purchased a specific number of shares of BBBY common stock request exclusion (or

---

[4] Lead Counsel will also be seeking reimbursement of Litigation Expenses of no more than $100,000 and an award of reasonable costs to Lead Plaintiff in an amount not to exceed $5,000 directly related to his representation of the Class.

"opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-md-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (noting that "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack the settlement in his or her own self-interest"), amended in part No. 12-md-02330-EMC, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016).[5]

#### e) Class Members Are Treated Equitably Relative to One Another

The Plan of Allocation, drafted with the assistance of Lead Plaintiff's damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D). *See* Section III.A.1.(d).(ii) *supra*. Each Authorized Claimant, including Lead Plaintiff, will receive a distribution pursuant to the Plan of Allocation, and Lead Plaintiff will be subject to the same formula for distribution of the Settlement as other Class Members on the same *pro rata* basis. *See In re Ocean Power*, 2016 WL 6778218, at *3 (approving a settlement agreement where the settlement fund would be distributed on a pro rata basis).

### B.      Certification of the Class for Settlement Purposes is Appropriate

As part of the Settlement, Lead Plaintiff requests that the Court preliminarily certify the proposed Class (as defined in ¶ 1(nn) of the Stipulation).   The Third Circuit has long acknowledged that certifying a class solely for the purposes of a class action settlement is proper. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529-30 (3d Cir. 2004).

---

[5] Lead Counsel has been assisted by experienced Additional Counsel Pomerantz LLP pursuant to an agreement between Lead Counsel and Additional Counsel. Lead Counsel will be responsible for apportioning any fee award to other counsel.

The Class, like other certified classes, must satisfy the requirements of Rules 23(a) and (b). *See, e.g., In re Valeant*, 2020 WL 3166456, at *2-3. However, "whether trial would present intractable management problems … is not a consideration when settlement-only certification is requested." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

1.    **The Class Meets the Requirements of Rule 23(a)**

a)    **Rule 23(a)(1): Numerosity**

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). While there is no minimum required number of plaintiffs, in the Third Circuit, numerosity is presumed when a class consists of 40 or more members. *See, e.g., In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) ("numerosity is generally satisfied if there are more than 40 class members"); *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001) ("[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"). Here, the proposed Class is comprised of purchasers of BBBY common stock, which traded actively on the NASDAQ exchange under the ticker symbol "BBBY" during the Class Period. According to the Company's 2020 Annual Report issued on April 22, 2021, BBBY had 109,122,398 shares of common stock outstanding. These shares were purchased by thousands of investors, making joinder impracticable.

b)    **Rule 23(a)(2): Questions of Law or Fact Are Common**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality does not require an identity of claims or facts among class members; rather, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class," *In re Ins.*

*Brokerage Antitrust Litig.*, 297 F.R.D. 136, 148 (D.N.J. 2013), and "there is a low threshold for satisfying this requirement," *In re Ocean Power Techs., Inc.,* No. 3:14-CV-3799, 2016 WL 6778218, at \*5.  Furthermore, "[c]ourts will usually find commonality if the plaintiffs charge defendants with a common course of misconduct – particularly where, like here, the misrepresentations appeared in the Defendants' public statements that were disseminated to all investors." *Id.*

Here, the central questions of whether the alleged misstatements and omissions regarding BBBY's representations to investors relating to the Program, and whether Defendants acted with the requisite mental state, are the same for all members of the Class.  Accordingly, questions of law and fact are common to all Class members.

**c)    Rule 23(a)(3): Lead Plaintiff's Claims are Typical of Other Class Members'**

Rule 23(a)(3) requires that the claims of the class representative be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established "where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football*, 821 F.3d at 428.  *See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 183 (3d Cir. 2001), as amended (Oct. 16, 2001) ("If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."); *In re Ins. Brokerage Antitrust Litig*., 297 F.R.D. at 149  ("the Third Circuit has set a low threshold for satisfying typicality, holding that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established") *see also Newton*, 259 F.3d at 183-84.

