UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STEPHEN AND JUNE VITIELLO,** Individually and on Behalf of All Others Similarly Situated, | **No. 2:20-cv-04240-MCA-MAH** |
| **Plaintiffs,** | |
| **v.** | |
| **BED BATH & BEYOND INC.,** *et al.*, | |
| **Defendants.** | |

## STIPULATION OF SETTLEMENT

WHEREAS capitalized terms in this Stipulation of Settlement have the meanings ascribed to them in Section I below; and

WHEREAS, on April 14, 2020, Stephen and June Vitiello filed the above-captioned securities class action against Bed Bath & Beyond Inc. ("BBBY") and several of its present or former officers or directors alleging violations of the Exchange Act; and

WHEREAS, on August 14, 2020, the Court appointed Kavin Bakhda as Lead Plaintiff and Bernstein Liebhard LLP as Lead Counsel for the putative Class; and

WHEREAS, on October 20, 2020, Lead Plaintiff and additional named plaintiff Richard Lipka filed the Complaint in the Action against BBBY and three of its present or former officers or directors (Mark J. Tritton, Mary A. Winston, and Robyn M. D'Elia) asserting claims under the Exchange Act; and

WHEREAS, on December 21, 2020, Defendants moved to dismiss the Complaint in its entirety; and

WHEREAS, on February 12, 2021, Plaintiffs filed their opposition to Defendants' motion to dismiss; and

WHEREAS, on March 15, 2021, Defendants filed their reply brief in further support of their motion to dismiss; and

WHEREAS, on June 4, 2021, Defendants sent a letter informing the Court that the Settling Parties had agreed to engage in mediation to try to resolve the Action; and

WHEREAS, on June 7, 2021, the Court administratively terminated Defendants' pending motion to dismiss, subject to reinstatement if the mediation did not succeed; and

WHEREAS, on August 3 and 4, 2021, the Settling Parties participated in two full days of mediation led by Jed D. Melnick, Esq., of JAMS; and

WHEREAS, at the end of the August 4, 2021 mediation session, the Settling Parties reached an agreement in principle on the primary terms of a settlement, which was subject to various conditions; and

WHEREAS, on August 16, 2021, the Settling Parties informed the Court of the existence of the agreement in principle; and

WHEREAS the Court directed the parties to report back to the Court by December 1, 2021 if the parties have not yet filed a motion for preliminary approval of the proposed Settlement by that date; and

WHEREAS the Settling Parties negotiated the full terms of a settlement, with such negotiations resulting in the execution of this Stipulation of Settlement and its exhibits; and

WHEREAS, throughout the pendency of the Action and the Settlement negotiations, Plaintiffs and Defendants have been advised by various consultants and experts, including individuals with expertise in estimating potential damages in cases involving allegations of

securities-law violations, and by competent counsel with experience in securities lawsuits such as this Action; and

WHEREAS, based upon Lead Counsel's investigation and evaluation of the facts and law relating to the claims alleged in this Action, Lead Counsel's pre- and post-filing investigations, and Lead Counsel's consultation with experts, Plaintiffs and Lead Counsel have agreed to settle the Action and release the Releasees as to the Released Class Claims pursuant to the terms of this Settlement Agreement and subject to its terms and conditions (including the completion of Due-Diligence Discovery) after considering, among other things:  (*i*) the substantial benefits that the terms of the proposed Settlement would provide to Class Members; (*ii*) the attendant risks of litigation, especially in complex actions such as this one; (*iii*) the defenses available to Defendants; (*iv*) the difficulties and delays inherent in such litigation; (*v*) the desirability of consummating this Settlement Agreement promptly to provide effective relief to Class Members; and (*vi*) Lead Plaintiff's and Lead Counsel's belief, to be verified through the Due-Diligence Discovery, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of Class Members; and

WHEREAS Defendants do not concede any wrongdoing or liability in connection with any facts or Claims that have been, could have been, or could be alleged in the Action, but they nevertheless prefer that the Action be settled and dismissed because the proposed Settlement would, among other things:  (*i*) bring to an end the substantial expense, burdens, and uncertainties associated with continued litigation of the asserted Claims; (*ii*) finally put to rest those Claims and the underlying matters; and (*iii*) confer substantial benefits upon Defendants, including avoidance of further disruption of the management and operation of BBBY's business due to the pendency and defense of the Action; and

3

WHEREAS this Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by Defendants or the other Releasees, or any of them individually, of any wrongdoing or liability; and

WHEREAS, except as otherwise provided in this Settlement Agreement, this Settlement Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, including Lead Plaintiff (individually and in his representative capacity) and Defendants, by and through their duly authorized counsel, that, subject to the Court's approval and such approval's becoming Final, (*i*) the Action and the matters raised in it are hereby settled and compromised as to Defendants, and (*ii*) the Action will be dismissed with prejudice as to Defendants based upon the terms and conditions set forth in this Settlement Agreement, including, among other things, that, as set out in the Release, the Released Class Claims will be released as to the Releasees, and the Released Releasees' Claims will be released as to the Releasors.

## I.      DEFINITIONS

A.      As used in this Settlement Agreement, the following terms have the meanings set forth herein:

1.      "Action" means the securities class action now pending in this Court and captioned *Vitiello v. Bed Bath & Beyond Inc.*, No. 2:20-cv-04240-MCA-MAH (D.N.J.), including any other cases that have been or might be consolidated into that action as of the Final

Settlement Date, including *Kirkland v. Bed Bath & Beyond Inc.*, No. 2:20-cv-05339-MCA-MAH (D.N.J.), which was consolidated into this Action pursuant to the Court's August 14, 2020 order.

2.     "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

3.     "Approval Order" means the order to be entered by the Court finally approving the Settlement and dismissing the Complaint and all Claims in the Action as contemplated in Section XIII of this Settlement Agreement, which order the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit B.

4.     "Attorneys' Fees and Expenses Application" means the motion for fees and expenses to be made by Lead Counsel as set out in Section X below.

5.     "Attorneys' Fees and Expenses Award" means the amount that the Court awards to Lead Counsel on behalf of all Plaintiffs' Counsel to compensate for Plaintiffs' Counsel's fees and expenses in connection with investigating, prosecuting, and/or settling the Action, as provided for in Section X below.

6.     "Authorized Claimant" means a Class Member (or the representative of such Class Member, including, but not limited to, agents, administrators, executors, heirs, predecessors, successors, Affiliates, or assigns) whose claim for recovery from the Net Settlement Amount has been allowed pursuant to the terms of this Settlement Agreement.

7.     "BBBY" means Bed Bath & Beyond Inc.

8.     "BBBY Affiliate" means any Affiliate, holding company, or subsidiary of BBBY, and any other person or entity affiliated with BBBY through direct or indirect ownership of BBBY shares.

9.     "BBBY Common Stock" means publicly traded common stock issued by BBBY.

10.     "Business Day" means a day other than a Saturday, Sunday, or Legal Holiday.

11.     "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) and 1715.

12.     "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and any losses whatsoever, whether in law, in admiralty, or in equity, and whether based on any United States federal, state, or common-law right of action or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims.

13.     "Claim Form" means the form, as approved by the Court, that Class Members will use to submit claims under the procedures set out in this Settlement Agreement, which form the Settling Parties shall ask the Court to approve substantially as set out as Exhibit F.

14.     "Claims Administrator" means, subject to Court approval and appointment in the Preliminary Approval Order, JND Legal Administration.

6

15. "Class" or "Class Members" means, for purposes of this Settlement, all persons and entities who, during the Class Period, purchased or otherwise acquired BBBY Common Stock. Excluded from the Class are:

a. such persons or entities who submit valid and timely requests for exclusion from the Class;

b. such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees arising out of or related to the Released Class Claims; and

c. BBBY and (*i*) all officers and directors of BBBY during the Class Period (including Mark J. Tritton, Mary A. Winston, and Robyn M. D'Elia), (*ii*) BBBY's Affiliates, subsidiaries, successors, and predecessors, (*iii*) any entity in which BBBY or any individual identified in subpart (*i*) has or had during the Class Period a Controlling Interest, and (*iv*) for the individuals identified in subpart(s) (*i*), (*ii*) and/or (*iii*), their Family Members, legal representatives, heirs, successors, and assigns.

