# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **STEPHEN AND JUNE VITIELLO,** Individually and on Behalf of All Others Similarly Situated, | **No. 2:20-cv-04240-MCA-MAH** |
| **Plaintiffs,** | |
| **v.** | |
| **BED BATH & BEYOND INC.,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND REIMBURSEMENT OF TIME FOR LEAD PLAINTIFF

00688803;V1

**TABLE OF CONTENTS**

**Pages**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................3

I. LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE.................................................................3

    A. Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund They Obtained.....................3

    B. Lead Counsel's Fees Should be Based Upon a Percentage of the Common Fund ..........................................................................5

    C. Consideration of the Third Circuit's *Gunter* Factors Confirms the Reasonableness of the Requested Fee....................................................6

        1. The Settlement is a Very Good Result And Confers an Immediate Benefit Upon the Class ...................................................7

        2. To Date, No Class Member Has Objected to, and Only One Has Requested Exclusion From, the Settlement............................10

        3. Lead Counsel Prosecuted this Action with Skill and Efficiency...11

        4. The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of the Fee Request ...............................................13

        5. Lead Counsel Undertook the Risk of Non-Payment .....................15

        6. Lead Counsel Spent Significant Time Investigating and Litigating the Case ......................................................................18

        7. The Requested Fee Is Consistent With Awards in Similar Cases .............................................................................................20

        8. The *Prudential* Factors .............................................................21

    D. Lead Counsel's Attorneys' Fees Were Agreed Upon By Lead Plaintiff At the Outset of the Litigation ...........................................22

    E. A Lodestar Cross-Check Confirms That The Fee Request Is Reasonable ......................................................................................23

F.  Lead Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of this Action......................................................27

F.  Lead Plaintiff is Entitled to Reimbursement of His Time Spent Representing the Class Under 15 U.S.C. § 78u-4(a)(4) ....................28

CONCLUSION .......................................................................................30

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ......................................................................................4

*Andavarapu v. iBio, Inc., et al.*,
No. 14-cv-1434-RGA (D. Del. Apr. 21, 2016) ...................................30

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ......................................................................................4

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013)................................................... 26, 28

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................................5, 22

*Bodnar v. Bank of Am., N.A.*, No. 14-3224,
2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) ............................... 20, 25

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ...................................................................3, 4

*Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.)*,
494 F.2d 799 (3d Cir. 1974) .....................................................13

*Chemi v. Champion Mortg.*,
No. 2:05-CV-1238 (WHW), 2009 WL 1470429 (D.N.J. May 26, 2009)...........11

*Fein v. Ditech Financial, LLC*, No. 5:16-cv-00660,
2017 WL 4284116 (E.D. Pa. Sept. 27, 2017 .................................20

*Fernandez v. Knight Capital Group, Inc.*, No. 12-cv-06760 (MCA) (LDW),
2015 WL 13901241 (D.N.J. July 6, 2015)................................... 20, 29

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ................................................ 5, 6, 7, 18

*Hall v. AT & T Mobility*,
  No. CIV.A. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010). 11, 12, 27

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................8

*In re Aetna Inc.*,
  No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001)......................24

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
  No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ..................................9

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ............................................................... *passim*

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  No. 07-md-01871, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012) ..........................4

*In re BP p.l.c. Sec. Litig.*,
  852 F. Supp. 2d 767 (S.D. Tex. 2012) .............................................................16

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .........................................................................9, 22

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) .........................................................................6, 23

*In re Cendant Corp., Derivative Action Litig.*,
  232 F. Supp. 2d 327 (D.N.J. 2002)...................................................................27

*In re CIGNA Corp.*,
  No. CIV.A. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007)....................21

*In re Citigroup Inc. Sec. Litig.*,
  No. MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ...................9

*In re Corel Corp. Inc. Sec. Litig.*,
  293 F. Supp. 2d 484 (E.D. Pa. 2003)................................................................12

*In re Datatec Sys., Inc. Sec. Litig.*,
  No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)........... 12, 14

*In re Diet Drugs*,
  582 F.3d 524 (3d Cir. 2009) ................................................................4, 5

*In re Facebook, Inc. IPO Sec. & Derivative Litig*.
  MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom.*
  *In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016)............................................19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ................................................................13

*In re Genta Sec. Litig.*,
  No. CIV.A. 04-2123 (JAG), 2008 WL 2229843 (D.N.J. May 28, 2008) ..... 13, 14

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)................15

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ........................................................... 6, 15, 22

*In re Linerboard Antitru*st Litig.,
  No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004), *order amended by*
  No. MDL 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) ........................9, 10

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
  No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ...... 16, 20

*In re Ocean Power Techs., Inc.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................7

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
  176 F.R.D. 158 (E.D. Pa. 1997) ........................................................11

*In re Par Pharm. Sec. Litig.*,
  No. CIV.A. 06-3226, 2013 WL 3930091 (D.N.J. July 29, 2013)....... 4, 13, 29, 30

*In re Processed Egg Prod. Antitrust Litig.*,
  No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ..........................22

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .................................................... passim

*In re Ravisent Techs., Inc. Sec. Litig.*,
  No. Civ.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ................20

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. Civ.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005),
  *judgment entered*,
  No. 03-CV-0085 (FSH), 2005 WL 8181042 (D.N.J. Nov. 9, 2005) .................20

