| | |
|---|---|
| STEPHEN AND JUNE VITIELLO, Individually and on Behalf of All Others Similarly Situated, | No. 2:20-cv-04240-MCA-MAH |
| Plaintiffs, | |
| v. | |
| BED BATH & BEYOND INC., *et al.*, | |
| Defendants. | |

**DECLARATION OF LAURENCE J. HASSON IN SUPPORT OF (I) MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND CERTIFICATION OF CLASS; AND (II) MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND REIMBURSEMENT OF TIME TO LEAD PLAINTIFF**

I, Laurence J. Hasson, hereby declare as follows:

1. I am a member of the New York Bar in good standing and am appearing in this case *pro hac vice*. I am a partner at Bernstein Liebhard LLP ("Bernstein Liebhard"). My firm was appointed Lead Counsel in this Action for Lead Plaintiff and the proposed Class ("Lead Counsel"). I have personal knowledge of the matters stated herein and, if called as a witness, I could and would competently testify thereto.[1]

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement filed with the Court on October 25, 2021 ("Stipulation") (ECF No. 66-3).

2.    I respectfully submit this Declaration pursuant to Rule 23 of the Federal Rules of Civil Procedure in support of Lead Plaintiff's: (1) Motion for Final Approval of Settlement, Plan of Allocation and Certification of the Class; and (2) Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and Reimbursement Of Time to Lead Plaintiff.

## I.    INTRODUCTION

3.    The parties to this Settlement are Lead Plaintiff Kavin Bakhda, additional named plaintiff Richard Lipka, and defendants Bed Bath & Beyond Inc. ("BBBY" or the "Company"), Mark J. Tritton, Mary A. Winston, and Robyn M. D'Elia (collectively, "Defendants").

4.    Lead Plaintiff has entered into this Settlement on behalf of himself and the other Members of the proposed Class with Defendants providing a recovery of $7 million in cash.  Magistrate Judge Michael Hammer preliminarily approved the Settlement on February 4, 2022 (ECF No. 78).[2]

5.    The Settlement is a very good result for the Class in a case that posed significant hurdles.  The $7 million Settlement constitutes a conservatively estimated 3.1% recovery for the Class.  *See* Motion for Final Approval of Settlement, Plan of Allocation and Certification of the Class ("Settlement

---

[2] The Settling Parties consented to Magistrate Judge Hammer's jurisdiction over Lead Plaintiff's motion for preliminary approval and the instant motion for final approval.  *See* ECF Nos. 74, 75.

Memorandum") at 11-13. The Settlement is reasonable in light of the median settlement amount and percentage recovered as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. According to Cornerstone Research, the median 2021 settlement was $5.8 million and the recovery was 4.5% of damages for cases settling during a pending motion to dismiss – which is when this case was settled. *See* Exhibit 1 hereto (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2021 Review and Analysis*, Cornerstone Research). Thus, this case settled for a slightly higher amount and recovered a slightly lower percentage of damages than the 2021 averages. The percentage recovery is also comparable to the percentage of damages recovered in other securities class action settlements, including in courts in this District and Circuit. *See* Settlement Memorandum at 13 n.6.

6. Lead Counsel diligently litigated the Action from August 2020 through the execution of the Stipulation. Lead Counsel, *inter alia*, (i) conducted a comprehensive investigation into the allegedly misleading statements, which included, among other things, a review and analysis of BBBY's filings with the SEC, public reports and news articles concerning BBBY, transcripts of BBBY's investor calls, and consultation with a damages expert; (ii) hired an investigator to interview former BBBY employees about the allegations in this case; (iii) drafted the Amended Class Action Complaint (the "Amended Complaint") based on their

investigation; (iv) opposed Defendants' motion to dismiss the Amended Complaint; (v) exchanged mediation statements with Defendants; (vi) engaged in negotiations regarding the terms of the proposed Settlement, including a two-day mediation before experienced mediator Jed Melnick, Esq. of JAMS; (vii) conducted due diligence discovery confirming the fairness of the Settlement; and (viii) drafted the settlement papers. At the time the Settlement was reached, Lead Counsel had a thorough understanding of the strengths and weaknesses of the Settling Parties' positions and the risks of continuing litigation.