Here, Lead Plaintiff's claims are typical of those of the proposed Class.  Like other Class Members, Lead Plaintiff purchased publicly traded BBBY common stock during the Class Period

on a U.S. Exchange and suffered damages based on the same alleged misrepresentations and omissions that Defendants made to the investing public during the Class Period. Thus, any Class Member's claim arising from these misrepresentations will rely on the same course of events. *See In re Valeant*, 2020 WL 3166456, at *4.

### d)   Rule 23(a)(4): Lead Plaintiff Is an Adequate Representative

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is measured by: (i) whether the claims of the proposed class representative conflicts with those of the class; and (ii) whether counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 800 (3d Cir. 1995). Both prongs of the adequacy test are met here.

First, Lead Plaintiff has and will continue to represent the interests of the Class fairly and adequately. There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Class. *See Glover v. Ferrero USA, Inc.*, No. CV 11-1086 (FLW), 2012 WL 12996302, at *25 (D.N.J. Sept. 18, 2012) (certifying class in the absence of "evidence that plaintiffs have any interests that are antagonistic to or in conflict with the class"). Lead Plaintiff and Class Members purchased BBBY common stock during the Class Period and were injured by the same alleged false statements and omissions. Thus, Lead Plaintiff and the proposed Class's interests are perfectly aligned, as they share the common objective of maximizing their recovery from Defendants. Furthermore, "[a]ny doubts concerning the adequacy of a class representative generally should be resolved in favor of certification." *In re Schering-Plough Corp. Sec. Litig.*, No. CIV.A. 01-0829, 2003 WL 25547564, at *6 (D.N.J. Oct. 10, 2003).

Second, Lead Plaintiff has proved his adequacy by retaining qualified counsel. Lead Counsel has extensive experience in complex securities litigation and class action proceedings

00668871;V2                                               -19-

throughout the United States. Lead Counsel is well qualified and able to conduct the Action and have ably and effectively represented Lead Plaintiff and the proposed Class throughout the Action, including by negotiating the Settlement.[6]

2.    **The Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority**

a)    **Common Legal and Factual Questions Predominate**

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is "readily met" in securities class action claims. *Amchem*, 521 U.S. at 623, 625.  "When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate." *In re Ocean Power*, 2016 WL 6778218, at *8 (internal citation omitted).

Here, common questions of law and fact predominate over individual questions because the alleged fraudulent statements and omissions affected all Class Members in the same manner, *i.e.*, through public statements made to the market. "[T]he existence of common questions and their predominance over individual issues are exemplified by the fact that if every class member were to bring an individual action, each plaintiff would be required to demonstrate the same omissions or misrepresentations to prove liability." *Yedlowski*, 2016 WL 6661336, at *8.

Moreover, class-wide reliance is established in this Action either based on the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988), or through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims are predicated upon misstatements and omissions of material fact.  Applying

---

[6] Accordingly, Lead Counsel satisfies the Class Counsel requirements of Rule 23(g) and has already been approved by the Court to represent the class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). *See* ECF No. 35.

the *Basic* or *Affiliated Ute* presumptions dispenses with the requirement that each Class Member prove individual reliance on the alleged misstatements or omissions. *See id.* Here, where BBBY common stock was traded on the NASDAQ, a national securities exchange, and was followed by numerous securities analysts and traded at regular substantial volumes, there is sufficient evidence of market efficiency. *See* Amended Complaint ¶ 238.

### b)    A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P 23(b)(3). The superiority inquiry essentially "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (citations omitted).