16. "Class Period" means the period from September 4, 2019 through February 11, 2020, inclusive.

17. "Complaint" means the Amended Class Action Complaint for Violations of the Federal Securities Laws filed in the Action on October 20, 2020.

18. "Complete Bar Order" means the bar order, the text of which is set forth in paragraph 19 of the Approval Order (Exhibit B).

19. "Confidentiality Agreement" means the Confidentiality Agreement in the form entered into by Plaintiffs and Defendants, a copy of which is attached as Exhibit G.

20. "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or cause the direction of the management and policies of the entity, whether through the ownership of voting shares, by contract, or otherwise. Any disputes as to whether BBBY or any other Releasee has a Controlling Interest in an entity or whether an entity has a Controlling Interest in BBBY or any other Releasee shall, solely for purposes of determining whether a Controlling Interest exists under this Settlement Agreement, be submitted to the Mediator for final, binding resolution, and the party claiming that the interest is a Controlling Interest for purposes of this Settlement Agreement shall bear the burden of proof as to that issue.

21. "Court" means the United States District Court for the District of New Jersey.

22. "Defendants" means BBBY, Mark J. Tritton, Mary A. Winston, and Robyn M. D'Elia.

23. "Defendants' Counsel" means Proskauer Rose LLP and Cleary Gottlieb Steen & Hamilton LLP.

24. "Derivative Actions" means (*i*) the shareholder derivative actions now pending and captioned as *In re Bed Bath & Beyond Stockholder Derivative Litigation*, Master File No. 2:20-cv-08673-MCA-MAH (D.N.J.) (including the three actions currently consolidated under that caption), *Schneider v. Tritton*, Index No. 516051/2020 (N.Y. Sup. Ct., Kings Cty.), and *Anthony v. Tritton*, Index No. 514167/2021 (N.Y. Sup. Ct., Kings Cty.); and (*ii*) the shareholder demand letter submitted to BBBY by The Vladimir Gusinsky Revocable Trust.

25. "Due-Diligence Discovery" means the information that BBBY will provide to Lead Plaintiff as described in Section II below.

8

26. "Escrow Account" means the account described in Section III into which the Settlement Amount shall be paid. The Escrow Account shall be at Signature Bank, New York, New York. The Escrow Account shall be treated for tax purposes as a Qualified Settlement Fund, as described below.

27. "Escrow Agent" means Bernstein Liebhard LLP, which shall act as escrow agent for the Escrow Account. References to the Escrow Agent shall not refer to Bernstein Liebhard LLP to the extent it is acting as Lead Counsel rather than as Escrow Agent.

28. "Exchange Act" means the Securities Exchange Act of 1934, as amended.

29. "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

30. "Fairness Hearing" means the hearing at or after which the Court will make a final decision, pursuant to Fed. R. Civ. P. 23, as to whether this Settlement Agreement is fair, reasonable, and adequate to settle the Class Members' Claims against Defendants and the other Releasees and whether the Court should approve the proposed Settlement; *provided* that the Fairness Hearing shall be scheduled for a date that is no fewer than one hundred ten (110) days following the Preliminary Approval Date. It is within the Court's discretion to hold the Fairness Hearing in person, telephonically, or by videoconference.

31. "Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son, and/or daughter, and any other person living in, or a member of, such an individual's household.

32.     "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

a.     if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired;

b.     if any appeal is taken therefrom, on the date on which all appeals therefrom – including petitions for rehearing or reargument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

33.     "Final Settlement Date" means the date on which the Approval Order and the Judgment become Final.

34.     "Individual Notice" means the notice, as approved by the Court and as described in Section IV and in the Preliminary Approval Order, that Lead Counsel will cause the Claims Administrator to disseminate to potential Class Members informing them of the Settlement contemplated by this Settlement Agreement, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit D.

35.     "Investment Decision" means any decision regarding an investment in BBBY Common Stock by a Class Member during the Class Period, including a decision to hold such securities during the Class Period.

36.     "Judgment" means the Judgment entered by the Court as contemplated in Section XIII of this Settlement Agreement, which Judgment the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit C.

10

37.   "Lead Counsel" means the law firm of Bernstein Liebhard LLP. References to Lead Counsel shall not refer to Bernstein Liebhard LLP to the extent it is acting as Escrow Agent rather than as Lead Counsel.

38.   "Lead Plaintiff" means Kavin Bakhda, in his individual capacity and as representative of the Class.

39.   "Legal Holiday" means New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal observed holiday.

40.   "Mediator" means Jed D. Melnick, Esq., or, if he is unavailable, someone of similar stature upon whom the Settling Parties agree.

41.   "Net Settlement Amount" means the Settlement Fund *less* (*i*) any Tax Expenses paid or owing, (*ii*) any Notice and Administrative Expenses paid or owing, and (*iii*) the Attorneys' Fees and Expenses Award and the PSLRA Award.

42.   "Nominees" means brokerage firms, banks, and other institutions that hold BBBY Common Stock in street name or other similar fashion for the benefit of other persons or entities.

43.   "Notice and Administrative Expenses" means any and all expenses (other than Plaintiffs' Counsel's fees and expenses) associated with the administration of the Settlement contemplated by this Settlement Agreement, including the Claims Administrator's fees and expenses and all other fees and expenses associated with (*i*) printing and sending the Individual Notice and Claim Form to potential Class Members, (*ii*) publishing the Summary Notice, (*iii*) assisting Class Members with filing Claim Forms, (*iv*) processing Claim Forms, (*v*) setting

11

up and maintaining a toll-free telephone number for potential Class Members to call, (*vi*) operating a settlement website, and (*vii*) distributing the Net Settlement Amount, as well as (*viii*) any reasonable costs, fees, and expenses incurred in connection with the Escrow Account.

44.    "Notice Program" means the program for informing potential Class Members about the proposed Settlement, including the Individual Notice, the Claim Form, the Summary Notice, and the manner of delivering and publishing such notices or forms.

45.    "Operative Facts" means those facts and circumstances that provide the factual predicate for the claims asserted in the Action and shall include, among other things:

    a.    BBBY's management of inventory, including its use of promotions and markdowns to reduce its inventory during the Class Period;

    b.    BBBY's use of inventory, sales, and pricing programs, including Revionics and JDA, in connection with its inventory-reduction program, and any reports, analyses, or documents generated by such programs;

    c.    BBBY's communications with, demands received from, or negotiations with shareholders, including Legion Partners Asset Management, Macellum Advisors, and Ancora Advisors, relating to BBBY's management structure and personnel, its use of promotions, coupons, or other marketing methods, or its inventory management, including any actions taken by BBBY in response to such communications, demands, or negotiations;

    d.    any alleged meetings, communications, or discussions between or among BBBY employees regarding BBBY's inventory-reduction program, data, reports, or analyses provided by BBBY's inventory, pricing or management software (including but not limited to Revionics and JDA), or other attempts at reducing company inventory;

e.       any review, analysis, synthesis, presentation, or alleged concealment or attempted concealment of any alleged data, reports, or analyses provided by BBBY's inventory, pricing, or management software (including but not limited to Revionics and JDA);

f.       BBBY's merchandising or promotional strategies or operations, including its use (or lack of use) of coupon marketing, markdowns, and promotions;

g.       BBBY's changes to its management positions and structure, including (*i*) its replacement of Mary A. Winston as interim CEO with Mark Tritton, (*ii*) the termination or resignation of, and resulting search for replacements for, the Chief Merchandising Officer, Chief Marketing Officer, Chief Digital Officer, General Counsel, Chief Administrative Officer, and Chief Brand Officer, and (*iii*) the resignation of Robyn D'Elia;

h.       BBBY's financial guidance, projections, and earnings expectations, including revisions to or withdrawals of previously announced guidance;

i.       any salaries, bonuses, stock awards, or other compensation paid by BBBY to Mark J. Tritton, Mary A. Winston, or Robyn M. D'Elia;

j.       any alleged communications (whether internal to BBBY or external, and whether oral or written) relating to or evidencing any of the alleged conduct described in Section I.A.45.a-i;

k.       any Claims related to transactions in BBBY Common Stock by any Releasees during the Class Period, including any Claims under Exchange Act §§ 10(b), 20(a), or 20A or SEC Rule 10b-5 relating to such transactions, to the extent that such Claims are related in any way to the alleged conduct and/or topics described in Sections I.A.45.a-j;