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) *as amended* (Feb. 25, 2005) ........................ 5, 11, 24

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  No. CIV.A. 04-374 (JAP), 2008 WL 9447623 (D.N.J. Dec. 9, 2008)................23

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  No. CIV.A. 08-1432 DMC, 2012 WL 1964451 (D.N.J. May 31, 2012) ...... 16, 21

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 1, 2013)......... 28, 29

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...25

*In re Suprema Specialties, Inc. Sec. Litig.*,
  No. 02-168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008).........................16

*In re Tremont Sec. L., State L. & Ins. Litig.*,
  699 F. App'x 8 (2d Cir. 2017) .........................................................................25

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
  No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020),
  *Report and Recommendation adopted by*
  No. CIV.A. 15-7658 (MAS) (LHG), 2021 WL 358611 (D.N.J. 2021), *aff'd in
  part, appeal dismissed in part sub nom.*
  *TIAA v. Valeant Pharm. Int'l, Inc.*,
  No. 21-1218, 2021 WL 6881210 (3d Cir. 2021)................................ 13, 14, 16, 22

*In re Vicuron Pharm., Inc. Sec. Litig.*,
  512 F. Supp. 279 (E.D. Pa. May 31, 2007) .......................................................21

*In re Viropharma Inc. Sec. Litig.*,
  No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ..............................8

*Katz v. China Century Dragon Media, Inc.*,
  No. LA CV11-02769 JAK(SSx), 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013)
  .........................................................................................................................28

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997), a*ff'd*,
    166 F.3d 581 (3d Cir. 1999).............................................................................9

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  No. 03-CV-4372 (DMC), 2009 WL 4730185 (D.N.J. Dec. 4, 2009) .................16

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..............................................................26

*Meijer, Inc. v. 3M*,
  No. CIV.A. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006)....................26

*Milliron v. T-Mobile USA, Inc.*,
  No. CIV.A. 08-4149 (JLL), 2009 WL 3345762 (D.N.J. Sept. 10, 2009), *aff'd*,
  423 F. App'x 131 (3d Cir. 2011) ......................................................................20

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .........................................................................................25

*Neuberger v. Shapiro*,
  110 F. Supp. 2d 373 (E.D. Pa. 2000)................................................................15

*Rowe v. E.I. DuPont de Nemours & Co.*,
  No. CIV. 06-1810 (RMB/AMD), 2011 WL 3837106 (D.N.J. Aug. 26, 2011) .7, 8

*Sala v. Nat'l R.R. Passenger Corp.*,
  721 F.R.D. 158 (E.D. Pa. 1997) .......................................................................11

*Schuler v. Meds. Co.*,
  No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016).......... *passim*

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ................................................................. 5, 23, 24

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
  No. CV 19-1227, 2022 WL 118104 (E.D. Pa. Jan. 12, 2022)............................29

*Vataj v. Johnson*,
  No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...............9

*Yedlowski v. Roka Bioscience, Inc.*,
  No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016).......7, 26

**Statutes**

15 U.S.C. § 78u-4(a)(4) .................................................................................1, 28

15 U.S.C. § 78u-4(a)(6) .........................................................................................6

Lead Plaintiff Kavin Bakhda ("Lead Plaintiff") on behalf of additional named plaintiff Richard Lipka and the Class, respectfully submits this memorandum in support of his application for: (i) an award to Lead Counsel (on behalf of all Plaintiffs' Counsel) of attorneys' fees of one-third of the Settlement Fund, or $2,331,000; (ii) reimbursement of litigation expenses in the amount of $63,508.86; and (iii) reimbursement of $5,000 to the Lead Plaintiff for the time he spent representing the Class, pursuant to the PSLRA, 15 U.S.C. Section 78u-4(a)(4).[1]

## INTRODUCTION

The Settlement, which has been preliminarily approved by the Court, provides a recovery of $7,000,000 in cash to resolve all claims in the Action.[2]  This is a very good result for the Class, particularly in light of the substantial risks and expenses of continued litigation as detailed in the Final Approval Brief (defined below), including the risk of recovering a smaller amount – or nothing at all – after potentially years of costly and protracted litigation.  Lead Counsel and additional Plaintiffs' Counsel litigated this Action on a fully contingent basis and have not

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated October 25, 2021 (the "Stipulation") (ECF No. 66-3).

[2] The Settling Parties agreed that Magistrate Judge Michael Hammer would have jurisdiction over Lead Plaintiff's motion for preliminary approval, as well as the instant motion for final approval.  *See* ECF Nos. 74, 75.  References to the "Court" below include Magistrate Judge Hammer.

received any compensation for their prosecution of the case or reimbursement of their expenses since inception.

As discussed herein, and in the Declaration of Laurence J. Hasson in Support of (I) Motion for Final Approval of Settlement, Plan of Allocation and Certification of the Class; and (II) Motion for Attorneys' Fees and Expenses and Reimbursement of Time for Lead Plaintiff (the "Hasson Decl."), filed concurrently with this motion, it is respectfully submitted that Lead Counsel's requested fee award of one-third of the Settlement Fund is fair, reasonable, and appropriate. The requested fee award represents a modest lodestar multiplier of 2.17 based on Plaintiffs' Counsel's lodestar and is well within the range of attorney fee awards routinely granted by courts in this Circuit.[3]

The requested expenses are also reasonable and were necessarily incurred for the successful prosecution of the Action. Such expenses included fees for a damage expert, an investigator, legal research, court filings, and the cost of a mediation with experienced mediator Jed Melnick of JAMS.[4]

Finally, Lead Plaintiff's request to be reimbursed for the time he spent representing the Class is also reasonable and justified, and similar reimbursements

---

[3] Lead Counsel will allocate fees among other Plaintiffs' Counsel.