7. In deciding to settle, Lead Plaintiff and Lead Counsel took into consideration the significant risks associated with establishing liability, as well as the duration and complexity of the legal proceedings that remained ahead. As demonstrated by the Settling Parties' court filings, the Settlement was achieved in the face of vigorous opposition by Defendants who would have, had the Settlement not been reached, raised (and continued to raise) arguments concerning, among other things, whether the alleged misstatements were material or false, whether there was sufficient evidence of Defendants' scienter, and whether Lead Plaintiff could establish loss causation and damages (and if so, how much).

8. The Plan of Allocation for distribution of the Settlement proceeds is fair and reasonable. The Plan of Allocation allocates settlement monies depending on when investors bought and sold BBBY common stock during the Class Period.

The Plan of Allocation also, as is customary in securities class actions, takes into account the timing of Class Members' BBBY purchases and sales in light of the two alleged corrective disclosures and the stock drops following each of them. Lead Counsel requests that the Court approve the Plan of Allocation.

9. Lead Counsel also respectfully requests that the Court approve the proposed award of attorneys' fees in the amount of 33 1/3% of the Settlement, or $2,310,000, plus litigation expenses of $63,508.86. Lead Counsel litigated this case to date on a wholly contingent-fee basis. Lead Counsel believes the fee and expense request is reasonable in light of their extensive efforts in creating this tangible and immediate benefit for the Class, and as recognition for the risks faced and overcome.

10. Lead Counsel also believes that the fee application of 33 1/3% of the total recovery is fair, reasonable and warrants Court approval. As set forth fully in the accompanying Memorandum of Law in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Reimbursement of Time to Lead Plaintiff (the "Fee Brief"), the fee request is well within the range of fees typically awarded in actions of this type, was approved by Lead Plaintiff in his retainer, and is fair in light of the benefits obtained, the substantial risks undertaken, and the quality, nature and extent of the services rendered.

11. Lead Counsel also requests that the Court approve a reimbursement of $5,000 to Lead Plaintiff Kavin Bakhda for the 20 hours he spent representing the Class and achieving the proposed Settlement. *See generally* Declaration of Kavin Bakhda attached as Exhibit 2 hereto. Per his Declaration, Mr. Bakhda is a Business Development Manager at Rikvin Capital in Singapore and his hourly rate is $250. Thus, Mr. Bakhda spent $5,000 worth of time serving as a fiduciary for the Class on this case. Lead Counsel respectfully requests that the Court approve a $5,000 reimbursement to Mr. Bakhda for his time spent on this case and his service in achieving the Settlement for the Class. *See id.* ¶¶ 3, 18.[3]

12. Pursuant to the February 4, 2022 Preliminary Approval Order, 75,552 copies of the Individual Notice were mailed or disseminated to potential Class Members and nominees. Additionally, a Summary Notice was published in both *The Wall Street Journal* and *Investor's Business Daily* and transmitted over *PR Newswire* on March 7, 2022. *See* Exhibit 3 hereto (the Declaration of Luiggy Segura Regarding (A) Mailing of the Individual Notice; (B) Publication of the Summary Notice; and (C) Report on Objections and Requests for Exclusion Received to Date, dated April 28, 2022 ("Segura Decl.")), ¶ 12.

---

[3] The proposed $5,000 reimbursement to Lead Plaintiff is included as part of the $63,508.86 in expenses. *See* Exhibit 4 hereto (Declaration of Stanley D. Bernstein in Support of Motion for Approval of Settlement and Fee and Expense Award) at Exhibit 2.

13. The notices apprised Class Members of their right to object to the Settlement, the Plan of Allocation, Lead Counsel's application for attorneys' fees of up to 33 1/3% of the Settlement Fund, plus expenses of up to $100,000, as well as the proposed $5,000 reimbursement to Lead Plaintiff.

14. While the deadline for exclusions and objections of May 5, 2022 has not yet passed, to date there have been no objections to the Settlement, the Plan of Allocation, or the request for fees, litigation expenses, and reimbursement for Lead Plaintiff, and only one exclusion. *See also id.* ¶ 18.

## II. SUMMARY OF THE ALLEGATIONS

15. Lead Plaintiff alleged that Defendants misrepresented, and omitted material facts concerning the effectiveness of the Company's plan, announced in September 2019, to rid itself of $1 billion in excess inventory over eighteen months (the "Program"). ¶¶ 2-3.[4]

16. Specifically, Defendants represented that the Program targeted aged and lower-margin inventory through promotions and markdowns; refocused BBBY on profits and selling higher-margin goods; and paved the way for a successful 2019 holiday season, which was "critical" to BBBY. ¶ 2.