Here, there is no evidence that any putative Class Member desires to prosecute its own individual claims, and the Settling Parties are unaware of any individual securities fraud litigation involving the same issues. Further, resolution of this case through a class action is far superior to litigating (and settling) thousands of individual cases where the expense for a single investor would likely exceed its losses. *See, e.g., In re Lucent*, 307 F. Supp. 2d at 641 ("The class mechanism is the best way of resolving all class members's [sic] claims and sparing the judicial system the expense and burden of dealing with duplicative lawsuits….Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class

action device….Judicial economy and sheer access to justice demonstrates that a class action here involves large numbers of Class Members with relatively small individual claims") (internal citations and quotation marks omitted).[7]

      3.      **The Court Should Appoint Lead Counsel as Class Counsel for the Class**

A court that certifies a class must also appoint class counsel pursuant to Fed. R. Civ. P. 23(g).  Rule 23(g) directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigations, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Lead Counsel has done considerable work identifying and investigating the claims in this matter, as evidenced by the detailed Amended Complaint. The firm has also devoted substantial time, effort, and resources to the prosecution of this Action, and will continue to commit adequate resources to ensure that the Class is properly represented in this Action as Lead Counsel. For these reasons, among others, Lead Plaintiff respectfully requests that the Court appoint Lead Counsel to serve as Class Counsel.

    C.    **The Notice Program Satisfies Rule 23, Due Process and the PSLRA**

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the

---

[7] Since this is a request for class certification for settlement purposes only, the Court need not perform the Rule 23(b)(3) inquiry into whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

options that are open to them" in connection with the proceedings. *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1318 (3d Cir. 1993).

Lead Counsel proposes to provide Class Members notice by (i) mailing a copy of the Notice to all potential Class Members who can reasonably be identified and located using information provided by BBBY's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases; (ii) publication of the Summary Notice in *Investor's Business Daily*; (iii) dissemination of the Summary Notice on the internet using *PR Newswire*; and (iv) posting the Internet Notice on both the Settlement website and Lead Counsel's website. Sending the Notice by first-class mail, combined with the publication of the Summary Notice in a major publication and posting the Internet Notice on the Claims Administrator's website is typical of the notice provided in other class actions and satisfies the requirements of Rule 23 and due process. *See, e.g., In re Valeant*, 2020 WL 3166456, at *6; *In re Ocean Power* 2016 WL 6778218, at *10; *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *7 (D.N.J. June 28, 2018). Accordingly, the proposed notice program is reasonably calculated to apprise Class Members of the pendency of the Action and afford them an opportunity to present their objections.

In addition to the proposed methods of providing notice, the form and substance of the notice program are also sufficient. The proposed forms of notice describe the terms of the Settlement; the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and litigation expenses that may be sought; the procedure for requesting exclusion from the Class, objecting and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Fairness Hearing.

00668871;V2                                                    -23-

The internet Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Settling Parties do not agree on the amount of damages that would be recoverable even if Lead Plaintiff prevailed on each of his claims; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and expenses determined on an average per share basis), as well as a possible request for a reimbursement award to Lead Plaintiff; (iv) the name, telephone number, and address of a representative of Lead Counsel who will be available to answer questions; (v) the reasons why the Settling Parties are proposing the Settlement; and (vi) other information as may be required by the Court. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).[8]

Thus, the proposed Notice provides the information required under the PSLRA and courts have found notice substantially similar to that provided for in this Settlement constituted the "best notice that is practicable under the circumstances," satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(B). *See In re Ocean Power*, 2016 WL 6778218, at *10; *see also general Manual for Complex Litigation* §21.633.

Lead Counsel has carefully drafted the notice provision of the Settlement to provide the best notice practicable to the Class. Accordingly, Lead Counsel respectfully submits that the Notice and Summary Notice, as well as the Claim Form (Exhibits D and E to the Stipulation), are adequate.

**D.    Proposed Settlement Schedule**

The Court's entry of the proposed Preliminary Approval Order would, among other things,

---

[8] Lead Plaintiff also requests that the Court appoint JND Legal Administration as the Claims Administrator to provide all notices approved by the Court to the Class Members, to process Claims Forms, and to administer the Settlement.