13

l.      any allegedly false or misleading statements or omissions in any SEC filings (including Forms 10-Q and 10-K and proxy statements), Exchange Act or Sarbanes-Oxley certifications, or press releases filed or issued during the Class Period relating to the matters described in Sections I.A.45.a-k, including, without limitation, those addressing (*i*) BBBY's inventory during the Class Period, (*ii*) BBBY's inventory-management practices, policies, and programs, (*iii*) BBBY's use of inventory, pricing, and sales software, including Revionics and JDA, (*iv*) BBBY's hiring, termination, or recruitment of employees or executives, (*v*) BBBY's financial performance, results, estimates, projections, or guidance, (*vi*) BBBY's internal controls and policies, and (*vii*) the retail industry in general;

m.      any alleged misstatements or omissions at industry or investor conferences, or in analyst meetings, earnings calls, or other public statements, during the Class Period relating to the matters described in Sections I.A.45.a-l;

n.      any alleged inflation or decline in the price of BBBY Common Stock during the Class Period that is related to or arises out of the alleged conduct and/or topics described in Sections I.A.45.a-m; and

o.      any Claims under Exchange Action §§ 10(b) and/or 20(a) and/or SEC Rule 10b-5 arising out of the alleged conduct and/or topics described in Sections I.A.45.a-n.

46.      "Plaintiffs" means Lead Plaintiff and additional named plaintiff Richard Lipka.

47.      "Plaintiffs' Counsel" means Lead Counsel, the Law Offices of Jan Meyer & Associates, P.C. as Liaison Counsel for Plaintiffs and the Class, and additional counsel Pomerantz LLP.

48.     "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Amount among, and distributing it to, Authorized Claimants as the Court shall approve.  Lead Plaintiff shall ask the Court to approve a Plan of Allocation substantially in the form set out in the Individual Notice (Exhibit D).

49.     "Preliminary Approval Date" means the date on which the Preliminary Approval Order is entered on the Court's docket.

50.     "Preliminary Approval Order" means the order concerning, among other things, preliminary approval of the proposed Settlement, certification of the Class solely for settlement purposes, provision of notice of the proposed Settlement, administration of the proposed Settlement, and scheduling of the Fairness Hearing, which order the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit A.

51.     "PSLRA" means the Private Securities Litigation Reform Act of 1995, as codified in the Exchange Act.

52.     "PSLRA Award" means the amount that the Court awards to Lead Plaintiff pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), to compensate him for his reasonable costs and expenses directly relating to the representation of the Class.

53.     "PSLRA Award Application" means the application by which Lead Plaintiff shall seek a PSLRA Award, as provided for in Section XI below.

54.     "PSLRA Contribution Bar Order" means the statutory bar order, the text of which is set forth in paragraph 18 of the Approval Order (Exhibit B), to be entered by the Court pursuant to § 21(D)(f)(7)(A) of the Exchange Act.

55.     "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulation § 1.468B-1.

56.     "Released Class Claims" means each and every Claim that existed as of, on, or before the Execution Date and that Plaintiffs or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in the Complaint) or (*ii*) could have asserted or could assert against any of the Releasees in connection with or relating directly or indirectly to any of the Operative Facts or any alleged statements about, mischaracterizations of, or omissions concerning them, whether arising under any federal, state, or other statutory or common-law rule or under any foreign law, in any court, tribunal, agency, or other forum, if such Claim also arises out of or relates to the purchase or other acquisition of BBBY Common Stock, or to any other Investment Decision, during the Class Period; *provided, however*, that the term "Released Class Claims" does not include (and will not release or impair) (*i*) any claims asserted in any action under the Employee Retirement Income Security Act of 1974; (*ii*) any claims asserted in any shareholder derivative action on behalf of BBBY, including without limitation the claims asserted in the Derivative Actions; or (*iii*) any claims to enforce this Settlement Agreement.

57.     "Released Releasees' Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee (including Defendants and their successors and assigns), or his, her, or its respective estates, heirs, executors, agents, attorneys (including in-house counsel, outside counsel, and Defendants' Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators, and assigns, against Plaintiffs, any other Class Members, or any of their respective attorneys (including, without limitation, Plaintiffs' Counsel), and that arises out of or relates in any way to the initiation, prosecution, or settlement of the Action or the implementation of this Settlement

Agreement; *provided, however*, that Released Releasees' Claim shall not include any Claim to enforce the Settlement Agreement.

58. "Releasee" means each and every one of, and "Releasees" means all of, (*i*) BBBY, (*ii*) BBBY Affiliates, (*iii*) each of BBBY's and BBBY's Affiliates' current and former officers (including Mark J. Tritton, Mary A. Winston, and Robyn M. D'Elia), directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers and any entities in which BBBY or any BBBY Affiliate has or had a Controlling Interest or that has or had a Controlling Interest in BBBY or any BBBY Affiliate, and (*iv*) for each of the foregoing Releasees, (*y*) to the extent the Releasee is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendants' Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers, and investment bankers, and any entities in which any Releasee has or had a Controlling Interest or that has or had a Controlling Interest in the Releasee and (*z*) to the extent the Releasee is an individual, each of his or her Family Members, estates, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers, and reinsurers.

59.     "Releasor" means each and every one of, and "Releasors" means all of, (*i*) Plaintiffs, (*ii*) all other Class Members, and (*iii*) for each of the foregoing Releasors, their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, or any person purporting to assert a Released Class Claim on behalf of, for the benefit of, or derivatively for any such Releasors, *provided* that Releasors shall not include any BBBY shareholder to the extent that such person or entity seeks to assert a derivative claim on behalf of BBBY.

60.     "Settlement" means the settlement contemplated by this Settlement Agreement.

61.     "Settlement Agreement" means this Stipulation of Settlement and any accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

62.     "Settlement Amount" means seven million dollars ($7,000,000).

63.     "Settlement Fund" means the Settlement Amount, plus any interest that has accrued on the Settlement Amount on deposit in the Escrow Account.

64.     "Settling Parties" means Lead Plaintiff (on behalf of himself and the Class Members), additional named plaintiff Richard Lipka, and Defendants.

65.     "Summary Notice" means the notice described in Section IV, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit E.

66.     "Supplemental Agreement" means the agreement entered into by the Settling Parties through their respective counsel that is referenced in Section XIV.D below.  The Settling Parties agree to keep the Supplemental Agreement confidential and not to disclose it or file it with the Court unless (*i*) the Court otherwise orders or (*ii*) a dispute arises among the

Settling Parties concerning the Supplemental Agreement's interpretation or application. If the Supplemental Agreement must be provided to the Court, the Settling Parties shall seek leave to submit it *in camera* or to file it under seal.

67. "Tax Expenses" means (*i*) all taxes on the income of the monies in the Escrow Account and (*ii*) any expenses and costs incurred in connection with the taxation of the Escrow Account (including expenses of tax attorneys and accountants).

68. "Termination Threshold" means the threshold of requests for exclusion (as specified in the Supplemental Agreement) that gives rise to Defendants' right to terminate the Settlement Agreement pursuant to Section XIV.D.

69. "Unknown Claims" means any and all Released Class Claims that any Plaintiff or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasees, and any Released Releasees' Claims that any Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasors, which, if known by such Plaintiff, Class Member, or Releasee, might have affected his, her, or its decision concerning the Settlement. As to any and all Released Class Claims and Released Releasees' Claims, the Settling Parties stipulate and agree that, upon the Final Settlement Date, Plaintiffs and Defendants shall expressly waive, and each other Class Member, Releasor, and Releasee shall be deemed to have waived, and by operation of the Approval Order and the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor or
> releasing party does not know or suspect to exist in his or her favor

19

> at the time of executing the release and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.

Plaintiffs and Defendants acknowledge, and the other Class Members and Releasees by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Class Claims and Released Releasees' Claims was specifically considered and bargained for and was a key element of the Settlement.