[4] *See* Declaration of Stanley D. Bernstein (Exhibit 4 to Hasson Decl.) ¶ 8; *see also id*. at Exhibit B.

are routinely made to lead plaintiffs in these types of cases. *See infra* at 28-30; *see also* Declaration of Kavin Bakhda (Exhibit 2 to Hasson Decl.).

Accordingly, and for the reasons set forth herein, Lead Plaintiff respectfully requests that the Court approve the motion for attorneys' fees and reimbursement of expenses, and for a reimbursement for the time he spent successfully litigating this case.[5]

**ARGUMENT**

I. **LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE**

A. **Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund They Obtained**

The Supreme Court and the Third Circuit have long recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund.[6] *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase,

---

[5] A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Hasson Declaration and in Lead Plaintiff's Motion in Support of Final Approval of Settlement, Plan of Allocation and Certification of Class ("Final Approval Brief").

[6] Throughout this memorandum, emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees"') (quoting *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009)); *In re Par Pharm. Sec. Litig.,* No. 06-3226 (ES), 2013 WL 3930091, at *9 (D.N.J. July 29, 2013). The common fund doctrine is also designed to prevent unjust enrichment of class members who benefit from a lawsuit without paying for its costs. *See Boeing Co.*, 444 U.S. at 478; *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 07-md-01871, 2012 WL 6923367, at *2 (E.D. Pa. Oct. 19, 2012).

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions[.]" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013). Thus, public policy favors granting fees to counsel in securities class actions sufficient to reward them for bringing these actions and to encourage them to keep doing so. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'").

Courts have also recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund serve to encourage skilled

counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation").

Here, Lead Counsel obtained a $7 million common fund for the Class. Paying Lead Counsel's fees from that fund properly compensates counsel for bringing and pursuing the claims in this case and furthers the purpose of the securities laws.

## B. Lead Counsel's Fees Should be Based Upon a Percentage of the Common Fund

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' . . .a reasonable fee is based on a percentage of the fund bestowed on the class"). The Third Circuit also favors use of the percentage-of-recovery method "because it allows courts to award fees from the [common] fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 330 (3d Cir. 2011); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), *as amended* (Feb. 25, 2005); *In re Diet Drugs*, 582 F.3d at 540 (percentage of recovery method "generally favored").

The percentage of recovery method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also In re Cendant Corp. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable").

Finally, the alternative – the lodestar method – encourages attorneys to delay settlement and can waste a court's time in requiring the review of thousands of billing records. *See In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 193 (E.D. Pa. 2000). Accordingly, this Court should use the percentage of recovery method in determining attorneys' fees here.

**C. Consideration of the Third Circuit's *Gunter* Factors Confirms the Reasonableness of the Requested Fee**

In *Gunter*, the Third Circuit set forth seven factors that courts should consider in determining an appropriate fee award:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1 (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998).

In *Prudential*, the Third Circuit identified three additional factors to consider: "(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any "innovative" terms of settlement."  *In re AT & T Corp. ("AT&T Corp.")*, 455 F.3d 160, 165 (3d Cir. 2006) (citing *Prudential*, 148 F.3d at 338-39).

These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1; *see also In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *26 (D.N.J. Nov. 15, 2016) ("The Court may give some of these factors less weight in evaluating a fee award").  As discussed below, consideration of the *Gunter* and *Prudential* factors demonstrates that Lead Counsel's requested fee is both justified and reasonable.

### 1. The Settlement is a Very Good Result And Confers an Immediate Benefit Upon the Class

In evaluating the first *Gunter* factor, courts "consider the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *20 (D.N.J. Nov. 10, 2016) (*quoting Rowe v. E.I. DuPont de Nemours & Co.*, No. CIV. 06-1810 (RMB/AMD), 2011 WL 3837106, at *18 (D.N.J.

Aug. 26, 2011)).  Indeed, the result achieved is one of the primary factors to be considered in assessing the propriety of an attorney fee award.  *See Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

The $7 million Settlement is approximately 3.1% of conservatively estimated damages.  *See* Final Approval Brief at 12.  The Settlement is reasonable in light of the median settlement amount and percentage recovered as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements.  According to Cornerstone Research, the median 2021 settlement was $5.8 million and the recovery was 4.5% of damages for cases settling during a pending motion to dismiss – which is when this case was settled.  *See* Hasson Decl. Ex. 1 at 14 (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2021 Review and Analysis*, Cornerstone Research). Thus, this case settled for a slightly higher amount and recovered a slightly lower percentage of damages than the 2021 averages.