17. Defendants emphasized that BBBY had meaningful oversight on the Program, and, in particular, that BBBY safeguarded against the Program causing

---

[4] References to the Amended Complaint are cited herein as "¶_."

00689063;V1                                    7

adverse effects, such as margin erosion and sales cannibalization. Lead Plaintiff alleged that, to eliminate these risks, Defendants assured investors that BBBY, among other things, employed highly functional industry software that tracked the Program's progress in real time. ¶ 3.

18.     Lead Plaintiff alleged that Defendants' representations were materially false and misleading when made, because Defendants knew or recklessly disregarded that the Program was not the product of adequate and careful planning by BBBY; Defendants had access to real-time inventory software data; BBBY's management overhaul left the Company without key personnel to properly execute and oversee the Program; and the Program was eroding BBBY's margins and cannibalizing BBBY's 2019 holiday sales. ¶ 4.

19.     Lead Plaintiff alleged that the truth was revealed in part on January 8, 2020 and then in full on February 11, 2020.  On January 8, 2020, BBBY pulled its previously announced financial guidance and reported that its gross margins had dropped by 80 basis points.  On this news, BBBY's share price fell almost 20%, falling $3.20 to close at $13.40 per share on January 9, 2020.  Then, on February 11, 2020, BBBY announced preliminary results for 4Q19 and disclosed, *inter alia*, that BBBY's inventory management was not functioning effectively and its gross margins had plummeted by 300 basis points, the largest in 10 years. Defendants also announced that the Program was pushed out until July 22 – 18 months behind

schedule. On this news, BBBY's share price fell again to close at $11.79 per share on February 12, 2020, on unusually heavy trading volume. ¶¶ 5, 18-22, 27, 104.

## III. PROCEDURAL HISTORY

20. On April 14, 2020, Stephen and June Vitiello filed a securities class action complaint, styled *Vitiello v. Bed Bath and Beyond Inc., et al.*, No. 2:20-cv-04240-MCA-MAH, in the United States District Court for the District of New Jersey (ECF No. 1).

21. A second class action complaint asserting similar claims was filed with the Court by Jerry Kirkland on April 30, 2020, *Kirkland v. Bed Bath and Beyond Inc., et al.*, 2:20-cv-05339-MCA-MAH.

22. On June 15, 2020, Lead Plaintiff moved for consolidation of the actions and for the appointment as lead plaintiff for the class (ECF No. 19).

23. On August 14, 2020, the Court entered an Order consolidating the actions and appointing Kavin Bakhda as Lead Plaintiff and Bernstein Liebhard LLP as Lead Counsel (ECF No. 35).

24. On October 20, 2020, Lead Plaintiff filed the Amended Complaint, including Richard Lipka as an additional named plaintiff (ECF No. 42).

25. On December 21, 2020, Defendants moved to dismiss the Amended Complaint (ECF No. 47).

26. On February 12, 2021, Lead Plaintiff filed his Opposition to Defendants' Motion to Dismiss (ECF No. 51). On March 15, 2021, Defendants filed their Reply (ECF No. 54).

## IV. NEGOTIATION OF THE SETTLEMENT AND ITS TERMS

27. On May 5, 2021, the Settling Parties sent a letter informing the Court that they were discussing the possibility of convening a mediation in order to resolve the Action (ECF No. 57).

28. On June 4, 2021, the Settling Parties informed the Court that the Parties had agreed to engage in mediation (ECF No. 59).

29. Subsequently, on June 7, 2021, the Court administratively terminated Defendants' pending motion to dismiss, subject to reinstatement if the mediation was unsuccessful, and ordered the parties to update the Court on the status of the mediation (ECF No. 60).

30. The Settling Parties exchanged mediation statements on July 20, 2021. On August 3 and 4, 2021, the Settling Parties participated in mediation led by Jed D. Melnick, Esq., of JAMS.

31. At the conclusion of the mediation, the Settling Parties reached an agreement in principle on the primary terms of a settlement, which was subject to various conditions. On August 16, 2021, after additional discussions, the Settling

Parties informed the Court of the status of the existence of the agreement in principle (ECF No. 60).

32. Thereafter, the Settling Parties negotiated the terms of the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action and related claims, in return for a cash payment by BBBY (on behalf of all Defendants) of $7 million (the "Settlement Amount"), for the benefit of the proposed Class (ECF No. 66-3).