(i) certify, for settlement purposes, this Action as a Class Action; and (ii) direct notice of the Proposed Settlement to all Class Members. As such, the Preliminary Approval Order sets a proposed schedule for issuing notice, and deadlines for submitting claims and/or objecting to the Settlement or opting out of the Class. Lead Plaintiff proposes the following schedule:

| Event | Proposed Timing |
|---|---|
| Mailing of the Postcard Notice to Class Members (Preliminary Approval Order, ¶ 7(b) and (c)) and the posting of Internet Notice and Proof of Claim Form on a website dedicated to the Settlement. | Within 20 business days after entry of the order preliminarily approving the Settlement (the "Notice Date") |
| Summary Notice published (Preliminary Approval Order, ¶ 7(d)) | Within 10 business days after the Notice Date |
| Settlement Fairness Hearing (Preliminary Approval Order, ¶ 5) | To be determined by the Court, a date not less than 110 calendar days from the entry of the order preliminarily approving the Settlement |
| Deadline to request exclusion from the Class (Preliminary Approval Order, ¶ 13) | Within 28 calendar days prior to the Settlement Fairness Hearing |
| Deadline to submit Claim Forms (Preliminary Approval Order, ¶ 10) | 120 calendar days after the Notice Date |
| Deadline for Lead Plaintiff to file papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff, and application for approval of the Plan of Allocation (Preliminary Approval Order, ¶ 27) | Within 35 calendar days prior to Settlement Fairness Hearing |
| Deadline for Objections to the Settlement, Plan of Allocation, Attorneys' Fees and Lead Plaintiff Award (Preliminary Approval Order, ¶ 16). Deadline for papers in Opposition to final approval and application of Lead Counsel for attorneys; fees, reimbursement of expenses, and an award to Lead Plaintiff, and application for approval of the Plan of Allocation | Within 28 calendar days prior to the Settlement Fairness Hearing |
| Deadline for Lead Plaintiff to file reply papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an award to Lead Plaintiff, and application for approval of the Plan of Allocation (Preliminary Approval Order, ¶ 27) | Within 7 calendar days prior to the Settlement Fairness Hearing |

**CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court issue an order

substantially in the form of the proposed Preliminary Approval Order: (i) preliminarily approving the Settlement; (ii) holding that the manner and forms of notice satisfy due process and prove the best notice practicable under the circumstances, and ordering that the Notice be provided to the Class; (iii) setting a date for the Settlement Fairness Hearing; (iv) appointing JND Legal Administration as Claims Administrator; (v) preliminarily certifying the Class and appointing Lead Plaintiff as Settlement Class Representative and Lead Counsel as Class Counsel; (vi) granting such other and further relief as may be required.

Dated: December 29, 2021                    Respectfully submitted,

                                            /s/ Richard L. Elem
                                            _____
                                            Jan Meyer
                                            Richard L. Elem
                                            Law Offices of Jan Meyer & Associates, P.C.
                                            1029 Teaneck Road
                                            Second Floor
                                            Teaneck, New Jersey  07666
                                            Tel: (201) 862-9500
                                            Email: jmeyer@janmeyerlaw.com
                                                   relem@janmeyerlaw.com

                                            *Liaison Counsel for Lead Plaintiff and the Proposed Settlement Class*

                                            **BERNSTEIN LIEBHARD LLP**
                                            Stanley D. Bernstein
                                            Laurence J. Hasson (admitted pro hac vice)
                                            Joseph R. Seidman, Jr. (admitted pro hac vice)
                                            Lisa Sriken
                                            10 East 40th Street
                                            New York, NY  10016
                                            Telephone: (212) 779-1414
                                            Facsimile:  (212) 779-3218
                                            lhasson@bernlieb.com
                                            seidman@bernlieb.com
                                            lsriken@bernlieb.com

                                            *Lead Counsel for Lead Plaintiff and the Proposed Settlement Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
Brian Calandra
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
      bcalandra@pom.law

*Additional Counsel for Lead Plaintiff and the Proposed Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that December 29, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/ Richard L. Elem
RICHARD L. ELEM

00668871;V2                                   -28-