      B.    Capitalized Terms

          1.    Capitalized terms used in this Settlement Agreement, but not defined above, shall have the meaning ascribed to them in this Settlement Agreement.

## II.    DUE-DILIGENCE DISCOVERY

      A.    Subject to the provisions of the Confidentiality Agreement, BBBY will provide Lead Counsel with reasonable Due-Diligence Discovery regarding the claims in the Complaint to allow Lead Plaintiff and Lead Counsel to determine whether the proposed Settlement is fair, reasonable, and adequate.

      B.    Due-Diligence Discovery shall consist of documents relevant to the claims in the Complaint. The documents will be provided in an electronic depository under the control of Defendants' Counsel.

      C.    The time period for Due-Diligence Discovery will begin on the Execution Date and will last for sixty (60) days following the Execution Date, unless the Settling Parties agree to shorten the period.

      D.    Any disputes regarding Due-Diligence Discovery (including any disputes about the content of that discovery) shall be submitted to the Mediator for final, binding resolution.

      E.    Due-Diligence Discovery may be used only in accordance with the terms of the Confidentiality Agreement and solely for purposes of assessing whether the proposed Settlement

is fair, reasonable, and adequate, and for no other purpose, including litigation of claims in this Action or in any other action or proceeding.

F.      Subject to Sections XIV and XV below, if the Due-Diligence Discovery contemplated by this Section II causes Lead Plaintiff and Lead Counsel reasonably and in good faith to conclude that the proposed Settlement Agreement is not fair, reasonable, and adequate, Lead Plaintiff will have the right to terminate this Settlement Agreement within 10 days following the conclusion of the Due-Diligence Discovery.

## III.    TERMS AND CONDITIONS OF THE SETTLEMENT

### A.     Payment of Settlement Amount

1.      At its sole election, BBBY will either pay or cause to be paid the Settlement Amount on behalf of all Defendants into the Escrow Account within twenty (20) Business Days following the Preliminary Approval Date.

2.      If the Settlement Amount is not paid into the Escrow Account within twenty (20) Business Days following the Preliminary Approval Date, Lead Counsel shall notify Defendants' Counsel that the payment has not occurred, and BBBY shall have five (5) Business Days to comply or obtain compliance with the obligation to pay the Settlement Amount into the Escrow Account in accordance with the provisions of the preceding paragraph.  If payment still has not occurred after the additional period of five (5) Business Days, Lead Plaintiff may, subject to Section XV below, terminate this Settlement Agreement.

### B.     Escrow Account

1.      Within five (5) Business Days following the Execution Date, Lead Counsel and Defendants' Counsel shall establish the Escrow Account.

2.      From its inception until the Final Settlement Date, the Escrow Account shall be under the joint control of Lead Counsel and Defendants' Counsel.

3.      As of the Final Settlement Date, the Escrow Account shall be under the sole control of Lead Counsel.

4.      The Escrow Agent shall (*i*) administer the Escrow Account, (*ii*) invest the Settlement Amount in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or in a bank with at least $50 billion in assets, and (*iii*) reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates.  The Escrow Agent shall bear all risks related to the investment of the amounts in the Escrow Account made in accordance with the guidelines set forth in this paragraph.

5.      The Escrow Agent shall disburse proceeds of the Escrow Account only (*i*) before the Final Settlement Date, by an order of the Court or upon the written instruction of both Lead Counsel and Defendants' Counsel and (*ii*) as of and after the Final Settlement Date, upon the written instruction of Lead Counsel; *provided, however*, that, before the Final Settlement Date, Lead Counsel may withdraw up to $150,000.00 for the Claims Administrator's fees and expenses without first consulting with or obtaining written instruction from Defendants' Counsel.

6.      If the Settlement Agreement is terminated as provided in this Settlement Agreement, the Escrow Agent shall, within ten (10) Business Days following receipt of written notice of such termination from Defendants' Counsel, return all monies then held in the Escrow Account (including any interest that has accrued) to BBBY or as instructed by Defendants' Counsel; *provided* that, before the return of monies pursuant to this Section III.B.6, Lead

22

Counsel shall advise Defendants' Counsel of any outstanding Notice and Administrative Expenses that are in progress or are due for payment, and, upon the written consent of Defendants' Counsel (which consent shall not be unreasonably withheld), the Escrow Agent shall pay such expenses from the Escrow Account.

   7. Upon the occurrence of the Final Settlement Date, and subject to Section XV below, no portion of the Settlement Amount shall revert to BBBY or any other Defendant, and no Defendant, Releasee, or any other person or entity who or that paid any portion of the Settlement Amount shall have any right to the return of the settlement money paid into the Escrow Account, or any portion thereof, for any reason whatsoever, including, without limitation, the number of Claim Forms submitted, the collective amount of recognized claims of Authorized Claimants under the Plan of Allocation, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Amount.

   8. The Escrow Account and the funds it contains shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the Court's jurisdiction until such time as the funds shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

   9. Any dispute about payments to be made out of the Escrow Account before the Final Settlement Date will be submitted to the Mediator for final, binding resolution.

  C. **Qualified Settlement Fund**

   1. All necessary steps to enable the Escrow Account to be treated as a Qualified Settlement Fund for tax purposes shall be taken, including the timely filing by Lead Counsel and/or its agents of all elections and statements required for tax purposes pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations, or

published rulings now or hereafter enacted or promulgated, for all taxable years of the Escrow

Account, beginning with the date of its establishment. Lead Counsel shall be the "administrator"

of the Qualified Settlement Fund for tax purposes under Treas. Reg. §§ 1.460B-0 through

1.468B-5, shall file or cause to be filed on a timely basis any required federal, state, and local tax

returns, and shall cause any taxes due on the income of the Qualified Settlement Fund and any

other Tax Expenses to be paid from the Escrow Account. The Settling Parties agree that the

Escrow Account shall be treated as a Qualified Settlement Fund, as provided in Treas. Reg.

§§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to any relation-

back election required to treat the Escrow Account as a Qualified Settlement Fund from the

earliest date possible. In no event shall Defendants have any responsibility whatsoever for filing

elections, other required statements, or tax returns, or for paying the costs associated therewith,

any taxes due, or the expenses of notice or administration of the Escrow Account. Lead Counsel

and Defendants' Counsel shall cooperate to the extent necessary to comply with this Section III.

Upon request by Lead Counsel, BBBY shall promptly provide the statement described in

Treasury Regulation § 1.468B-3(e).

2.       Upon request by Defendants' Counsel, the Claims Administrator shall

promptly provide to Defendants' Counsel all information requested in connection with (*i*) any

tax returns that BBBY or any other Releasee must file or (*ii*) any other report or filing that

BBBY or any other Releasee must make concerning the Settlement Amount or any portion of it.

D.       **Distribution of the Net Settlement Amount**

1.       If the proposed Settlement becomes Final, the Net Settlement Amount

shall be distributed pursuant to such Plan of Allocation as the Court approves.

2.     No person or entity shall have any Claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent, or any of their agents, or against Defendants or any other Releasee (including Defendants' Counsel), relating to or arising out of any distributions or lack thereof made under any Court-approved Plan of Allocation, this Settlement Agreement, or orders of the Court.

3.     The Settling Parties understand and agree that, notwithstanding any other provision of this Settlement Agreement, a court-ordered or court-approved change to the Plan of Allocation shall not operate to modify, terminate, or cancel this Settlement Agreement or affect the finality of the Approval Order and the Judgment or any other orders entered by the Court giving effect or pursuant to this Settlement Agreement.

4.     Development of the Plan of Allocation shall be exclusively the responsibility of Lead Plaintiff and Lead Counsel, *provided* that the Plan of Allocation shall not provide any Class Member (including Plaintiffs) with an amount in excess of his, her, or its recognized loss under the Plan of Allocation.

5.     Defendants, the other Releasees, and their respective counsel, including Defendants' Counsel, shall have no role in, responsibility for, or liability as to or in connection with, and shall take no position on, (*i*) the Plan of Allocation, (*ii*) the form, substance, method, or manner of allocation, administration, or distribution of the Net Settlement Amount, (*iii*) any tax liability that a Class Member might incur as a result of this Settlement Agreement, or (*iv*) the result of any action taken pursuant to this Settlement Agreement, the administration or processing of claims (including determinations as to the validity of Claim Forms), the amounts of claims or distribution of the Net Settlement Amount, or (except as set out above) the maintenance of the Escrow Account as a Qualified Settlement Fund.