The Settlement is within the range of approved recoveries in many other securities class action settlements, including in courts in this District and Circuit. *See*, *e.g*., *Schuler*, 2016 WL 3457218, at *8 (approving $4.25 million settlement reflecting approximately 4.0% of the estimated recoverable damages; noting

percentage "falls squarely within the range of previous settlement approvals"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig*., No. 05-232, 2008 WL 4974782, at *3, *9, *13 (E.D. Pa. Nov. 21, 2008) (approving $16.7 million settlement representing 2.5% of damages); *AT&T Corp*., 455 F.3d at 169-70 (affirming settlement for 4% of total damages); *Lazy Oil Oil Co. v. Witco Corp*., 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"), *aff'd*, 166 F.3d 581 (3d Cir. 1999); *In re Cendant Corp. Litig*., 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses).[7]

The Settlement will also immediately benefit a large number of investors. To date, the Claims Administrator has mailed 75,552 Individual Notices to potential Class Members and their nominees. *See* Declaration of Luiggy Segura Regarding (A) Mailing of the Individual Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions) ¶ 12 (Hasson Decl. Exhibit 3). Accordingly, a large number of Class Members will benefit from the Settlement. *See, e.g., In re*

---

[7] *See also Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (granting final approval of $10 million settlement representing slightly more than 2% of estimated damages and stating, "2% aggregate recovery is consistent with the 2–3% average recovery that the parties identified in other securities class action settlements"); *In re Citigroup Inc. Sec. Litig*., No. MD 2070(SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (granting final approval of $8.5 million settlement representing 2% of damages).

*Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]"), *order amended by* No. MDL NO. 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004).

Accordingly, the immediate benefit and the reasonableness of the $7,000,000 Settlement supports the requested fee.

**2. To Date, No Class Member Has Objected to, and Only One Has Requested Exclusion From, the Settlement**

The Class overwhelmingly supports the Settlement. The Claims Administrator has mailed 75,552 Individual Notices to potential Class Members, posted the Internet Notice and Proof of Claim form on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines, and published the Summary Notice in both *The Wall Street Journal* and *Investor's Business Daily* as well as on *PR Newswire*. *See* Segura Decl. ¶¶ 12-16 (Hasson Decl. Ex. 3). Thus, notice has been given to the Class as required by the Preliminary Approval Order. Additionally, these notices informed Class Members that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 33 1/3% of the Settlement Fund, plus expenses not to exceed $100,000. The time to object to the fee and expense request expires on May 5, 2022. To date, not a single objection to the fee and expense amounts set forth in the Notice has been

received, and only one exclusion. *See* Hasson Decl. ¶ 84; Segura Decl. ¶ 18 (Exhibit 3 to Hasson Decl.).

Such a "low level of objection is a "rare phenomenon". *Rite Aid*, 396 F.3d at 305. *See also Chemi v. Champion Mortg.*, No. 2:05-cv-1238 (WHW), 2009 WL 1470429, at *4 (D.N.J. May 26, 2009) ("lack of objections and single opt-out weigh[ed] strongly in favor of the [s]ettlement); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) ("relatively low objection rate 'militates strongly in favor of approval of the settlement'") (quoting *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)). The fact that no objections and only one exclusion have been received to date strongly supports the fee request.

Accordingly, the Class' support for the settlement supports the requested fee.

### 3. Lead Counsel Prosecuted this Action with Skill and Efficiency

The skill and efficiency factor under *Gunter* also weigh in favor of the requested award. Lead Counsel's skill and efficiency is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Hall v. AT & T Mobility LLC*, No. CIV.A. 07-5325 (JLL), 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

Lead Counsel achieved a very good result, particularly in light of the significant obstacles attendant on further litigation, which are detailed in the Final Approval Brief. *See id*. at 10-19. In addition, Lead Counsel has decades of experience in litigating securities class actions (*see* Bernstein Liebhard firm resume, Exhibit 3 to Bernstein Declaration, which is Exhibit 4 to the Hasson Decl.), and they prosecuted this case efficiently and professionally.

Finally, "[t]he quality of opposing counsel is also important in evaluating the quality of counsel's work." *Hall*, 2010 WL 4053547, at *19; *In re Datatec Sys., Inc. Sec. Litig*., No. 04-CV-525 (GEB), 2007 WL 4225828, at *7 (D.N.J. Nov. 28, 2007). Defendants were represented by the law firms of Proskauer Rose LLP and Cleary Gottlieb Steen & Hamilton LLP, which presented very skilled defenses and spared no effort in representing their clients vigorously. Hasson Decl. ¶ 45. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate their willingness to continue to aggressively litigate this Action through discovery, summary judgment, trial and inevitable appeals enabled Lead Counsel to achieve the Settlement for the benefit of the Class. That Lead Counsel achieved this Settlement for the Class "in the face of formidable legal opposition further evidences the quality of their work." *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 496 (E.D. Pa. 2003).

Accordingly, the high quality of Lead Counsel's representation of the Class in this complex and risky case further supports the requested fee.

### 4. The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of the Fee Request

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation" and also favors Lead Counsel's requested fee. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (quoting *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.)*, 494 F.2d 799, 801 (3d Cir. 1974)). This *Gunter* factor also assesses "the complexity, expense, and likely duration of the litigation." *See AT&T Corp.*, 455 F.3d at 164-65.