33. On October 26, 2021, the Settling Parties informed the Court that they had executed the Stipulation and that, if plaintiffs wished to proceed with the proposed settlement after conducting due-diligence discovery, they would move for preliminary approval by the end of the year or in January 2022. ECF No. 63.

34. On October 26, 2021, Defendants filed the executed the Confidentiality Discovery Order, which the Court signed on October 28, 2021. ECF Nos. 63-1; 65.

35. Between October 26, 2021 and December 14, 2021, Plaintiffs' Counsel conducted due-diligence discovery.

**V. PRELIMINARY APPROVAL OF THE SETTLEMENT AND MAILING AND PUBLICATION OF NOTICE OF THE SETTLEMENT**

36. On December 29, 2021, Lead Plaintiff filed the Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Class, and Approval to Provide Notice to the Class, along with Lead Plaintiff's supporting memorandum of law, and proposed notices to the Class Members (ECF No. 66).

37. Lead Plaintiff requested that the Court approve the forms of notice, which, among other things, described the terms of the Settlement, advised Class Members of their rights in connection with the Settlement, set forth the Plan of Allocation, informed Class Members of the amount of attorneys' fees and expenses that Lead Counsel and Lead Plaintiff would request, and explained the procedure and deadline for filing a Proof of Claim and Release form (the "Proof of Claim Form") in order to be eligible to receive a payment from the Net Settlement Fund. In addition, Lead Plaintiff requested that the Court certify the Class for settlement purposes.

38. By Order dated February 4, 2022, Magistrate Judge Hammer preliminarily approved the Settlement and approved the forms of notice to the Class (ECF No. 78). The Court also appointed JND Legal Administration ("JND")

as Claims Administrator and instructed JND to disseminate notice to the Class. *See id.*

39. The Segura Declaration represents that the Claims Administrator has provided Notice to the Class in compliance with the Preliminary Approval Order. *See id.* ¶¶ 2-16 (Exhibit 3 hereto).

40. As stated in the Segura Declaration, in addition to mailing 75,552 Individual Notices to potential Class Members and nominees, JND caused the Summary Notice to be published in both *The Wall Street Journal* and *Investor's Business Daily* and to be transmitted over *PR Newswire*. *Id.* ¶¶ 12, 13.

41. JND also maintains and posts information regarding the Settlement on a dedicated website established for the Action, www.bedbathbeyondSecuritiesLitigation.com, to provide Class Members with information about the Action, as well as downloadable copies of the Notice, Claim Form and Stipulation. *Id.* ¶ 15.

42. Pursuant to the Preliminary Approval Order, the deadline for Class Members to submit objections to the Settlement, or the fee, expense and lead plaintiff reimbursement application, or to request exclusion from the Class is May 5, 2022. To date, Lead Counsel and JND have received no objections to the Settlement, fee and expense, or requested reimbursement of time to Lead Plaintiff, and only one exclusion from the Class. *See also id.* ¶18. Should any objections or

additional requests for exclusion be received, Lead Counsel will address such in the reply papers.

## VI. FACTORS TO BE CONSIDERED IN SUPPORT OF SETTLEMENT

### A. The Settlement Was Negotiated at Arm's-Length

43. As set forth above, the terms of the Settlement were negotiated by the parties at arm's-length through adversarial good-faith negotiations and a zoom mediation session before experienced mediator Jed Melnick, Esq., of JAMS, which I attended. Even after a settlement in principle was reached, the Settling Parties took several months to negotiate and agree to the terms of the Settlement.

44. Lead Counsel is experienced in prosecuting securities class actions and has successfully prosecuted hundreds of similar class actions in courts throughout the country. *See* Exhibit 4 hereto (Bernstein Declaration, Exhibit 3) (Bernstein Liebhard firm resume). Lead Counsel leveraged its experience and resources to assess the merits and value of the case and negotiate the Settlement.

45. Defendants are represented by Proskauer Rose LLP and Cleary Gottlieb Steen & Hamilton LLP, two highly capable and prominent law firms that are experienced in complex securities class action litigation. Notwithstanding this opposition, Lead Counsel was able to develop a case that was sufficiently strong to persuade Defendants to settle it on terms that are favorable to the Class.

46. The Settlement avoids the hurdles Lead Plaintiff would have to clear in proving liability and damages if the Action continued, and avoids the significant costs and risks associated with further litigation and the very real risk of no recovery at all.