25

6.       Class Members shall look solely to the Net Settlement Amount for settlement and satisfaction of all Released Class Claims and only to the extent expressly provided by this Settlement Agreement, the Court-approved Plan of Allocation, or an order of the Court.  Under no circumstances will any of the Settling Parties or any Releasee be responsible for the payment of any fees, costs, expenses, or other funds associated with or arising out of the Settlement contemplated by this Settlement Agreement other than as provided herein.

7.       Any portion of the Net Settlement Amount that cannot be distributed pursuant to the Plan of Allocation shall be distributed pursuant to the *cy pres* doctrine, with a beneficiary or beneficiaries to be agreed upon by the Settling Parties and approved by the Court.

E.       **Implementation of the Plan of Allocation**

1.       All cash distributions to Authorized Claimants shall be paid from the Net Settlement Amount pursuant to a Plan of Allocation approved by the Court.

2.       The Plan of Allocation is not a necessary term of this Settlement Agreement, and this Settlement Agreement is not conditioned on the approval of any particular plan of allocation.

3.       To receive a cash distribution from the Net Settlement Amount pursuant to any approved Plan of Allocation, a Class Member must be an Authorized Claimant pursuant to the procedures set out in this Settlement Agreement or by order of the Court.

4.       Unless otherwise authorized by the Court, each Class Member who wishes to receive a distribution from the Net Settlement Amount must complete and submit a Claim Form, as directed in the Individual Notice, Summary Notice, and Claim Form.  The Claim Form must be postmarked or received no later than the date stated in the Claim Form (unless otherwise

allowed by Lead Counsel or the Court), must be sent to the address stated in the Claim Form, and must be accompanied by adequate supporting documentation as described in the Claim Form.

5.     The Claim Form must be executed subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

6.     The validity of each submitted Claim Form will initially be determined by the Claims Administrator in accordance with the Plan of Allocation approved by the Court.  The Claims Administrator shall advise the Class Member in writing if it determines to reject the claim.  Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive, in the interests of achieving substantial justice, what Lead Counsel deems to be formal or technical defects in any Claim Forms submitted.  Lead Counsel, its designees or agents, Plaintiffs, Defendants' Counsel, Defendants, the other Releasees, and their counsel shall not have any liability arising out of any such determinations.  Persons who timely submit a Claim Form that is deficient or otherwise rejected shall be afforded a reasonable time (at least twenty (20) days) to cure such deficiency if it appears to be potentially curable.

7.     If any Class Member whose claim has been rejected in whole or in part desires to contest such rejection, the Class Member must, within twenty (20) days after the date of such rejection, submit to the Claims Administrator a notice and statement of reasons explaining the Class Member's grounds for contesting the rejection, along with any supporting documentation.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

8.     Each Class Member or other claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure; *provided, however,*

27

that such investigation and discovery shall be limited to that claimant's status as a Class Member and the validity and amount of the claimant's claim. No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of claims.

9.     Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Final Settlement Date has occurred, directing payment of the Net Settlement Amount to Authorized Claimants from the Escrow Account.

10.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all claimants. All Class Members whose claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Amount, but otherwise shall be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Approval Order and Judgment, to be entered in this Action and the Releases provided for herein and therein.

11.     The administration of the Escrow Account and the Net Settlement Amount, and decisions on all disputed questions of law and fact concerning the validity of any Claim Form or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court. All Class Members and Settling Parties expressly waive trial by court or jury (to the extent any such right might exist) and any right of appeal or review as to the Court's determinations. Any Class Member pursuing a dispute shall be responsible for his, her, or its own costs, including attorneys' fees, incurred in pursuing the dispute.

12.    The Net Settlement Amount shall not be distributed to Authorized Claimants until the Final Settlement Date has occurred.

13.    Unless otherwise ordered by the Court or otherwise provided for herein, any Class Member who fails to submit a valid and timely Claim Form shall be barred from receiving a distribution from the Net Settlement Amount, but shall nevertheless be bound by the Release and all proceedings, orders, and judgments in the Action even if he, she, or it has pending, or subsequently initiates, any litigation, arbitration, or other proceeding, or has any Claim, against any or all of the Releasees that is a Released Class Claim.

## IV.    NOTICE TO THE CLASS

### A.    Individual Notice

1.    Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, at least sixty (60) days before the deadline for objecting to or opting out of the Settlement, Lead Counsel shall cause the Claims Administrator to mail by first-class mail a copy of the Individual Notice and the Claim Form to all potential Class Members who can be identified through reasonable efforts, including by review of depositary institutions' records and any other inquiries conducted by the Claims Administrator.

2.    The Claims Administrator will also post the Individual Notice and Claim Form on its website by no later than the date on which the first Individual Notices are mailed to potential Class Members.

3.    BBBY shall make reasonable efforts to provide or cause its transfer agent(s) to provide to the Claims Administrator, by no later than five (5) Business Days following entry of the Preliminary Approval Order, lists of all persons and entities that purchased BBBY Common Stock during the Class Period, so that the Claims Administrator can provide

29

notice to such potential Class Members. To the extent practicable, the shareholder lists shall be in electronic form (such as Excel) and shall contain the names and addresses (and, if available, email addresses) of all potential Class Members who can be identified through reasonable efforts from BBBY's and/or its transfer agents' records.

B.   **Summary Notice**

1.   Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, at least fifty (50) days before the deadline for objecting to or opting out of the Settlement, the Claims Administrator shall cause a copy of the Summary Notice to be published one time in each of *The Wall Street Journal* and *Investor's Business Daily*, as well as on the PRNewswire.

C.   **CAFA Notice**

1.   No later than ten (10) calendar days following the filing of this Settlement Agreement with the Court, Defendants shall cause notice to be provided to United States federal and state officials if and to the extent required by CAFA. BBBY is solely responsible for the costs of the CAFA notice and administering the CAFA notice. At least seven (7) calendar days before the Fairness Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with the notice requirements of CAFA.

2.   The Settling Parties shall request a schedule for the Fairness Hearing that is consistent with the notice periods prescribed in CAFA, with such hearing to be at least 110 days after entry of the Preliminary Approval Order.

D.      **Notice Costs**

1.      All expenses incurred in connection with the provision of the Individual Notice and the publication of the Summary Notice will be paid from the Settlement Amount.

2.      BBBY shall be solely responsible for the costs associated with providing CAFA notice, if any.

## V.      CLAIMS ADMINISTRATOR

A.      As provided in the Preliminary Approval Order, the Claims Administrator shall assist Lead Plaintiff and Lead Counsel in administering and implementing the Settlement contemplated by this Settlement Agreement.  BBBY shall cooperate in the administration of the Settlement Agreement to the extent reasonably necessary to effectuate its terms (but not including any acts that the Claims Administrator, Plaintiffs, and/or Lead Counsel are required to undertake pursuant to this Settlement Agreement).

B.      The Claims Administrator shall perform various tasks as directed by Lead Counsel, including:  (*i*) printing the Individual Notice and Claim Form and mailing them to potential Class Members, (*ii*) arranging for publication of the Summary Notice, (*iii*) posting the Individual Notice, Claim Form, and other documents relevant to the Settlement and the Action on a website for the Settlement, (*iv*) answering written inquiries from potential Class Members and/or forwarding such inquiries to Lead Counsel, (*v*) providing additional copies of the Individual Notice and Claim Form, upon request, to Nominees or potential Class Members, (*vi*) receiving and maintaining any requests for exclusion from the Settlement from potential Class Members, (*vii*) receiving and processing Claim Forms from Class Members, (*viii*) mailing or causing to be mailed to Authorized Claimants their distributions under the Plan of Allocation, (*ix*) operating a toll-free telephone number with access to operators to answer inquiries from

potential Class Members and/or to forward such inquiries to Lead Counsel, and training staff members and operators about the proposed Settlement and the Plan of Allocation, and (x) otherwise administering and implementing this Settlement Agreement.