Securities litigation is regularly acknowledged to be particularly complex and expensive, usually requiring expert testimony on, at the very least, questions of damages and loss causation. *See, e.g., In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *15 (D.N.J. 2020), (approving counsel's fee request and noting that "[s]ecurities litigation is tough stuff"), *Report and Recommendation adopted by* No. CIV.A. 15-7658 (MAS) (LHG), 2021 WL 358611 (D.N.J. 2021), *aff'd in part, appeal dismissed in part sub nom. TIAA v. Valeant Pharm. Int'l, Inc.*, No. 21-1218, 2021 WL 6881210 (3d Cir. 2021); *In re Par Pharm.*, 2013 WL 3930091, at *4 ("Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate"); *In re Genta Sec.*

*Litig.*, No. CIV.A. 04-2123 (JAG), 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive"); *Datatec*, 2007 WL 4225828, at *3 ("resolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis .... Trial on [scienter and loss causation] issues would be lengthy and costly to the parties"). This case was no different.

In the absence of the Settlement, this Action would have necessitated complex, expensive, and lengthy litigation involving experts. Defendants would have continued to defend this litigation vigorously, as demonstrated by their motion to dismiss.  If Lead Plaintiff survived Defendants' motion to dismiss,[8] Defendants would have inevitably opposed Lead Plaintiff's anticipated motion for class certification, filed motions for summary judgment, and ultimately appealed any judgment in Lead Plaintiff's favor. The Settling Parties also likely would have engaged in lengthy and costly expert discovery, involving expert reports, depositions, and motions to disqualify expert witnesses through complex *Daubert* motions.

---

[8] Notably, almost 65% of securities class actions were dismissed at the pleading stage in 2021.  *See* Hasson Decl. Ex. 7 at 11.

This Court and the jury at trial would have had to weigh evidence pertaining to complex factual and legal issues, as well as weigh difficult issues in a battle of experts, all of which demonstrate that this case had real risks and that the Settlement is commendable. *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *16 (S.D.N.Y. Dec. 19, 2014) ("Over the last five years, nearly 48% of all securities class actions have been dismissed on motions prior to trial, while plaintiffs who succeeded at trial have found their judgments overturned on post-trial motions or appeal"); *see also Prudential*, 148 F.3d at 318 ("the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court. The prospect of such a massive undertaking clearly counsels in favor of settlement"); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 378 (E.D. Pa. 2000) (difficulty of presenting issues involving extensive expert testimony at trial weighs in favor of settlement); *Ikon*, 194 F.R.D. at 179 (same).

Considering the magnitude, expense, and complexity of these actions, Lead Counsel's fee request is reasonable. Accordingly, this factor weighs in favor of the requested fee.

### 5. Lead Counsel Undertook the Risk of Non-Payment

Lead Counsel undertook this litigation on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute a risky action with

no guarantee of compensation for the substantial investment of time and money the case would require, or even the recovery of expenses. Hasson Decl. ¶ 68. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g., In re Schering-Plough Corp. Enhance ERISA Litig.*, No. CIV.A. 08-1432 (DMC)(JAD), 2012 WL 1964451, at *7 (D.N.J. 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval"); *In re Merck & Co., Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air*, No. 03-CV-04372 (DMC) 2009 WL 4730185, at *8 (same) (D.N.J. Dec. 4, 2009); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168 (WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) (same).

The risk of non-payment is especially high in securities class actions, as they are "notably difficult and notoriously uncertain." *See Valeant Pharm.*, 2020 WL 3166456, at *13 (risk of non-payment supported fee request and "recovery was uncertain due to the difficulty of prevailing in securities cases generally"). Indeed, legal precedents are continually making it more difficult to plead securities class actions. *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012)

("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading").

Lead Counsel has not been compensated for any time or expenses since it started litigating the case. Lead Counsel would have received no compensation or payment of its expenses had Lead Counsel not resolved the case successfully. Hasson Decl. ¶ 68. Nevertheless, Lead Counsel ensured from the outset that sufficient resources were dedicated to the Action and that funds were available to compensate staff and cover any necessary expenses. With an average time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than on defense firms that are paid on an ongoing basis. In addition to advancing all costs and litigation expenses, Lead Counsel faced the possibility that they would receive no attorneys' fees at all. Indeed, it is possible that, if not for this Settlement, the entire case would have been dismissed in response to Defendants' motion to dismiss. In light of the difficulty of undertaking such a lawsuit, Lead Counsel should be reimbursed for its time and expenses.

Accordingly, undertaking the risk of non-payment supports Lead Counsel's fee and expense request.

**6.     Lead Counsel Spent Significant Time Investigating and Litigating the Case**

The sixth *Gunter* factor looks at counsel's time devoted to the litigation. *Gunter*, 223 F.3d at 199.  Lead Counsel expended substantial time and effort pursuing the Action on behalf of the Class.  Since the Action commenced, Lead Counsel has devoted 1,187.34 hours to prosecuting the Class' claims.  *See* Bernstein Decl. Ex. 2.  As detailed in the Hasson Declaration (¶ 6), Lead Counsel, among other things:

- Conducted a comprehensive investigation into the allegedly wrongful acts, which included a review and analysis of BBBY's filings with the SEC, public reports and news articles concerning BBBY, transcripts of BBBY's investor calls, and interviews with former BBBY employees;

- Filed a motion for lead plaintiff on behalf of their client Kavin Bakhda;

- Researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted the Amended Class Action Complaint (the "Amended Complaint") based on their extensive investigation;

- Opposed Defendants' motion to dismiss the Amended Complaint;

- Exchanged mediation statements with Defendants;

- Engaged in negotiations regarding the terms of the proposed Settlement, including during a two-day mediation session before experienced mediator Jed Melnick, Esq., of JAMS;

- Negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement;

- Performed due diligence discovery relating to the Settlement; and

- Engaged and consulted with a damages consultant and prepared the proposed Plan of Allocation based on an analysis estimating the amount of artificial inflation in the price of BBBY stock during the Class Period.