47. As a result of Lead Counsel's litigation efforts and the discussions during the Settling Parties' settlement negotiations, Lead Counsel was able to identify issues that were critical to the outcome of this case. Lead Counsel has considered the risks of continued litigation, the likelihood of defeating Defendants' motion to dismiss, the likelihood of obtaining class certification, the likelihood of defeating *Daubert* and summary judgment motions after completion of fact and expert discovery and, if successful, the risk, expense, and length of time to prosecute the Action through trial and the inevitable subsequent appeals.

**B. Defendants Raised Arguments that Posed Risk to the Action**

48. At the time the Settlement was reached, Defendants' motion to dismiss the Amended Complaint was fully briefed. Although Lead Plaintiff believes that the claims asserted in the Amended Complaint are meritorious, Defendants' motion to dismiss posed risks.

49. Defendants argued, and would continue to argue, that their challenged statements were not materially false and misleading when made because (i) the allegations of contemporaneous data contradicting Defendants' purported false

statements were not sufficiently detailed; (ii) Defendants adequately disclosed the risks associated with the Program; (iii) the confidential witness ("CW") in the Amended Complaint was only employed at BBBY prior to the Class Period; (iv) many of Defendants' statements were forward-looking and, thus, protected by the PSLRA's safe harbor; (v) BBBY had new management in charge right before the Class Period; and (vi) Defendants had no duty to disclose BBBY's lack of experience with the new markdown and promotions-based strategy.

50. Defendants would also have continued to argue that even if Lead Plaintiff could establish a material misstatement or omission, there was no evidence upon which Lead Plaintiff could prove the requisite mental state of scienter – *i.e.,* that Defendants misled investors intentionally or with extreme recklessness.

51. Lead Plaintiff opposed Defendants' motion, arguing, *inter alia*, that (i) Defendants omitted the Program's key risks – revenue cannibalization and undermining margins – then belatedly misrepresented that these risks were under control ahead of BBBY's critical 2019 holiday season; (ii) Defendants issued projections that they knew or recklessly disregarded were unachievable; (iii) Defendants had real-time access to, and received weekly reports containing, detailed data about BBBY's inventory and margins that went to the heart of the Program and contradicted their public statements; (iv) the key risks Defendants

claimed to have addressed materialized, harming BBBY's margins and cannibalizing revenues during the 2019 holiday season; (v) Defendants' scienter could be proven without alleging motive, under *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007), but the Amended Complaint nonetheless contained detailed allegations of motive; (vi) Defendants' statements were not forward-looking statements protected under the PSLRA; and (vii) although the CW left BBBY right before the start of the Class Period, the CW's allegations were highly specific, compelling and relevant to the ongoing situation at BBBY.

52. Defendants also raised significant arguments concerning Lead Plaintiff's ability to establish loss causation and damages (and if so, how much damages). *See* Settlement Memorandum at 11-12. *See also infra* ¶¶ 58-59.

53. Although Lead Plaintiff and Lead Counsel believe that they effectively countered Defendants' arguments in the opposition to Defendants' motion to dismiss, and could have effectively countered arguments Defendants may have raised later, it is uncertain how the Court would have ruled. In addition, Defendants' arguments at class certification and summary judgment would have been just as hard-fought and extensive, and Lead Plaintiff had no guarantee of success.

54. The risks of establishing liability and damages at trial were also significant. Lead Plaintiff could not predict what evidence would be gleaned

through discovery and would face the unpredictability of a lengthy and complex trial, the risk that the jury would react to evidence in unforeseen ways, and the risk that the jury would find that the challenged statements were not materially false or misleading and that no damages were caused by Defendants' actions. Accordingly, Lead Plaintiff faced the risk that the Defendants' arguments would find favor with a jury and result in the Class losing at trial and receiving no recovery.

### C. The Judgement of the Parties and Reaction of the Class Provide Additional Support for Approval of the Settlement

55. As set forth above, the Settlement is the product of substantial arm's-length negotiations between opposing counsel with significant experience in securities class action litigation. In sum, Lead Counsel believes that the Settlement represents a favorable resolution for the Class under the circumstances.

56. In addition, 75,552 Individual Notices have been mailed to potential Class Members and nominees. *See* Exhibit 3 (Segura Decl.) ¶ 12. As of the date of this Declaration, Lead Counsel and JND have received no objections to the Settlement, the Plan of Allocation, or the fee, expense and lead plaintiff reimbursement request have been submitted. There has only been one exclusion. *See* Segura Decl. ¶ 18.