C.     As ordered by the Court in the Preliminary Approval Order, the Claims Administrator shall establish, and shall staff with representatives knowledgeable about this Settlement Agreement and the Plan of Allocation, a toll-free telephone number for responding to inquiries from potential Class Members about this Settlement Agreement and any issues relating to the Action.

D.     Except as otherwise set out in this Settlement Agreement, all administration expenses associated with implementing the Settlement, including the Claims Administrator's fees and expenses, will be paid from the Settlement Amount in the Escrow Account.

E.     Lead Plaintiff and Lead Counsel have selected the Claims Administrator subject to the Court's approval and after obtaining BBBY's consent.

F.     If a settlement of the Derivative Actions is achieved, Lead Plaintiff and Lead Counsel will not object to having the Claims Administrator also administer any such derivative settlement; *provided, however,* that all administrator and administrative costs attributable solely to any derivative settlement will be paid by BBBY and will not come out of the Settlement Amount in the Escrow Account.

## VI.   COMMUNICATIONS REGARDING THE SETTLEMENT

A.     Subject to Section VI.B below, and except to the extent certain disclosures have already been made, no further disclosure of the Settlement or its terms will be made by the Settling Parties, Lead Counsel, or Defendants' Counsel before the Settlement Agreement is

submitted to the Court for preliminary approval unless the Court requires such disclosure before such submission.

B.      Notwithstanding Section VI.A above, nothing shall prevent BBBY from determining, in its sole discretion, to disclose the Settlement and/or its terms before the submission of the Settlement Agreement to the Court for preliminary approval or to make whatever disclosures it believes are required or appropriate, including in its SEC filings or to its regulators, stock exchanges, attorneys, accountants, and insurers; *provided, however*, that BBBY shall inform Lead Counsel in advance of any such public disclosure made before the Settlement Agreement is filed with the Court.

C.      Each Settling Party shall have the opportunity to review any other Settling Party's press release(s) (if any), and any press releases or public statements (other than court filings, including PSLRA notices) issued by Plaintiffs or Lead Counsel concerning the proposed Settlement or BBBY must be approved by BBBY, which approval shall not be unreasonably withheld.

D.      The Settling Parties shall cooperate in good faith to ensure that any media statements regarding the Settlement are balanced, fair, accurate, and nondisparaging.

E.      The Settling Parties, Lead Counsel, and Defendants' Counsel agree that they will refrain from asserting that the Action was brought or defended in bad faith.

F.      Except as provided in the Individual Notice and Summary Notice or in court filings in support of Court approval of this Settlement, the Settling Parties, Lead Counsel, and Defendants' Counsel agree that none of them will comment publicly on the merits of the Claims or defenses asserted in the Action except in the most general terms in the context of supporting or commending the Settlement terms; *provided, however,* that nothing in this Section VI shall

33

preclude Releasees from denying liability.  Nothing in this Settlement Agreement shall prevent BBBY (or other Releasees) from announcing the existence of the Settlement and its potential impact (if any) on BBBY's financial performance, as BBBY may deem appropriate for securities-law purposes (including by way of SEC filing or press release).  Nor shall this Settlement Agreement prevent BBBY (or other Releasees) from publicly stating, including but not limited to in response to questions from investors, analysts, customers, or others, that it denies Plaintiffs' allegations, has asserted defenses in the Action, and has entered into the Settlement to avoid the further expense and distraction of continued litigation.

G.      BBBY retains the right to communicate with its shareholders in the normal course of business.

## VII.    REQUESTS FOR EXCLUSION

A.      Any potential Class Member who wishes to be excluded from the Class must mail by first-class mail, or otherwise deliver, a written request for exclusion to the Claims Administrator at the address provided in the Individual Notice or Summary Notice, which exclusion request must be received no later than twenty-eight (28) days before the Fairness Hearing, or as the Court may otherwise direct.  A list of the persons and entities who have validly and timely requested exclusion from the Class shall be provided by the Settling Parties to the Court at or before the Fairness Hearing.

B.      A potential Class Member's request for exclusion must include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) a statement that the potential Class Member wishes to request exclusion from the Class in *Vitiello v. Bed Bath & Beyond Inc.*, No. 2:20-cv-04240-MCA-MAH (D.N.J.), (*vi*) the number of shares of BBBY Common Stock held as of opening of trading on September 4, 2019 and purchased or

34

otherwise acquired and/or sold through close of trading on May 11, 2020, (*vii*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*viii*) the date of each such transaction involving each such security, and (*ix*) the signature of the person or entity requesting exclusion or of an authorized representative.

C.     The Settling Parties agree that a request for exclusion shall not be valid or effective unless it provides all the required information as described above and is received within the time stated above, or is otherwise accepted by the Court.

D.     Unless otherwise ordered by the Court, any Class Member who does not submit a timely written request for exclusion as provided by this Section VII shall be bound by the Release and by all proceedings, orders, and judgments in the Action, even if he, she, or it has pending or subsequently initiates any litigation, arbitration, or other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Class Claims.

E.     Plaintiffs agree that they and their Affiliates will not request exclusion from the Class or the Settlement.

## VIII.   OBJECTIONS TO SETTLEMENT

A.     Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, to the Attorneys' Fees and Expenses Application, and/or to the PSLRA Award Application must both serve on Lead Counsel and Defendants' Counsel and file with the Court a statement of his, her, or its objection(s); *provided, however*, that a potential Class Member who requests exclusion from the Class shall not be entitled to submit an objection. Any such objection must be received by Lead Counsel, Defendants' Counsel, and the Court by no later than twenty-eight (28) days before the Fairness Hearing, or as the Court may otherwise direct.

B.     The Class Member's statement of objection shall state the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection, and shall state whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class.  In addition to the reason(s) for the objection, an objection must also include the following information about the Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) number of shares of BBBY Common Stock held as of opening of trading on September 4, 2019 and purchased or otherwise acquired and/or sold through close of trading on May 11, 2020, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*vii*) the date of each such transaction involving each such security, and (*viii*) account statements verifying all such transactions.

C.     Any Class Member may file an objection on his, her, or its own, or through an attorney hired at his, her, or its own expense.  If a Class Member hires an attorney to represent him, her, or it in connection with filing an objection, the attorney must both serve on Lead Counsel and Defendants' Counsel and file with the Court a notice of appearance.  Subject to the requirements of the Preliminary Approval Order, any such notice of appearance must be received by Lead Counsel, Defendants' Counsel, and the Court by no later than twenty-eight (28) days before the Fairness Hearing, or as the Court may otherwise direct.

D.     Any Class Member who files and serves a written objection pursuant to this Section – and, unless otherwise ordered by the Court, only such Class Members – may appear at the Fairness Hearing, either directly or through counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, to the Attorneys' Fees and Expenses

Application, or to the PSLRA Award Application.  Class Members or their attorneys intending to make an appearance at the Fairness Hearing must both serve on Lead Counsel and Defendants' Counsel and file with the Court a notice of intention to appear.  Any such notice must be received by Lead Counsel, Defendants' Counsel, and the Court by no later than twenty-eight (28) days before the Fairness Hearing, or as the Court may otherwise direct.  The Court has discretion to allow appearances at the Fairness Hearing in person, by telephone, or by videoconference.

E.       Any Class Member who fails to comply with any of the provisions of this Section VIII shall waive and forfeit any and all rights he, she, or it might otherwise have to appear separately at the Fairness Hearing and/or to object to this Settlement Agreement, the Plan of Allocation, the Attorneys' Fees and Expenses Application, or the PSLRA Award Application, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders, and judgments in the Action.

## IX.     RELEASE AND WAIVER

A.       Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.D below, on and after the Final Settlement Date, Plaintiffs and all other Class Members (whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Class Member), on behalf of themselves and the other Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged:

1.       all Released Class Claims against each and every one of the Releasees;

2.       all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or

37

all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) this Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement, and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

        3.    all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in this Settlement Agreement.

        B.    Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.D below, on and after the Final Settlement Date, each and every Releasee, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Plaintiffs, Plaintiffs' Counsel, and each and all other Releasors from any and all Released Releasees' Claims, except to the extent otherwise specified in this Settlement Agreement.