Throughout the litigation, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort. Hasson Decl. ¶ 71. Additional hours and resources will necessarily be expended assisting Class Members with the completion and submission of their Proof of Claim and Release forms, shepherding the claims process, and responding to Class Member inquiries. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.,* MDL No. 12-2389, 2015 WL 6971424, at \*10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Lead Counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable"), *aff'd sub nom. In re Facebook, Inc*., 674 F. App'x 37 (2d Cir. 2016).

In sum, Lead Counsel devoted a significant amount of time and effort to obtain the $7 million recovery here, which further shows the fee and expense request is reasonable.

**7. The Requested Fee Is Consistent With Awards in Similar Cases**

The requested 33 1/3% fee is also well within the range of fees that have been granted in comparable securities class actions in the Third Circuit. *See*, *e.g.*, *Fernandez v. Knight Capital Group, Inc.*, No. 12-cv-06760 (MCA) (LDW), 2015 WL 13901241, at *3 (July 6, 2015) (33% fee on $14 million settlement); *In re Merck*, 2010 WL 547613, at *11 ("review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71% with a median value that turns out to be one-third"). *See also Schuler*, 2016 WL 3457218, at *8 (awarding one-third of settlement as fees in case that settled before decision on motion to dismiss); *Fein v. Ditech Financial, LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *12 (E.D. Pa. Sept. 27, 2017); *Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 WL 4582084, at *5-*6 (E.D. Pa. Aug. 4, 2016) (approving 33% fee where counsel was able to negotiate the settlement "at the early stages" of the litigation); *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ.A.00-CV-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (collecting cases); *Milliron v. T-Mobile USA, Inc.*, No. CIV.A. 08-4149 (JLL), 2009 WL 3345762, at *8, 24 (D.N.J. Sept. 14, 2009) (awarding 33.3% of $13.5 million settlement), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (citing *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-CV-0085 (FSH), 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005)), *judgment entered*, No. 03-CV-0085 (FSH),

2005 WL 8181042 (D.N.J. Nov. 9, 2005); *In re Schering-Plough*, 2012 WL 1964451, at *6-7 (awarding 33.3% of $12.25 million settlement).

Accordingly, the fee requested by Lead Counsel is consistent with fees in similar cases and should be approved.

### 8.    The *Prudential* Factors

The applicable *Prudential* Factors also weigh in favor of the requested fee. First, the Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing, because, if not, this can suggest that counsel should be given full credit for obtaining the value of the settlement fund for the class. *Prudential*, 148 F.3d at 338.  Here, there was no governmental civil or criminal investigation or prosecution of the alleged securities fraud that produced helpful testimony, admissions, or findings.  Accordingly, the entire value of the Settlement is attributable to the efforts undertaken by Lead Counsel. This further shows that the requested fee is reasonable.  *See, e.g., AT&T Corp.*, 455 F.3d at 173; *In re CIGNA Corp.*, No. CIV.A. 02-8088, 2007 WL 2071898, at *6 (E.D. Pa. July 13, 2007); *In re Vicuron Pharm. Inc. Sec. Litig*, 512 F. Supp. 2d  279, 287 (E.D. Pa. 2007).

Analysis of the second *Prudential* factor also supports the reasonableness of the requested fee because it is consistent with typical fee awards in non-class cases. Indeed, if this were an individual action, the customary contingent fee would likely

range between 30 and 40 percent of the recovery. *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery"); *Schuler*, 2016 WL 3457218, at *10. Lead Counsel's fee of one-third of the Settlement Fund comports with these private standards, which further supports their fee request.

The Third Circuit also asks district courts to consider whether the settlement contains "any innovative terms." *Prudential*, 148 F.3d at 339. This Settlement does not have any innovative terms because Lead Counsel believes the all-cash recovery Lead Counsel secured for the Class is the best remedy for the injury suffered by the Class. In such circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prod. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

### D. Lead Counsel's Attorneys' Fees Were Agreed Upon By Lead Plaintiff At the Outset of the Litigation

Before retaining Lead Counsel's services at the very outset of the Action, Lead Plaintiff entered into a retainer agreement with Lead Counsel that stated that Lead Counsel would apply for a fee of 33 1/3% of the recovery, subject to court approval. *See* Bakhda Declaration ¶ 15 (Hasson Decl. Ex. 2). Such a fee agreed upon by a lead plaintiff at the outset of litigation is presumptively reasonable. *Valeant Pharm.*, 2020 WL 3166456, at *11; *Cendant*, 264 F.3d at 282 ("under the

PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel"); *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 (JAP), 2008 WL 9447623, at *24 (D.N.J. Dec. 9, 2008) (presumption of fairness when lead plaintiff approves fee consistent with fee agreement with lead counsel). As discussed in his declaration, Lead Plaintiff approved of and supports Lead Counsel's request for one-third of the Settlement Fund. *See* Bakhda Decl. ¶ 15 (Hasson Decl. Ex. 2).