**D. The Settlement is a Good Result Considering the Risks of Continued Litigation**

57. The Settlement is a fair and reasonable result, particularly when considered in view of the substantial risks and obstacles to recovery if the Action were to continue through summary judgment, to trial, and through likely post-trial motions and appeals.

58. Plaintiffs' maximum estimated damages here are $300 million. However, this optimistic figure does not account for the numerous arguments Defendants made and likely would have made to reduce damages, including, but not limited to, that (1) there was no fraud here and thus no damages; (2) the alleged corrective disclosures contained confounding information unrelated to the alleged fraud, which would have to be backed out from any damage figure; (3) COVID adversely affected the market and kept BBBY stock from recovering;[5] (4) BBBY stock recovered over 8% on January 10, 2021, the day after the alleged partial

---

[5] The PSLRA has a 90-day lookback rule that states that damages "shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. 78u-4(e)(1). Defendants would likely have argued that, but for COVID's negative effect on the whole market, BBBY stock would have recovered such that its 90-day average trading price after the final February 11, 2020 disclosure would have been less than the stock drop on February 11, 2020, and that damages would have been limited to that smaller amount under the PSLRA.

disclosure;[6] and (5) the PSLRA's 90-day lookback should be used for both the partial and final disclosures.

59. Lead Counsel does not agree with any of these arguments. Nevertheless, if Defendants were successful in making any one of them, damages could be reduced to $0 in the worst-case scenario or, based on expert analysis, fall within an estimated $184 million range. The $7 million Settlement comprises 2.3% of the $300 million figure (which does not address any of the arguments in paragraph 58 above) and 3.8% of the $184 million figure (which only addresses arguments three through five of paragraph 58). Averaging these two figures (2.3% and 3.8%) results in a conservatively estimated 3.1% recovery. The 3.1% figure is conservative because it does not take into account all of the arguments in paragraph 58 as well as others that may have been raised by Defendants which could have reduced damages even further.

60. The amount and percentages of the Settlement are reasonable in light of the median settlement amount and percentage recovered as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. According to Cornerstone Research, the median 2021 settlement was $5.8 million and the recovery was 4.5% of damages for cases

---

[6] BBBY stock closed on January 9, 2020 at $13.15 per share and on January 10, 2020 at $14.24 per share. *See https://finance.yahoo.com/quote/BBBY/history? period1=1523491200&period2=1649721600&interval=1d&filter=history&freque ncy=1d&includeAdjustedClose=true.*

settling during a pending motion to dismiss – which is when this case was settled. *See* Exhibit 1 at 14 (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2021 Review and Analysis*, Cornerstone Research). Thus, this case settled for a slightly higher amount and recovered a slightly lower percentage of damages than the 2021 averages. The percentage recovery is also comparable to the percentage of damages recovered in other securities class action settlements. *See* Settlement Brief at 13 n.6.

61. Accordingly, the Settlement is a favorable and good result for the Class.

## VII. THE PLAN OF ALLOCATION

62. Pursuant to the Notice Order and as set forth in the Individual Notice, Summary Notice, and Notice, all Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a timely and proper Proof of Claim form. As provided in the Stipulation, after deducting all appropriate taxes, administrative costs, and attorneys' fees and expenses (as well as reimbursement of Lead Plaintiff's time), the remainder of the Settlement Fund (the "Net Settlement Fund") shall be distributed among Class Members who submit valid Proof of Claim forms according to the Plan of Allocation.

63. If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed. The proposed Plan of Allocation

provides that, to qualify for payment, a claimant must be, among other things, an eligible Member of the Class and must submit a valid Proof of Claim form that provides all of the requested information. The Settlement Fund will be distributed on a pro rata basis depending on the Class Member's recognized losses. The Plan of Allocation is set forth in the Notice.

64. The proposed Plan of Allocation was formulated after consultation with Lead Counsel's damages consultant in order to calculate an equitable method to divide the Net Settlement Fund for distribution among Class Members who submit valid claims. The proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement among the Class.

65. The Plan of Allocation allocates Settlement funds based on when an investor bought and, if relevant, sold BBBY stock. The plan also takes into account whether an investor bought before both alleged corrective disclosures or after the first one, and allocates damages accordingly.