        C.    Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.D below, on and after the Final Settlement Date, Plaintiffs' Counsel, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, and assigns, and any person or entity claiming by, through, or on behalf of any of

them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants, Defendants' Counsel, and all other Releasees from any and all Claims that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) this Settlement Agreement or its implementation, or (*iii*) the Settlement terms and their implementation, except to the extent otherwise specified in this Settlement Agreement.

D.    Notwithstanding Sections IX.A, IX.B, and IX.C above, nothing in the Approval Order or the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement, the Approval Order, or the Judgment.

E.    The releases and waivers contained in this Section were specifically considered and bargained for and are essential elements of this Settlement Agreement.

## X.    ATTORNEYS' FEES AND EXPENSES

A.    Lead Counsel will submit to the Court for approval an Attorneys' Fees and Expenses Application in which Lead Counsel will apply for a collective award of attorneys' fees to Plaintiffs' Counsel and for payment or reimbursement of Plaintiffs' Counsel's litigation expenses incurred in the Action.  Lead Counsel's Attorneys' Fees and Expenses Application is not the subject of any agreement between Defendants and Plaintiffs other than as set forth in this Settlement Agreement.

B.    The Attorneys' Fees and Expenses Award will be paid to Lead Counsel as set out in this Section X.

C.      Any Attorneys' Fees and Expenses Award shall be paid to Lead Counsel solely

from the Settlement Amount immediately after the Court enters both the Approval Order and the

Attorneys' Fees and Expenses Award, notwithstanding the existence of any timely filed

objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any

part thereof; *provided, however,* that Plaintiffs' Counsel must return the amount of the

Attorneys' Fees and Expense Award plus interest to the Escrow Account (or to BBBY if the

Escrow Account has been closed) within twenty (20) Business Days if (*i*) the Settlement is

terminated after payment has been made or (*ii*) as a result of any objection, appeal, or further

proceedings on remand, or successful collateral attack, the Attorneys' Fees and Expenses Award

is reduced or reversed and such order reducing or reversing the award has become Final.  No

Releasee shall have any responsibility for, or any liability relating to, any obligation of Plaintiffs'

Counsel to make appropriate refunds or repayments to the Escrow Account or to BBBY

(including any interest that must be refunded).

D.      An Attorneys' Fees and Expenses Award is not a necessary term of this

Settlement Agreement and is not a condition of the Settlement embodied herein.  Neither Lead

Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any

appellate court's ruling with respect to the Attorneys' Fees and Expenses Application.  Any

objection to or appeal from the Attorneys' Fees and Expenses Award shall not affect the finality

of the Approval Order or Judgment if the Court has entered them.

E.      No Releasee shall be liable or obligated to pay any fees, expenses, costs, or

disbursements to, or incur any expense on behalf of, any person or entity (including Plaintiffs

and Lead Counsel), directly or indirectly, in connection with the Action or this Settlement

Agreement, except as expressly provided for in this Settlement Agreement.  No Releasee shall

have any responsibility or liability for any payment of any such fees or expenses beyond the obligation to cause the Settlement Amount to be paid.

  F. Lead Counsel shall allocate the attorneys' fees portion of the Attorneys' Fees and Expenses Award among Plaintiffs' Counsel in good faith.  No Releasee shall have any responsibility whatsoever in connection with, or any liability for, the allocation of the Attorneys' Fees and Expenses Award between or among Plaintiffs' Counsel or any other counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award or any other amount of attorneys' fees or expenses in connection with this Action.

## XI. PSLRA AWARD

  A. Lead Plaintiff may submit a PSLRA Award Application to the Court for approval, which Application will take into account the time spent by Lead Plaintiff in pursuing the Action (including, without limitation, the time spent consulting with Lead Counsel and reviewing documents, filings, and factual materials in the Action) as well as any other expenses incurred by Lead Plaintiff directly related to his representation of the Class.

  B. Any PSLRA Award made to Lead Plaintiff shall be paid to him from the Settlement Amount immediately after the Court enters both the Approval Order and the PSLRA Award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof; *provided, however,* that Lead Plaintiff must return the amount of the PSLRA Award plus interest to the Escrow Account (or to BBBY if the Escrow Account has been closed) within twenty (20) Business Days if (*i*) the Settlement is terminated after payment has been made or (*ii*) as a result of any appeal or further proceedings on remand, or successful collateral attack, the PSLRA Award is reduced or reversed, and such order reducing or reversing the award has become Final.  Any objection to or

appeal from the PSLRA Award shall not affect the finality of the Approval Order or Judgment if the Court has entered them.

## XII.   PRELIMINARY APPROVAL

A.     Within twenty (20) days following the conclusion of Due-Diligence Discovery, Lead Plaintiff shall move the Court for entry of the Preliminary Approval Order, which motion shall be unopposed by Defendants.

B.     Plaintiffs and Defendants stipulate to the certification of the Class and certification of Lead Plaintiff as representative of the Class and Lead Counsel as class counsel for the Class solely for the purpose of this proposed Settlement.  If the proposed Settlement is not approved by the Court or is not consummated for any other reason, Defendants reserve the right to oppose certification of the Class, or any other class, and to oppose certification or appointment of Lead Plaintiff as representative of, and Lead Counsel as counsel for, the Class, or any other class, in the Action.

## XIII.   FINAL APPROVAL AND FINAL JUDGMENT

A.     Lead Plaintiff and Defendants shall jointly request that the Court enter the Approval Order and the Judgment upon the Court's approval of the Settlement contemplated by this Settlement Agreement.

## XIV.   MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT

A.     The terms and provisions of this Settlement Agreement may be amended or expanded by written agreement of the Settling Parties; *provided, however*, that, after entry of the Approval Order and the Judgment, Lead Counsel, on behalf of Plaintiffs and the Class, and Defendants' Counsel, on behalf of Defendants, may by written agreement effect any amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by

the Court only if such changes are not materially inconsistent with the Approval Order and Judgment and do not materially limit the rights of Class Members under this Settlement Agreement.

### B.    Mutual Termination Rights

1.    Subject to Section XIV.B.2 below, this Settlement Agreement will terminate at the sole option and discretion of Defendants and/or Lead Plaintiff (on behalf of himself and the Class) if (*i*) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Settling Party reasonably and in good faith determines is material, including the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class, the Complete Bar Order, the permanent injunction, and/or the terms of the Release, or (*ii*) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Approval Order, or the Judgment that the terminating Settling Party reasonably and in good faith believes is material.  If the Settling Parties disagree about whether a change is material, they will submit the dispute to the Mediator for a final, binding decision.  In any of the above circumstances, the terminating Settling Party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section, no later than thirty (30) days after receiving actual notice of the event prompting the termination.

2.    Notwithstanding the preceding Section XIV.B.1, neither Lead Plaintiff nor Lead Counsel may terminate this Settlement Agreement on the basis of the Court's order(s) addressing the Attorneys' Fees and Expenses Application, the PSLRA Award Application,

and/or the Plan of Allocation, or on the basis of any modification of the Attorneys' Fees and Expenses Award, the PSLRA Award, and/or the Plan of Allocation by any appellate court(s).

C.     **Lead Plaintiff's Termination Rights**

1.     In addition to the other termination rights described in Section XIV.B, Lead Plaintiff has the termination rights specified in Section II.F (concerning Due-Diligence Discovery) and Section III.A (concerning nonpayment of the Settlement Amount) above.

D.     **Defendants' Termination Rights**

1.     In addition to having the right to terminate this Settlement Agreement as provided in Section XIV.B above, and without limiting any other rights under this Settlement Agreement, Defendants may unilaterally withdraw from and terminate this Settlement Agreement if timely, valid requests for exclusion are received from potential Class Members in an amount that meets or exceeds the Termination Threshold as set out in the Supplemental Agreement.  Defendants must exercise any such right by no later than five (5) calendar days before the Fairness Hearing.

2.     The Claims Administrator shall promptly notify Lead Counsel and Defendants' Counsel of all requests for exclusion submitted by potential Class Members and shall also provide Lead Counsel and Defendants' Counsel with copies of any such requests for exclusion and the supporting information and documentation submitted by such persons or entities.