Accordingly, Lead Plaintiff's agreement to the requested fee at the outset of this case further supports the fee request.

### E. A Lodestar Cross-Check Confirms That The Fee Request Is Reasonable

A lodestar cross-check is a tool to "ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *Cendant*, 404 F.3d at 188. The Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable, and to avoid a "windfall" to counsel. *See Sullivan*, 667 F.3d. at 330; *AT&T Corp.*, 455 F.3d at 164. The requested fee award here is reasonable and in line with fee requests approved in this Circuit.

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Rite Aid*, 396 F.3d at 305. "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work," *id.* at 305–06, and "to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *In re Aetna Inc.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001). To perform the cross-check, district courts must divide the proposed fee award by the lodestar calculation, which will yield a lodestar multiplier. *AT&T Corp.*, 455 F.3d at 169 n.6. This calculation "need not entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Rite Aid*, 396 F.3d at 306–07 (footnote omitted). While the Third Circuit recommends that the percentage award be "cross-checked" against the lodestar method to ensure its reasonableness, *Sullivan*, 667 F.3d at 330, "[t]he lodestar cross-check…should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T Corp.*, 455 F.3d at 164.

Performing the lodestar calculation here confirms that the fee requested by Lead Counsel is reasonable. Plaintiffs' Counsel and their paraprofessionals have

spent 1,249.94 hours prosecuting this case, with a total lodestar of $1,063,657.50. *See* Hasson Decl. Ex. 4, ¶ 6; Elem Decl ¶ 6; Calandra Decl. ¶ 6.[9]  The amount of attorneys' fees requested by Lead Counsel – $2,331,000 – represents a modest multiplier of approximately 2.17 to Plaintiffs' Counsel's lodestar.[10]

The requested 2.17 multiplier is well within the range of multipliers approved by courts in this Circuit.  Indeed, courts often approve multipliers of one to four in common fund cases.  *Bodnar*, 2016 WL 4582084, at \*5-\*6 (4.69 multiplier "appropriate and reasonable"); *Prudential*, 148 F.3d at 341; *see also, e.g.*, *AT&T Corp.*, 455 F.3d at 173 ("we approved of a lodestar multiplier of 2.99 in *Cendant PRIDES,* in a case we stated 'was neither legally nor factually complex'" and that settled in 4 months); *Schuler*, 2016 WL 3457218, at \*9-10 (multiplier of 3.57

---

[9] In determining whether Lead Counsel's rates are reasonable, the Court should consider the attorneys' professional reputation, experience, and status.  Plaintiffs' Counsel are experienced securities practitioners with a track record of success, and some of the most prominent securities practitioners in the country.  *See* Hasson Decl., Exs. 4, 5, and 6.  Plaintiffs' Counsel's hourly rates are reasonable in light of its track record and experience.  *See*, *e.g.*, *In re Tremont Sec. Law, State Law & Ins. Litig.*, 699 F. App'x 8, 18 n.13 (2d Cir. 2017) (finding rates charged by Lead Counsel were reasonable "[g]iven the skill and experience required in this complex securities litigation").

[10] The Supreme Court and other courts have held that the use of current rates is proper to compensate for inflation and the loss of use of the funds.  *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *see also In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at \*16 n.3 (S.D.N.Y. July 21, 2020) ("The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest").

resulting in fee award of 33 1/3% reasonable in case that settled, like this one, before decision on motion to dismiss); *Meijer, Inc. v. 3M*, No. CIV.A. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (approving lodestar multiplier of 4.77 resulting in fee award of 33.33% of settlement fund); *Yedlowski*, 2016 WL 6661336, at *18 (3.4 multiplier).

Lead Counsel litigated this Action on a contingent-fee basis for over one and a half years and obtained a favorable result for the Class without any certainty of payment. Lead Counsel should not be penalized for their efficiency in obtaining this result. Indeed, one of the main advantages of the percentage method is to reward early settlement. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (awarding fee of one-third of settlement fund amounting to a 6.3 multiplier because the fee award "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where [] the settlement amount is substantial"); *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 363–64, 373 (S.D.N.Y. 2002) (awarding 33.3% of $11.5 million settlement, reflecting a multiplier of 4.65, in a case that settled after one year of litigation, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system").

Accordingly, the lodestar cross-check further supports the reasonableness of the requested fee.

**F. Lead Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of this Action**

Lead Counsel respectfully requests reimbursement of $63,508.86 in expenses incurred by Plaintiffs' Counsel while prosecuting this Action. *See* Bernstein Decl. Ex. 2. This figure is well below the $100,000 cap in the Notice. Lead Counsel incurred expenses on, among other things, an investigator who interviewed former BBBY employees in connection with drafting the Amended Complaint, well-respected mediator Jed Melnick, Esq. of JAMS, electronic legal research fees relating to Lead Plaintiff's detailed opposition to Defendants' motion to dismiss and Lead Plaintiff's mediation statement, a damages consultant to calculate damages and develop the Plan of Allocation, and filing fees, all of which are properly recoverable. *See* Bernstein Decl. ¶ 8 (Hasson Decl. Ex. 4). "Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002).