## VIII. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE

66. Lead Counsel and additional Plaintiffs' Counsel have not received any payment for their services in prosecuting this litigation to date, nor have they been paid for expenses incurred in the prosecution of this Action. The Notice provides that Lead Counsel may apply for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Fund, plus expenses of up to $100,000.

67. As set forth in the Fee Brief, Lead Counsel is requesting attorneys' fees of 33 1/3% of the Settlement Fund, plus expenses. The requested fee was approved by Lead Plaintiff in his retainer. *See* Bakhda Decl. ¶ 15 (Exhibit 2 hereto). The requested fee is also well within the range of fees awarded by courts in this Circuit and courts throughout the country in cases of this size and at this procedural stage. *See* Fee Brief at 8-9.

68. Lead Counsel achieved this Settlement at significant risk and expense. Lead Counsel was unwavering in its representation of the Class and its investment of the time and resources necessary to bring this litigation to a successful conclusion. Lead Counsel's compensation for the services rendered has always been wholly contingent. The requested fee is reasonable based on the quality of Lead Counsel's work and the substantial benefit obtained for the Class.

69. The requested fee is also warranted in light of the result obtained for the Class and the obstacles that existed to obtaining any recovery. Defendants have maintained throughout the litigation that they had no liability. If the case survived Defendants' motion to dismiss, of which there was no guarantee, it would have proceeded to discovery, class certification, *Daubert* motions, summary judgment and possibly trial, each posing further risks and protracted litigation.

**A.     The Fee Request is Justified Under the Lodestar/Multiplier Approach**

70.     For Lead Counsel's efforts on behalf of the Class, it is applying for compensation from the Settlement Fund on a percentage basis.  The percentage method is an appropriate method of compensating counsel because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum recovery in the shortest amount of time required under the circumstances.  In addition, the percentage method is particularly appropriate here, given the favorable result that Lead Counsel achieved.

71.     Lead Counsel is applying for attorneys' fees on behalf of all Plaintiffs' Counsel.  Plaintiffs' Counsel's compensation for the services rendered was wholly contingent on success and Lead Counsel ensured there was no duplication of efforts among counsel.  Plaintiffs' Counsel dedicated 1,249.94 hours to prosecuting this Action resulting in a lodestar of $1,063,657.50.  Lead Counsel spent 1,187.34 hours, resulting in a lodestar of $1,032,992.75; local counsel Jan Meyer & Associates ("Meyer") spent 3 hours, resulting in a lodestar of $1,350; and additional counsel Pomerantz LLP ("Pomerantz") spent 59.60 hours, resulting in a lodestar of $29,314.75.  *See* Exhibits 4, 5, and 6 hereto (Declarations of Stanley D. Bernstein, Richard Elem, and Brian Calandra, respectively).

72.     Lead Counsel's 33 1/3% fee request represents a small multiplier of 2.17 to the total lodestar, well within – and in fact at the lower end – of the range

of multipliers awarded by courts in this District and in courts throughout the country. *See* Fee Brief at 25-26.

73. Lead Counsel's expenses incurred in prosecuting this Action are set forth in the Bernstein Declaration. *See id.* (Exhibit 4 hereto) at Exhibit 2. Lead Counsel's expenses are reflected in the books and records maintained by the firm, and are an accurate recordation of the expenses incurred. In total, Lead Counsel incurred expenses in the amount of $63,508.86 to successfully prosecute the Action.

74. There have been no objections to Lead Counsel's expense request – which is well below the $100,000 limit provided in the notice.

75. Lead Counsel respectfully submits that its fees and expenses are reasonable and should be approved by the Court.

**B.    Standing and Expertise of Counsel**

76. The expertise and experience of Lead Counsel is described in Exhibit 3 to the Bernstein Declaration. Lead Counsel are experienced securities class action litigators and have years of experience litigating these types of cases, having served as lead or co-lead in some of the largest securities litigations in recent history and recovering billions of dollars for shareholders. Local counsel Meyer and additional Plaintiffs' Counsel are also well-experienced in securities class actions. *See* Elem Decl. Ex. 2; Calandra Decl. Ex. 2.

77. Defendants are represented by very experienced counsel – the law firms of Proskauer Rose LLP and Cleary Gottlieb Steen & Hamilton LLP – who spared no effort in the defense of their clients. Defendants' counsel vigorously defended their clients, insisted they had no liability, and gave every indication that they were prepared to proceed with the litigation to trial, if necessary, if a settlement was not reached. In the face of this opposition, Lead Counsel developed its case so as to persuade Defendants to settle the case on a basis favorable to the Class under the circumstances.