3.     Lead Counsel shall have the right to communicate with any persons or entities that submit requests for exclusion.  If any of those persons or entities withdraws his, her, or its request for exclusion such that the Termination Threshold is no longer met, Lead Counsel

will immediately inform Defendants' Counsel, and the election termination (if made) will automatically become null and void and of no further effect.

      E.     **Effect of Termination**

          1.     If this Settlement Agreement is terminated in accordance with any provision of this Section XIV, the Settlement Agreement shall be withdrawn from, terminated, and deemed to be null and void, and the provisions of Section XV of this Settlement Agreement shall apply.

## XV.    GENERAL MATTERS AND RESERVATIONS

      A.     If an option to withdraw from and terminate this Settlement Agreement arises under this Settlement Agreement, (*i*) neither Defendants nor Lead Plaintiff will be required for any reason or under any circumstance to exercise that option, and (*ii*) if any Settling Party exercises the option to withdraw from or terminate the Settlement, the terminating Settling Party shall do so in good faith.

      B.     If (*i*) this Settlement Agreement does not become Final or is otherwise terminated pursuant to its terms, (*ii*) the Releases set out in Section IX do not become effective, or (*iii*) the Settlement does not become Final by operation of law, then:

          1.     This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms set out in this Section XV.B;

          2.     This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it (including the agreement in principle reached on August 4, 2021) shall be without prejudice to the rights of Defendants, any other Releasee, Plaintiffs, or any other Class Member, all of whom shall be restored to their respective positions

45

existing immediately before the execution of this Settlement Agreement, except with respect to the payment of such Tax Expenses and Notice and Administrative Expenses that have been actually expended or incurred as described in Sections III, IV, and V above;

      3.     Releasees expressly and affirmatively reserve all defenses, motions, and arguments as to all Claims that have been or might later be asserted in the Action, including any argument that the Action may not be litigated as a class action;

      4.     Plaintiffs and all other Class Members expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted in the Action, including any argument concerning class certification;

      5.     Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever, with the exception of enforcement of this Section XV.B;

      6.     The terms and provisions of the Confidentiality Agreement as set out in Exhibit G shall continue in full force and effect, and the use of information obtained in Due-Diligence Discovery shall be governed by such Confidentiality Agreement;

      7.     All monies in the Escrow Account shall be returned to BBBY as set out in Section III above;

      8.     Plaintiffs' Counsel and Lead Plaintiff must return any payment of the Attorneys' Fees and Expenses Award or PSLRA Award in accordance with the terms of Sections X.C and XI.B above; and

      9.     Except as specifically provided herein, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees or expenses.

C.      All of the exhibits attached to the Settlement Agreement are incorporated by reference as though fully set forth herein.

D.      The Settling Parties intend that the Settlement Agreement shall be a final and complete resolution of all disputes that were, could have been, or could be asserted as to the Released Class Claims and the Released Releasees' Claims.  Accordingly, the Settling Parties agree not to assert in any forum that any conduct of Plaintiffs and/or Defendants, or any of them, in connection with this Action, the Settlement of this Action, or any of the Released Class Claims or Released Releasees' Claims was in bad faith or was unreasonable.  No Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action, and the proposed Approval Order shall contain a statement reflecting the Settling Parties' compliance with Rule 11.

E.      The Settling Parties agree that the amount paid and the other terms of the Settlement Agreement were negotiated at arm's length and in good faith by the Settling Parties and reflect an agreement that was reached voluntarily, after consultation with experienced legal counsel, and under the auspices of the experienced Mediator.

F.      Each Settling Party's counsel signing this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of his or her clients.

G.      Lead Plaintiff, through his duly authorized representative, represents that he (*i*) has agreed to serve as representative of the Class proposed to be certified herein, (*ii*) has consulted with Lead Counsel about the Action, this Settlement Agreement, and the obligations of a representative of the Class, (*iii*) supports the Settlement, and (*iv*) will remain in and not request exclusion from the Class and will serve as representative of the Class until the terms of this

Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that Lead Plaintiff cannot represent the Class.

H.      Additional named plaintiff Richard Lipka, through his duly authorized representative, represents that he (*i*) has consulted with Lead Counsel about the Action and this Settlement Agreement, (*ii*) supports the Settlement, and (*iii*) will remain in and not request exclusion from the Class.

I.      This Settlement Agreement and the Supplemental Agreement set forth the entire agreement among the Settling Parties as to their subject matter and may not be altered or modified except by a written instrument executed by all Settling Parties' counsel.  Plaintiffs and Defendants expressly acknowledge that there are no agreements, arrangements, or understandings among or between them concerning the subject matter of this Settlement Agreement other than those expressed or referred to in this Settlement Agreement and the Supplemental Agreement, and no Settling Party has relied upon any representation or warranty not set forth expressly herein or in the Supplemental Agreement; *provided further* that the terms of the Settlement Agreement supersede the agreement in principle reached on August 4, 2021.

J.      This Settlement Agreement shall be governed by and interpreted according to the laws of the State of New York, excluding its conflict-of-laws provisions, except to the extent that federal law requires that federal law govern.

K.      Any action arising under or to enforce this Settlement Agreement or the Supplemental Agreement shall be commenced and maintained only in the Court, which shall retain continuing, exclusive jurisdiction over all matters relating to the Settlement other than those specifically reserved for resolution by the Mediator.  The Settling Parties and the Class Members expressly submit to the Court's jurisdiction for those purposes.

L.      Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by email and/or next-day (excluding Saturday, Sunday, and Legal Holidays) express-delivery service as follows and shall be deemed effective upon such email transmission or delivery to the email address or street address, as the case may be, below:

    1.      If to Defendants, then to:

> Jonathan E. Richman
> jerichman@proskauer.com
> Julia D. Alonzo
> jalonzo@proskauer.com
> Proskauer Rose LLP
> Eleven Times Square
> New York, NY 10036-8299
> Telephone:  (212) 969-3000

    2.      If to Lead Plaintiff, then to:

> Stanley Bernstein
> bernstein@bernlieb.com
> Laurence J. Hasson
> lhasson@bernlieb.com
> Joseph R. Seidman, Jr.
> seidman@bernlieb.com
> Bernstein Liebhard LLP
> 10 East 40th Street
> New York, NY 10016
> Telephone:  (212) 779-1414

M.      All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a Legal Holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather conditions or other

conditions have made the office of the Clerk of Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

N.     The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

O.     All Setting Parties agree that this Settlement Agreement and the Supplemental Agreement were drafted by counsel for the Settling Parties at arm's length and that no parol or other evidence may be offered to explain, construe, contradict, or clarify their terms, the intent of the Settling Parties or their counsel, or the circumstances under which the Settlement Agreement and the Supplemental Agreement were made or executed.  Nor shall there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement or the Supplemental Agreement.

P.     This Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability, which Releasees expressly deny.  This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Class Claims.  In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or any other judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce this Settlement Agreement.  Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as,

received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendants, or as a waiver by Defendants of any applicable defense.

Q.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members or to any of the Settling Parties is being given or will be given by Defendants' Counsel and/or Lead Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  Class Members will be directed to consult their own tax advisors regarding the tax consequences of the proposed Settlement and any tax reporting obligations they might have with respect to it.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

R.     The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

S.     The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

T.     This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by email in electronic format (including .pdf format) shall be fully and legally binding on a Settling Party.

U.      All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Final Settlement Date to enforce the terms of the Release set forth in this Settlement Agreement.

Agreed to as of this 25th day of October, 2021.


_____ by LJH

Stanley Bernstein
Laurence J. Hasson
Joseph R. Seidman, Jr.
Bernstein Liebhard LLP
10 East 40th Street
New York, New York  10016
(212) 779-1414
bernstein@bernlieb.com
lhasson@bernlieb.com
seidman@bernlieb.com

*Lead Counsel for Plaintiffs and the Proposed*
*Settlement Class*


_____

Jonathan E. Richman
Julia D. Alonzo
Proskauer Rose LLP
Eleven Times Square
New York, New York  10036
(212) 969-3000
jerichman@proskauer.com
jalonzo@proskauer.com

Victor Hou
Jared Gerber
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
vhou@cgsh.com
jgerber@cgsh.com

*Counsel for Defendants*