A complete breakdown by category of the expenses incurred is set forth in the Bernstein Declaration. *See id.* at Exhibit 2. These expenses were necessary for the successful prosecution and resolution of the Action on behalf of the Class and are of the type routinely charged to paying clients. *See Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d at 344 (consultants and computer-assisted research were valid expenses); *Hall*, 2010 WL 4053547, at *23 ("Courts have generally approved

expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of consultants"); *Beckman*, 293 F.R.D. at 482 (mediator's fees); *Katz v. China Century Dragon Media, Inc.*, No. LA CV11-02769 JAK (SSx), 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) (notice to class members and press releases). The categories of expenses for which counsel here seek payment are the type routinely billed to hourly clients and, therefore, should be paid out of the common fund.

Finally, to date, no Class Member has objected to the expense amount set forth in the Notice (up to $100,000) – which is much larger than the $63,508.86 in expenses being sought.

Accordingly, Lead Counsel respectfully submits that Plaintiffs' Counsel $63,508.86 in expenses were reasonably incurred and necessary to the prosecution of this action.

**F. Lead Plaintiff is Entitled to Reimbursement of His Time Spent Representing the Class Under 15 U.S.C. § 78u-4(a)(4)**

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Indeed, "the Third Circuit favors encouraging class representatives, by appropriate means, to create common funds and to enforce laws – even approving 'incentive awards' to class

representatives." *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-397 (DMC)(JAD), 2013 WL 5505744, at *56 (D.N.J. 2013).

Lead Plaintiff Kavin Bakhda spent 20 hours litigating this case on behalf of the Class. Lead Plaintiff communicated regularly with Lead Counsel on issues and developments in the Action, reviewed the Amended Complaint, Defendants' motion to dismiss and Lead Plaintiff's opposition papers, consulted with Lead Counsel regarding the settlement negotiations and strategy, and ultimately approved the Settlement. Bakhda Decl. Ex. ¶¶ 8-12 (Hasson Decl. Ex. 2). As Rikvin Capital's Business Development Manager, Mr. Bakhda's hourly rate is $250. Lead Plaintiff, thus, requests a payment in the amount of $5,000 to reimburse him for his time. *See id.* ¶ 19.

In this case, Lead Plaintiff was involved in the types of activities courts have found support reimbursement of time for those who achieved benefits for a class in a PSLRA case. *See, e.g.*, *Fernandez*, 2015 WL 13901241, at *3 (this Court granted $5,000 PSLRA reimbursement for lead plaintiff); *In re Schering-Plough*, 2013 WL 5505744, at *57 (reviewing pleadings, corresponding with Lead Counsel, and preparing for and attending mediation); *In re Par Pharm.*, 2013 WL 3930091, at *11 (similar); *Schuler*, 2016 WL 3457218, at *11 (reviewed filings, conferred with lead counsel, remained apprised about the case and the company). Lead Counsel submits that the amount requested is reasonable and, indeed, modest compared to awards

made to lead plaintiffs in other PSLRA cases and should be granted. *See, e.g., Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, No. CIV.A. 19-1227, 2022 WL 118104, at *13 (E.D. Pa. Jan. 12, 2022) (approving $12,500 reimbursement to lead plaintiff); *In re Par Pharm.*, 2013 WL 3930091, at *11 (awarding $18,000 to lead plaintiff); *Andavarapu v. iBio, Inc. et al.*, No. 14-cv-1434-RGA, slip op. at 2 (D. Del. Apr. 21, 2016) (Dkt. 69) (awarding $10,000 to lead plaintiff in case that settled before discovery).

The Notice informed Class Members that Lead Plaintiff was to seek approval for up to $5,000 for his time incurred in representing the Class. *See* ECF 66-7. To date, no Class Member has objected to this requested award. Hasson Decl. ¶ 84.

Accordingly, Lead Plaintiff's requested time reimbursement is reasonable and should be approved.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees of 33 1/3% of the Settlement Fund, plus interest, expenses in the amount of $63,508.86, which includes a $5,000 reimbursement to Lead Plaintiff (as permitted by the PSLRA) for his time spent on this case.

Dated: April 28, 2022

Respectfully submitted,

/s/ Richard Elem

_____

Jan Meyer
Richard Elem
Law Offices of Jan Meyer & Associates, P.C.
1029 Teaneck Road
Second Floor
Teaneck, New Jersey  07666
Tel: (201) 862-9500
Email: jmeyer@janmeyerlaw.com
        relem@janmeyerlaw.com

*Liaison Counsel for Lead Plaintiff and Settlement Class*

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Laurence J. Hasson (admitted pro hac vice)
Joseph R. Seidman, Jr. (admitted pro hac vice)
10 East 40th Street
New York, NY  10016
Telephone: (212) 779-1414
Facsimile:  (212) 779-3218
lhasson@bernlieb.com
seidman@bernlieb.com

*Lead Counsel for Lead Plaintiff and the Settlement Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
Brian Calandra
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044

Email: jalieberman@pomlaw.com
bcalandra@pom.law

*Additional Counsel for Lead Plaintiff and
Settlement Class*