**C.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases**

78. This litigation was undertaken by Lead Counsel on a wholly contingent basis. From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking this responsibility, Lead Counsel was obligated to ensure that sufficient attorney and paraprofessional resources were dedicated to the prosecution of this Action and that funds were available to compensate staff and the considerable costs which a case such as this requires.

79. Because of the nature of a securities litigation contingent practice, where cases are predominantly large and last several years, contingent litigation firms have to pay regular overhead, in addition to advancing the expenses of the

litigation, all while no recovery is assured. This Action is no different. From the outset, this Action presented a number of risks and challenges that could have prevented the Class from obtaining any recovery at all. Further, law firms handling complex contingent litigation do not always win. Tens of thousands of hours have been expended on losing efforts.

80. When Lead Counsel undertook to act for Lead Plaintiff and the Class in this Action, it was with the knowledge that it would spend many hours of work against two of the best defense law firms in the country with no assurance of obtaining any compensation for its efforts. The benefits conferred on the Class by this Settlement were obtained despite the substantial risks of no recovery. Indeed, Defendants mounted a strong defense and there were many significant obstacles to obtaining a larger recovery than the $7 million Settlement if Lead Plaintiff kept litigating.

## IX. LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT FOR THE TIME HE SPENT LITIGATING THIS CASE AND ACHIEVING THE SETTLEMENT SHOULD BE APPROVED

81. Pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), Lead Plaintiff is seeking reimbursement related directly to his representation of the Class, including time reviewing pleadings and court filings, communicating with Lead Counsel, and participating in settlement discussions. Such payments are expressly authorized by the PSLRA.

82. As set forth in the accompanying Declaration of Kavin Bakhda (Exhibit 2 hereto), Lead Plaintiff seeks a modest reimbursement of $5,000 for the time he dedicated to the Action. *See generally id*.

83. The Individual Notice, Summary Notice and Notice each informed potential Class Members that Lead Counsel would be seeking payment of expenses in an amount not to exceed $100,000, including reimbursement to the Lead Plaintiff directly related to his representation of the Class in an amount not to exceed $5,000, as authorized by the PSLRA. The aggregate amount requested, $63,508.86 (which includes $58,508.86 in litigation expenses incurred by Lead Counsel and $5,000 in PSLRA reimbursement to Lead Plaintiff) is below the $100,000 estimate given to the Class in the notices.

84. As of the date of this Declaration, there have no been no objections to either the requested attorney fees, the requested reimbursement of expenses, or the requested reimbursement to Lead Plaintiff.

## X. CONCLUSION

85. In view of the recovery to the Class, the substantial risks of this litigation, the substantial efforts of Lead Counsel, the quality of the work performed, the contingent nature of the fee, and the standing and experience of Lead Counsel, Lead Plaintiff and Lead Counsel respectfully submit that: (a) the Settlement is fair, reasonable and adequate, and should be finally approved; (b) the

Plan of Allocation represents a fair method for the distribution of the Net Settlement Fund among Class Members and should be approved; (c) the application for attorneys' fees of 33 1/3% of the Settlement Fund, plus interest, and litigation expenses in the amount of $63,508.86 should be approved; (d) the Class should be finally approved for purposes of the Settlement; and (e) Lead Plaintiff should be awarded $5,000, pursuant to the PSLRA.

## XI.  TABLE OF EXHIBITS

86.  The following documents are true and correct copies:

| EXHIBIT | DOCUMENT |
|---|---|
| 1 | Cornerstone Research in Laarni T. Bulan et al., *Securities Class Action Settlements: 2021 Review and Analysis* |
| 2 | Declaration of Kavin Bakhda |
| 3 | Declaration of Luiggy Segura Regarding (A) Mailing of the Individual Notice; (II) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date |
| 4 | Declaration of Stanley D. Bernstein in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff |
| 5 | Declaration of Richard Elem in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff |
| 6 | Declaration of Jeremy Lieberman in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead |
| 7 | 2021 NERA Economic Consulting Report, by Janeen McIntosh and Svetlana Starykh (January 25, 2022) |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2022.

By: /s/ Laurence J. Hasson

LAURENCE J. HASSON