# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN AND JUNE VITIELLO, Individually and on Behalf of All Others Similarly Situated, | No. 2:20-cv-04240-MCA-MAH |
| Plaintiffs, | |
| v. | |
| BED BATH & BEYOND INC., *et al.*, | |
| Defendants. | |

# MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND CERTIFICATION OF CLASS

00688798;V1

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................. 1

ARGUMENT ........................................................................................ 3

I.     STANDARDS FOR FINAL APPROVAL OF THE SETTLEMENT .... 3

II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .. 7

    A.  Lead Plaintiff and Lead Counsel Adequately Represented the Class ............................................................................................ 7

    B.  The Settlement Was Negotiated at Arm's Length ......................... 8

    C.  The Relief Provided by the Settlement is Adequate .................... 10

        1.  The Risks of Establishing Liability at Trial ...................... 13

        2.  The Risks of Establishing Loss Causation and Damages at Trial ................................................................................. 17

        3.  The Settlement Eliminates the Additional Costs and Delay of Continued Litigation .................................................... 19

        4.  The Proposed Method for Distributing Relief Is Effective ........................................................................................... 21

        5.  Lead Counsel's Request for Attorneys' Fees Is Reasonable ........................................................................................... 22

        6.  Other Agreements Have Been Identified ........................... 23

    D.  The Settlement Ensures Class Members Are Treated Equitably .. 24

    E.  The Settlement Satisfies the Remaining *Girsh* Factors ............... 24

1. The Lack of Objections And One Exclusion to Date Support Final Approval.......................................................25

2. Lead Plaintiff and Lead Counsel Had Sufficient Information to Make an Informed Decision Regarding the Settlement...........................................................................26

3. Maintaining Class Action Status Through Trial Always Presents a Risk ...................................................................28

4. Defendants' Ability to Withstand a Greater Judgment.....28

III. THE PLAN OF ALLOCATION IS REASONABLE AND FAIR .......29

IV. FINAL CERTIFICATION OF THE CLASS ........................................31

A. The Class Meets the Requirements of Rule 23(a) ........................32

1. Rule 23(a)(1): Numerosity .................................................32

2. Rule 23(a)(2): Questions of Law or Fact Are Common ...32

3. Rule 23(a)(3): Lead Plaintiff's Claims are Typical ..........33

4. Rule 23(a)(4): Lead Plaintiff Is an Adequate Representative ....................................................................34

B. The Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority ........................................................35

V. NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS..............................................................................................36

CONCLUSION .....................................................................................................38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ........................................................................35

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................35

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ........................................................................35

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014) ........................................................29

*Burns v. FalconStor Software, Inc.*,
    No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ...........29

*Castro v. Sanofi Pasteur Inc.*,
    Civ. No. 11-7178 (JMV)(MAH), 2017 WL 4776626 (D.N.J. Oct. 23, 2017) .....25

*Christine Asia Co. v. Yun Ma*,
    No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534
    (S.D.N.Y. Oct. 16, 2019) .................................................................23

*Dartell v. Tibet Pharms., Inc.*,
    No. CV 14-3620, 2017 WL 2815073 (D.N.J. June 29, 2017)..............................21

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ........................................................................17

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ........................................................3, 4

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................36

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ...................................................... *passim*

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ........................................................................28

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
   No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008)...................13

*In re AT & T Corp.*,
   455 F.3d 160 (3d Cir. 2006) ...............................................................6

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   12-md-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016), *amended in
   part sub nom. In re Carrier Iq, Inc.*, No. 12-md-02330-EMC, 2016 WL 6091521
   (N.D. Cal. Oct. 19, 2016) ..................................................................23

*In re Cendant Corp. Sec. Litig.*,
   109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd*, 264 F.3d 201 .......................9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ....................................................... passim

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
   No. 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019)..............32

*In re Citigroup Inc. Sec. Litig.*,
   No. 07 Civ 9901(SHS), 2014 WL 2445714 (S.D.N.Y. May 30, 2014) .............20

*In re Citigroup Inc. Sec. Litig.*,
   No. 09 Civ 7359(SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) .............13

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ........... 14, 30

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001).................................................30

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ......................................................... 11, 31

*In re Genta Sec. Litig.*,
   No. CIV. A. 04-2123 JAG, 2008 WL 2229843 (D.N.J. May 28, 2008).............27

*In re Heckmann Corp. Sec. Litig.*,
   No. CA 10-378-LPS-MPT, 2013 WL 2456104 (D. Del. June 6, 2013) .............36

*In re Ikon Off. Sols., Inc.*,
   277 F.3d 658 (3d Cir. 2002) ...............................................................14

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ..........................................................29

*In re Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   296 F.R.D. 351 (E.D. Pa. 2013) ..........................................................26

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012).......................................................26

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
   No. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ..........................29

*In re Nat. Football League Players' Concussion In*j. Litig.,
   307 F.R.D. 351 (E.D. Pa. 2015*), amended*,
   No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd*,
   821 F.3d 410 (3d Cir. 2016 ) ...............................................................19

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016) ......................................................... *passim*

*In re Ocean Power Techs., Inc.*,
   No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ................. 17, 30

*In re Par Pharm. Sec. Litig.*,
   No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ..... 11, 13, 14

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ....................................................... *passim*

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
   962 F. Supp. 450 (D.N.J. 1997*), aff'd sub* no*m. In re Prudential Ins. Co. Am.
   Sales Prac. Litig. Agent Act*ions, 148 F.3d 283 (3d Cir. 1998)...........................31

*In re Remeron Direct Purchaser Antitrust Litig.*,
   No. CIV.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ....................10

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ...............................................................33

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 1, 2013)...............25

*In re Suprema Specialties, Inc. Sec. Litig.*,
  No. 02-168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008).........................14

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020),
  *Report and Recommendation adopted by*
  No. CIV.A. 15-7658 (MAS) (LHG), 2021 WL 358611 (D.N.J. Feb. 1, 2021),
  *aff'd in part, appeal dismissed in part sub nom.*
  *TIAA v. Valeant Pharms. Int'l, Inc.*,
  No. 21-1218, 2021 WL 6881210 (3d Cir. Dec. 20, 2021) ....................................6

*In re Veritas Software Corp. Sec. Litig.*,
  396 F. App'x 815 (3d Cir. 2010) ........................................................................37

*In re Viropharma Inc. Sec. Litig.*,
  No. CIV.A. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ................ 10, 14

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd,*
  166 F.3d 581 (3d Cir. 1999) ...............................................................................19

*McDonough v. Horizon Blue Cross Blue Shield of New Jersey*,
  641 F. App'x 146 (3d Cir. 2015) ...........................................................................4

*Pepe v. Cocrystal Pharma, Inc.*,
  No. 2:18-cv-14091-KM-JBC (D.N.J. Dec. 16, 2020) ........................................22

*Pollak v. Portfolio Recovery Assocs., LLC*,
  285 F. Supp. 3d 812 (D.N.J. 2018)........................................................................7

*Pro v. Hertz Equip. Rental Corp.*,
  No. CIV.A. 06-3830 DMC, 2013 WL 3167736 (D.N.J. June 20, 2013) .............13

*Schuler v. Medicines Co.*,
  No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016).......... *passim*

*Serio v. Wachovia Sec., LLC*,
  No. CIV.A. 06-4681(MF), 2009 WL 900167 (D.N.J. Mar. 31, 2009) ...............25

*Shapiro v. All. MMA, Inc.*,
  No. CV 17-2583 (RBK/AMD), 2018 WL 3158812
  (D.N.J. June 28, 2018) ................................................................................... 33, 34

*Shapiro v. All. MMA, Inc.*,
  No. 1:17-cv-02583-RBK-AMD, 2018 WL 10050181 (D.N.J. Oct. 15, 2018) ....23

*Smith v. Merck & Co.*,
  No. CIV.A. 13-2970 (MAS) (LHG),
  2019 WL 3281609 (D.N.J. July 19, 2019) .............................................................9

*Snyder v. Ocwen Loan Servicing, LLC*,
  No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) .............................32

*Somogyi v. Freedom Mortg. Corp.*,
  495 F. Supp. 3d 337 (D.N.J. 2020) .....................................................................19

*Stevens v. SEI Invs. Co.*,
  No. CV 18-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) .............................29

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ........................................................................ 24, 30

*Talone v. Am. Osteopathic Ass'n*,
  No. 1:16-CV-04644-NLH-JS, 2018 WL 6318371 (D.N.J. Dec. 3, 2018) .... 19, 20

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) .............................................................................9

*Vataj v. Johnson*,
  No. 19-cv-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...............13

*Wallace v. Powell*,
  288 F.R.D. 347 (M.D. Pa. 2012) ............................................................. 7, 24, 25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................38

*Walsh v. Great Atl. & Pac. Tea Co.*,
  96 F.R.D. 632 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983) .............................4, 10

*Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*,
  758 F.2d 86 (3d Cir. 1985) ......................................................................... 37, 38

**Statutes**

15 U.S.C. § 78u-4 ............................................................................... 26, 35

15 U.S.C. § 78u-4(e)(1) ...........................................................................11

**Rules**

Fed. R. Civ. P. 23 .......................................................................... *passim*

Fed. R. Civ. P. 23(a)(1) ...........................................................................32

Fed. R. Civ. P. 23(a)(2) ...........................................................................32

Fed. R. Civ. P. 23(a)(3) ...........................................................................33

Fed. R. Civ. P. 23(b)(3) ...........................................................................35

Fed. R. Civ. P. 23(a)(4) ...........................................................................34

Fed. R. Civ. P. 23(c)(2) ...........................................................................36

Fed. R. Civ. P. 23(c)(2)(B) ................................................................. 37, 38

Fed. R. Civ. P. 23(e)(1) ...........................................................................38

Fed. R. Civ. P. 23(e)(2) ..........................................................................4, 5

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................6, 20

Fed. R. Civ. P. 23(e)(2)(C)(iii) .................................................................23

Fed. R. Civ. P. 23(e)(2)(C)(iv) .................................................................23

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Kavin Bakhda ("Lead Plaintiff"), on behalf of himself, additional named plaintiff Richard Lipka, and the Class, respectfully submits this memorandum in support of his motion for final approval of the proposed settlement ("Settlement"), plan of allocation, and certification of the Class as set forth in the Stipulation of Settlement dated October 25, 2021 (the "Stipulation") (ECF No. 66-3).[1]

## INTRODUCTION

The Settlement provides a recovery of $7 million in cash to the Class to resolve all claims in this Action.  This is a very good result for the Class given the risks inherent in this litigation.  The Settlement satisfies Rule 23(e)(2) and the so-called "*Girsh*" factors that the Third Circuit also considers for final approval of settlements.  *In re Nat'l Football League Players' Concussion Inj. Litig.* ("*NFL*"), 821 F.3d 410, 436 (3d Cir. 2016) (as amended May 2, 2016).  *Cf. Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975).  Further, the $7 million recovery is well within the range of reasonableness for securities class action settlements at this stage of the litigation.  *See infra* at 12-13.  For these reasons, and because there has been no

---

[1] "Rule" refers to the Federal Rules of Civil Procedure.  All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation. All exhibits referenced herein are attached to the Declaration of Laurence J. Hasson in Support of (I) Motion for Final Approval of Settlement, Plan of Allocation and Certification of the Class; and (II) Motion for Attorneys' Fees, Expenses, and Reimbursement of Time to Lead Plaintiff (the "Hasson Decl."), filed concurrently with this motion.

objection to the Settlement to date, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.

The Settlement of this Action was the product of hard work and diligence. By the time the Settlement was reached, Lead Counsel had, among other things, (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, *inter alia*, a review and analysis of Bed Bath & Beyond Inc.'s ("BBBY") filings with the SEC, public reports and news articles concerning BBBY, transcripts of BBBY's investor calls, interviews with former BBBY employees, and consultations with a damages expert; (ii) drafted the Amended Class Action Complaint (the "Amended Complaint"); (iii) opposed Defendants' motion to dismiss the Amended Complaint; (iv) engaged in extensive negotiations leading to the Settlement, including preparing a mediation statement and having a two-day mediation session with experienced mediator Jed Melnick, Esq., of JAMS; (v) conducted due diligence discovery confirming the fairness of the Settlement; and (vi) prepared the settlement papers for the Court. Before reaching the Settlement, Lead Plaintiff and Lead Counsel had a thorough understanding of the claims and defenses in the Action as well as the risks of establishing liability and damages.

On February 4, 2022, Magistrate Judge Hammer preliminarily approved the Settlement pursuant to Rule 23(e)(1) and authorized notice of the Settlement to the

Class.  *See* ECF No. 78.[2]  The Preliminary Approval Order was based on a showing that the Settlement "will likely earn final approval after notice and an opportunity to object" and that the Class can be certified.  *See* ECF 78; *see also* Rule 23(e)(1)(B) and 2018 Advisory Notes Rule 23(e)(1).

As more fully set forth by the Claims Administrator in the Declaration of Luiggy Segura Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion ("Segura Decl."), notice has been given to the Class as required by the Preliminary Approval Order.  *See* Segura Decl. (Ex. 3 to Hasson Decl.) ¶¶ 2-16.  To date, no Class Member has objected to the Settlement and only one has opted out.  Hasson Decl. ¶ 14; *see also* ¶ 84; Segura Decl. ¶ 18.

For the reasons discussed herein and in the Hasson Declaration, the Settlement is a favorable result for the Class, presumptively fair, and fulfills the criteria set forth in the Federal Rules and applicable case law.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.

## ARGUMENT

## I.   STANDARDS FOR FINAL APPROVAL OF THE SETTLEMENT

As a matter of public policy, settlement is strongly favored.  *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("a strong public policy exists,

---

[2] The Settling Parties consented to Magistrate Judge Hammer's jurisdiction over this motion for final approval.  *See* ECF No. 69.  References to the "Court" include Magistrate Judge Hammer.

which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation"). The Third Circuit has noted that this is especially so in class actions, "where substantial judicial resources can be conserved by avoiding formal litigation." *Id.* at 595; *see also McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x. 146, 150 (3d Cir. 2015) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

While approval of the Settlement is within the Court's discretion (*see In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)), the Third Circuit has instructed that a district court should not substitute its own judgment for that of the parties who negotiated a settlement. *See Girsh*, 521 F.2d at 160 ("the task of the district court is to determine whether the proposed settlement should be accepted and approved — a determination substantially different than a decision on the merits"); *see also Ehrheart*, 609 F.3d at 595 ("The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings"); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d Cir. 1983).

Rule 23(e) simply requires that the court assess whether a proposed class action settlement is "fair, reasonable, and adequate" before granting approval. Fed.

R. Civ. P. 23(e)(2); *see also NFL*, 821 F.3d 410, 436 (3d Cir. 2016); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). Pursuant to Rule 23(e)(2), the following four factors must be considered:

>   (A)    the class representatives and class counsel have adequately represented the class;
>   (B)    the proposal was negotiated at arm's length;
>   (C)    the relief provided for the class is adequate, taking into account:
>       i.    the costs, risks, and delay of trial and appeal;
>       ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>       iii.  the terms of any proposed award of attorneys' fees, including timing of payment; and
>       iv.   any agreement required to be identified under Rule 23(e)(3); and
>   (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P 23(e)(2).

Additionally, courts in the Third Circuit also look at the so-called *Girsh* factors when weighing final approval of class action settlements.  821 F.3d at 436. The *Girsh* factors are:

>   (1) the complexity, expense and likely duration of the litigation...; (2) the reaction of the class to the settlement...; (3) the stage of the proceedings and the amount of discovery completed...; (4) the risks of establishing liability...; (5) the risks of establishing damages...; (6) the risks of maintaining the class action through the trial... ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery... ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157; *see also In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006).[3]

Furthermore, courts in the Third Circuit may also consider the additional factors listed in *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved — or likely to be achieved — for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

148 F.3d at 323; *see also NFL*, 821 F.3d at 436; *In re AT&T Corp. Sec. Litig.*, 455 F.3d at 164-65; *In re Valeant Pharm.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020), *Report and Recommendation adopted by* No. CIV.A. 15-7658 (MAS) (LHG), 2021 WL 358611 D.N.J. 2021), *aff'd in part, appeal dismissed in part sub  nom. TIAA v. Valeant Pharm. Int'l Inc.*, No. 21-1218, 2021 WL 6881210 (3d Cir. 2021).

As discussed below, the Settlement satisfies the *Girsh* and *Prudential* factors.

---

[3] Rule 23(e)(2)(C)(i) overlaps with the first, fourth, fifth, eighth and ninth *Girsh* factors, as they address the substantive fairness of the Settlement when compared to the risks posed by continuing litigation.  *See supra* at 5.

For a settlement to be deemed "fair, reasonable and adequate", every possible factor need not be satisfied. *See Wallace v. Powell*, 288 F.R.D. 347, 371 (M.D. Pa. 2012) ("Not every factor need weigh in favor of settlement… in order for the Settlement to be approved") (citing *Cendant,* 264 F.3d at 242–43).

## II.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.  Lead Plaintiff and Lead Counsel Adequately Represented the Class

Lead Plaintiff and Lead Counsel adequately represented the Class in this Action. "[W]hen making an adequacy determination, the Court must consider (l) the qualifications, experience, and general abilities of the plaintiffs' lawyers to conduct the litigation; and (2) whether the interests of the lead plaintiffs are sufficiently aligned with the interests of the absentees." *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *4 (D.N.J. June 24, 2016). "A named plaintiff is 'adequate' if his interests do not conflict with those of the class." *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 844 (D.N.J. 2018) (citing *Prudential*, 148 F.3d at 312).

Here, Lead Plaintiff's interests in obtaining the largest recovery possible are directly aligned with the interests of other Class Members. The Court appointed Kavin Bakhda as Lead Plaintiff after finding that he had the largest financial interest of any lead plaintiff movant and could "adequately represent the class's interests." *See* ECF No. 35 at 2. Bakhda has done exactly that – communicating regularly with

Lead Counsel, overseeing the litigation, reviewing drafts of the pleadings and motions, participating in the settlement discussions with Lead Counsel, and approving the Settlement. *See* Declaration of Lead Plaintiff Kavin Bakhda (attached to Hasson Decl. as Ex. 2) ¶ 8.

In addition, throughout the Action, Lead Plaintiff benefited from the advice of knowledgeable counsel well-versed in securities class actions. Bernstein Liebhard LLP is among the most experienced and skilled firms in the securities litigation field and has a long and successful track record, serving as lead counsel in many high profile and influential cases. *See* Hasson Decl. Ex. 4 (Bernstein Declaration) at Ex. 3 (Bernstein Liebhard LLP Firm Resume).

Lead Counsel assiduously litigated the Action since its inception. *See supra* at 3; Hasson Decl. ¶ 6. Throughout the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims as well as the risks of continuing litigation.

In sum, Lead Plaintiff and Lead Counsel adequately represented the Class.

## B.  The Settlement Was Negotiated at Arm's Length

The Settlement here was negotiated at arm's-length. Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when "the negotiations occurred at arms length [sic]." *NFL*, 821 F.3d at 436 (quoting *Cendant,* 264 F.3d at 232 n.18). Likewise, it is appropriate for this

Court to give "substantial weight to the recommendations of experienced attorneys" who engaged in arm's-length negotiations. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness"); *see also In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) (affording "significant weight" to counsel's recommendation), *aff'd*, 264 F.3d 201 (3d Cir. 2001). Furthermore, the "participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Smith v. Merck & Co.*, No. CIV.A. 13-2970 (MAS) (LHG), 2019 WL 3281609, at *4 (D.N.J. July 19, 2019).

Here, the Settlement was achieved only after thorough arm's-length negotiations between well-informed and experienced counsel, including through a formal two-day mediation session led by Jed Melnick of JAMS. Hasson Decl. ¶ 6. Further, in addition to Lead Counsel's extensive pre-discovery investigation discussed *supra*, Lead Counsel conducted due diligence discovery in connection with the Settlement that confirmed its adequacy and fairness. *Id*. Based on this process, Lead Counsel believes the Settlement achieved is fair and reasonable.

In sum, this Settlement was negotiated at arm's length, further weighing in favor of final approval.

### C.  The Relief Provided by the Settlement is Adequate

The relief provided by the Settlement here is also adequate.  The adequacy of a proposed settlement depends on "whether the settlement is within a range of reasonableness that responsible and experienced attorneys could accept, considering all relevant risks."  *See In re Remeron Direct Purchaser Antitrust Litig*., No. Civ.03-0085 FSH, 2005 WL 3008808, at *4 (D.N.J. Nov. 9, 2005) (citing *Walsh*, 96 F.R.D. at 642).  That analysis recognizes the "uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Id*. "However, there is no specific formula, threshold, or equation that a Court must use to determine whether a settlement amount is reasonable.  Even a settlement that is only a 'fraction of the potential recovery' can be deemed appropriate."  *In re ViroPharma Inc. Sec. Litig.*, No. CIV.A. 12-2714, 2016 WL 312108, at *13 (E.D. Pa. Jan. 25, 2016).

As described further below, proving falsity, scienter, loss causation and damages posed serious risks to recovery.  Thus, the adequacy of the Settlement should be judged on "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial."  *Prudential*, 148 F.3d at 322. "In making this assessment, the Court compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the

proposed settlement." *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 (ES), 2013 WL 3930091, at *7 (D.N.J. July 29, 2013) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig. ("GMC Trucks")*, 55 F.3d 768, 806 (3d Cir. 1995)).

Plaintiffs' maximum estimated damages here are approximately $300 million. However, this figure does not account for the numerous arguments Defendants made and likely would have made to reduce damages, including, but not limited to, that (1) there was no fraud here and thus no damages; (2) the alleged corrective disclosures contained confounding information unrelated to the alleged fraud, which would have to be backed out from any damage figure; (3) COVID adversely affected the market and kept BBBY stock from recovering during the 90-day "bounce-back" period under the Private Securities Litigation Reform Act of 1995 (the "PSLRA");[4] (4) BBBY stock recovered over 8% on January 10, 2020, the day after the alleged

---

[4] The PSLRA has a 90-day lookback rule that states that damages "shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. Section 78u-4(e)(1). Defendants would likely have argued that, but for COVID's negative effect on the whole market, BBBY stock would have recovered such that its 90-day average trading price after the final February 11, 2020 disclosure would have been less than the stock drop on February 11, 2020, and that damages would have been limited to that smaller amount under the PSLRA.

partial disclosure;[5] and (5) the PSLRA's 90-day lookback should be used for both the partial disclosure on January 8, 2020 and final disclosure on February 11, 2020.

Lead Counsel does not agree with any of these arguments. Nevertheless, if Defendants were successful in making any one of them, damages could be reduced to $0 in the worst-case scenario or, based on expert analysis, be reduced to the $184 million range. The $7 million Settlement comprises 2.3% of the $300 million figure and 3.8% of $184 million figure. Averaging these two percentages results in a conservative estimated recovery of 3.1%.

The $7 million Settlement is adequate and reasonable in light of the median settlement amount and percentage recovered as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. According to Cornerstone Research, the median 2021 settlement was $5.8 million and the recovery was 4.5% of damages for cases settling during a pending motion to dismiss – which is when this case was settled. *See* Hasson Decl. Ex. 1 at 14 (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2021 Review and Analysis*, Cornerstone Research). Thus, the Settlement here is for a slightly higher amount and slightly lower percentage of damages than the 2021 averages.

---

[5] BBBY stock closed on January 9, 2020 at $13.15 per share and on January 10, 2020 at $14.24 per share. *See https://finance.yahoo.com/quote/BBBY/history?period1=1523491200&period2=1649721600&interval=1d&filter=history&frequency=1d&includeAdjustedClose=true.*

The percentage recovery is also comparable to the percentage of damages recovered in other securities class action settlements, including in courts in this District and Circuit.[6]

As discussed, had Lead Plaintiff continued litigating the Action, he would have had to overcome many difficult challenges.  Given this uncertainty, settling the Action at this juncture will provide the Class with a very good and certain result. Accordingly, this factor militates in favor of the Settlement.

## 1.   The Risks of Establishing Liability at Trial

The risks of establishing liability at trial weigh in favor of granting approval of the Settlement.  Courts have recognized that "[a] trial on the merits always entails considerable risks."  *See*, *e.g.*, *Pro v. Hertz Equip. Rental Corp.*, No. CIV.A. 06-3830(DMC), 2013 WL 3167736, at *4 (D.N.J. June 20, 2013).  Moreover, the significant unpredictability and complexity posed by securities class actions in particular generally weigh in favor of final approval.  *See In re Par Pharm.*, 2013

---

[6] *See*, *e.g.*, *Schuler*, 2016 WL 3457218, at *8 (approving $4.25 million settlement reflecting approximately 4% of the estimated recoverable damages; noting percentage "falls squarely within the range of previous settlement approvals"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *3, *9, *13 (E.D. Pa. Nov. 21, 2008) (approving $16.7 million settlement representing 2.5% of damages); *Cendant*, 264 F.3d at 241 (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *see also Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (granting final approval of $10 million settlement representing slightly more than 2% of estimated damages and stating, "2% aggregate recovery is consistent with the 2–3% average recovery that the parties identified in other securities class action settlements"); *In re Citigroup Inc. Sec. Litig.*, No. 09 Civ. 7359(SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (approving $8.5 million settlement representing 2% of damages).

WL 3930091, at *4 ("[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate"); *In re Suprema Specialties, Inc. Sec. Litig*., No. 02-168 (WHW), 2008 WL 906254, at *4-5 (D.N.J. Mar. 31, 2008) (complexity of securities class actions supports final approval).

But before Lead Plaintiff could even get to trial, he would need to clear other significant hurdles, including winning the pending motion to dismiss, successfully moving for class certification, and surviving any *Daubert* and summary judgment challenges. To place this risk in perspective, almost 65% of securities class actions are dismissed at the pleading stage. *See* 2021 NERA Report at 11 (Hasson Decl. Ex. 7).

To establish his § 10(b) claim, Lead Plaintiff would have to prove that Defendants: "(1) made a misstatement or an omission of a material fact; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiff reasonably relied; and (5) that proximately caused the injuries." *In re Ikon Office Sols., Inc. Sec. Litig*., 277 F.3d 658, 666-67 (3d Cir. 2002). The scienter requirement poses a particular challenge and is considered one of the most difficult elements to prove in a securities fraud case. *See, e.g., Viropharma*, 2016 WL 312108, at *12 ("[s]ince stockholders normally have little more than circumstantial and accretive evidence to establish the requisite scienter, proving scienter is an uncertain and difficult necessity for plaintiffs"); *In re Datatec Sys., Inc. Sec. Litig*.,

No. 04-CV-525 (GEB), 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) ("[I]f this case were to go forward, Lead Plaintiff would face the formidable task of proving scienter and loss causation").

Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation poses a real risk that substantially less or no recovery at all might be achieved. At the time of the Settlement, Defendants' motion to dismiss was fully briefed and the parties exchanged mediation statements. Defendants argued, and would continue to argue, that their challenged statements were not materially false and misleading when made because, *inter alia*: (i) the allegations of contemporaneous data contradicting Defendants' statements were not sufficiently detailed; (ii) the confidential witness ("CW") included in the Amended Complaint had been employed by BBBY prior to the Class Period; (iii) Defendants adequately disclosed the risks associated with BBBY's new inventory reduction program (the "Program"); (iv) many of Defendants' statements were forward-looking and, thus, protected by the PSLRA's safe harbor; (v) BBBY had new management in charge right before the Class Period; and (vi) Defendants had no duty to disclose BBBY's lack of experience with the Program's markdown and promotions-based strategy. *See generally* ECF No. 47.

Defendants also argued and would continue to argue that even if Lead Plaintiff could establish a material misstatement or omission, there was no evidence upon

which Lead Plaintiff could prove the requisite mental state of scienter – *i.e.,* that Defendants misled investors intentionally or with extreme recklessness.   Lead Counsel believe they could have prevailed on all these issues, but every motion to dismiss is uncertain, and the risks to Lead Plaintiff were real.[7]

Even if the Amended Complaint was sustained in full (or in part), there would still be a risk that a Class would not be certified for all potential Class Members. Defendants would also likely have made a *Daubert* challenge and sought summary judgment, and there is no guarantee that Lead Plaintiff would have prevailed against all of Defendants' challenges.  And even if Lead Plaintiff did prevail, there were risks regarding how the Court's rulings would affect the Class, damages, or how the case would be presented to the jury.

These risks aside, discovery also would have been protracted and, given the short Class Period, may not have produced evidence supporting Lead Plaintiff's case.  Furthermore, the trial of Lead Plaintiff's claims would inevitably have been long and complex and even a favorable verdict would undoubtedly have spurred a lengthy post-trial and appellate process.

Accordingly, the pre-trial risks and risk of establishing liability at trial further support the reasonableness of the Settlement.

---

[7] There are a number of other factors posing significant risks to continuing to litigate this Action, including establishing loss causation and damages as discussed *infra* at 17.

### 2. The Risks of Establishing Loss Causation and Damages at Trial

The risks of establishing loss causation and damages at trial further weigh in favor of approving the Settlement. If this litigation were to continue, Lead Plaintiff would inevitably encounter significant loss causation and damages defenses at the summary judgment phase and at trial. Pursuant to *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-47 (2005), Lead Plaintiff would need to show that the disclosure of the alleged securities violations caused investors' losses, as opposed to other unrelated matters. *See, e.g., ViroPharma*, 2016 WL 312108, at *12 ("Lead Plaintiff would need to show that Defendants' omissions caused the drop in the ViroPharma Securities' prices following the corrective disclosure").

The Supreme Court's decision in *Dura*, and subsequent cases interpreting it, have made proving loss causation even more difficult and uncertain than in the past. *See In re Ocean Power Techs., Inc. Sec. Litig*., No. 3:14-CV-3799, 2016 WL 6778218, at *19 (D.N.J. Nov. 15, 2016) ("proving loss causation would be a major risk faced by Plaintiff"); *see also ViroPharma,* 2016 WL 312108, at *12 ("proof [of loss causation] would necessitate a battle of the experts. Lead Plaintiff would be permitted to present expert testimony on their theory of loss causation, and Defendants would be permitted to submit a rebuttal expert report arguing that the omissions had no impact on the value of ViroPharma Securities").

Lead Plaintiff alleges losses corresponding with BBBY's disclosures on January 8, 2020 and February 11, 2020.  On January 8, 2020, BBBY announced an adjusted net loss of $.38 per share (below a $.02 profit consensus), withdrew its guidance, and reported falling margins.  ¶92.  On a conference call that day, Defendant Robyn D'Elia disclosed that BBBY's gross margins fell by 80 basis points, "primarily due to a decrease in merchandise margin driven by a higher level of promotional activity in the quarter".  ¶94.  BBBY's share price fell almost 20% on this news.  ¶20.  On February 11, 2020, Lead Plaintiff alleges that BBBY disclosed that the Program cannibalized revenues and hurt margins.  ¶102.  BBBY stock fell another 20% after these disclosures.  ¶103.  It is uncertain if Lead Plaintiff would have prevailed in pleading and proving loss causation relating to both (or either) of these disclosures.  Indeed, there is the risk that the Court could have found that none of these stock drops related to Lead Plaintiff's allegations of misrepresentations and omissions.

Adding to the complexity and expense of this case is that Lead Plaintiff must prove damages.  Lead Plaintiff's expert – who would be subject to an inevitable *Daubert* challenge – must show that the corrective disclosures revealed new market-moving news, and determine whether any confounding news (*i.e.*, news not related to the alleged fraud) released the same day had an impact on stock price and if so, the amount of recoverable damages.  The Settling Parties' experts would inevitably

express diverging views on the range of recoverable damages at trial.   Indeed, Defendants would have raised numerous arguments about damages (*see supra* at 11-12) that could have potentially reduced recoverable damages significantly.   Because it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise.[8]

Even if Lead Plaintiff overcame the risks relating to loss causation and damages and prevailed at trial, such a victory would not guarantee the Class a better recovery than the $7 million Settlement.   These uncertainties thus further weigh in favor of final approval.

### 3.   The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The Settlement provides the Class with a prompt and tangible recovery, without the additional risk and delay of litigating the Action to completion, which further supports approval of the Settlement.   *See Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 350 (D.N.J. 2020) ("The parties are better off with the certainty of a prompt settlement and payment rather than the uncertainty of whether they will get any recovery at some future unknown date"); *cf. Talone v. Am. Osteopathic*

---

[8] *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 393 (E.D. Pa. 2015) ("[A] jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials [and] divergent expert testimony leads inevitably to a battle of the experts") *amended*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd*, 821 F.3d 410 (3d Cir. 2016); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) ("[C]ourts have recognized the need for compromise where divergent testimony would render the litigation an expensive and complicated 'battle of experts'"), *aff'd*, 166 F.3d 581 (3d Cir. 1999).

*Ass'n*, No. 1:16-cv-04644-NLH-JS, 2018 WL 6318371, at *14 (D.N.J. Dec. 3, 2018) (settlement favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial").

As noted, Defendants' motion to dismiss had been fully briefed at the time the Settlement was reached. Even if the Amended Complaint would have been sustained (in whole or in part), discovery would have been protracted, Lead Plaintiff would have had to successfully move for class certification and then survive *Daubert* motions and summary judgment, and the subsequent trial would inevitably have been long and complex.

The continued litigation of this Action would certainly have been lengthy and costly, with no guarantee of any return for investors. This Settlement allows the Class to recover cash promptly without incurring additional risk. Indeed, "much of the value of a settlement lies in the ability to make funds available promptly." *In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901(SHS), 2014 WL 2445714, at *2 (S.D.N.Y. May 30, 2014).

Accordingly, Fed. R. Civ. P. 23(e)(2)(C)(i) and the first, fourth, fifth, eighth, and ninth *Girsh* factors all support final approval. *Cf. supra* at 5 (listing *Girsh* factors).

### 4.   The Proposed Method for Distributing Relief Is Effective

The proposed method for processing Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  JND Legal Administration ("JND") is an experienced claims administrator and is processing claims under the guidance of Lead Counsel, as authorized in the Preliminary Approval Order.  *See* Hasson Decl. ¶ 63.

Based upon the trading information provided by claimants,[9] JND is determining each claimant's eligibility to participate in the Settlement and calculating each claimant's respective "Recognized Claim" based on the Plan of Allocation.  *See id*.  Lead Plaintiff's claim will be reviewed in the same manner. Claimants are notified of any defects or conditions of ineligibility and are given the chance to contest rejection and cure deficiencies.  Any claim disputes that cannot be resolved will be presented to the Court for determination.  This claims process is similar to that typically accepted and used in securities class action settlements of this kind.  *See Dartell v. Tibet Pharms., Inc.*, No. CV 14-3620, 2017 WL 2815073, at *7 (D.N.J. June 29, 2017) ("The claims process is standardized").

---

[9] The deadline to submit a Proof of Claim is June 6, 2022.

In sum, the claim-processing program for the Settlement is the type regularly used in securities class actions.  As such, it militates in favor of approving the Settlement.

### 5.   Lead Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed in Lead Counsel's memorandum of law in support of the motion for an award of attorneys' fees and expenses and reimbursement of time to Lead Plaintiff, filed concurrently herewith (the "Fee Brief"), Lead Counsel is seeking attorneys' fees of 33 1/3% of the Settlement Fund ($2,331,000), litigation expenses of $63,508.86, which includes a $5,000 reimbursement to Lead Plaintiff for the time he spent litigating this action and achieving the Settlement.  Hasson Decl. ¶¶ 66-75; 81-84.

As set forth in the Fee Brief, this request is in line with fee awards within the Third Circuit in similar common-fund cases.  *See* Fee Brief at 19-20.[10]   Lead Counsel's fee request is reasonable, and Lead Counsel has ensured that the Class is fully apprised of the terms of the proposed award of attorneys' fees, expenses, and

---

[10] With respect to the timing of an award of fees and expenses, it is common for such fees to be paid, as provided by the Stipulation here (*see id*. at page 40, paragraph C), at the time the court makes its award.  *See, e.g., Pepe v. Cocrystal Pharma, Inc.*, No. 2:18-cv-14091-KM-JBC (D.N.J. Dec. 16, 2020), slip op. at 3 (ECF No. 86) (approving timing of payment of attorneys' fees as agreed in stipulation, within three days after court's entry of order awarding fees) (Exhibit A hereto).

reimbursement of time for Lead Plaintiff.  Accordingly, this factor also supports final approval.

### 6.   Other Agreements Have Been Identified

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3).

As previously disclosed in connection with Lead Plaintiff's motion for preliminary approval (*see* ECF No. 66-1 at 15-16), the Settling Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Class Members who collectively purchased a specific number of shares of BBBY common stock request exclusion (or "opt out") from the Settlement.  This type of agreement is "standard in securities class action settlements and has no negative impact on the fairness of the Settlement."[11]

In addition, Lead Counsel has fee agreements with local counsel Jan Meyer & Associates, P.C. and additional Plaintiffs' counsel Pomerantz.  These additional Plaintiffs' Counsel were previously disclosed to the Court, and Lead Counsel

---

[11] *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *see also*, *e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 12-md-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (noting that "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack the settlement in his or her own self-interest"), *amended in part sub. nom. In re Carrier Iq, Inc.*, No. 12-MD-02330-EMC, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016).

ensured that there was no duplication of effort among Plaintiffs' Counsel.  *See* ECF 66-1 at 16 n.5; Notice at 3 n.2 (ECF No. 66-7); Hasson Decl. ¶ 71.

### D.  The Settlement Ensures Class Members Are Treated Equitably

The Plan of Allocation, drafted with the assistance of Lead Plaintiff's damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Class Members equitably.  Each Authorized Claimant, including Lead Plaintiff, will receive a distribution pursuant to the Plan of Allocation, and each will be subject to the same formula for distribution of the Settlement on a *pro rata* basis.  Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011).  The proposed Plan of Allocation is fair and reimburses Class Members based on the type and extent of their injuries.  The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based upon each Authorized Claimant's Recognized Loss attributable to the alleged fraud.  Accordingly, the Plan of Allocation treats all Class Members equitably and should be approved.

### E.  The Settlement Satisfies the Remaining *Girsh* Factors

In applying the *Girsh* factors, "[n]ot every factor need weigh in favor of settlement … in order for the Settlement to be approved."  *Wallace*, 288 F.R.D. at

371 (citing *Cendant*, 264 F.3d at 242–43, affirming final settlement approval when not all factors weighed in favor of approval). Regardless, as demonstrated below, the Settlement satisfies the remaining criteria for approval under *Girsh*.

### 1. The Lack of Objections And One Exclusion to Date Support Final Approval

This factor "requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable." *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-397 (DMC)(JAD), 2013 WL 5505744, at *2 (D.N.J. Oct. 1, 2013). It is well-established that the lack of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.[12] While the deadline has not yet passed, to date, no Class Member has objected to, and only one has excluded herself from, the Settlement. Hasson Decl. ¶ 14. *See also id*. ¶ 84; Segura Decl. ¶ 18 (Hasson Decl. Exhibit 3).[13] Such overwhelming support from the Class further militates in favor of approval of the Settlement.

---

[12] *See Castro v. Sanofi Pasteur Inc*., Civ. No. 11-7178 (JMV)(MAH), 2017 WL 4776626, at *4 n.3 (D.N.J. Oct. 23, 2017) ("the lack of objectors provides a strong indication that the settlement is fair and reasonable"); *Serio v. Wachovia Sec*., LLC, No. CIV.A. 06-4681(MF), 2009 WL 900167, at *7 (D.N.J. Mar. 31, 2009) ("the low percentage of objections is evidence, in and of itself, that the Settlement should be approved because the class believes the settlement is fair").

[13] The deadline for objections and exclusions is May 5, 2022.

### 2. Lead Plaintiff and Lead Counsel Had Sufficient Information to Make an Informed Decision Regarding the Settlement

The third *Girsh* factor requires a court to consider "the degree of case development that class counsel have accomplished prior to settlement" to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. *Cendant*, 264 F.3d at 235. The third *Girsh* factor does not require formal discovery to have taken place. Rather, "[w]hat matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *NFL*, 821 F.3d at 439. Indeed, because the PSLRA imposes an automatic discovery stay during the pendency of a motion to dismiss (*see* 15 U.S.C. Section 78u-4), all securities class action settlements reached while a motion to dismiss is pending are necessarily prior to discovery.

Courts frequently approve settlements that are reached, like the Settlement here, before formal discovery. *See, e.g., Schuler*, 2016 WL 3457218, at *7 (approving settlement prior to discovery because of counsel's investigation); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties"); *see also In re Imprelis Herbicide Mktg. Sales Pracs. & Prod. Liab. Litig.,* 296 F.R.D. 351, 364-66 (E.D. Pa. 2013).

Lead Counsel was well aware of the strengths and weaknesses of the case at the time of Settlement. While drafting the Amended Complaint, Lead Counsel hired an investigator who interviewed former BBBY employees, exhaustively analyzed BBBY's public filings, press releases, and conference calls, and researched BBBY's inventory software tools. *See* Hasson Decl. ¶ 6. In addition, briefing the opposition to Defendants' motion to dismiss and participating in mediation, including exchanging mediation statements, provided Lead Counsel with an awareness of the defenses that the Class would have faced had the Settling Parties continued on to summary judgment and trial.[14] Thus, Lead Counsel and Lead Plaintiff were in a position to make a rational assessment of the case when deciding to settle.

Moreover, as part of the settlement negotiations, Lead Counsel insisted on being able to conduct due-diligence discovery in connection with the Settlement to confirm the adequacy and fairness of the Settlement. Hasson Decl. ¶ 6; Stipulation, pages 3, 20, 42, 46 (discussing due diligence discovery and providing 60 days for it). Once the Settlement was reached, Lead Counsel conducted due-diligence discovery to assess the validity of their impression that the Settlement was fair,

---

[14] *See, e.g., In re Genta Securities Litigation*, No. CIV.A. 04-2123 (JAG), 2008 WL 2229843, at *2 ("The motion to dismiss resolved many of the issues raised in the [complaint], leaving Lead Plaintiff and Defendants ... with a solid understanding of the strengths and weaknesses of their respective positions").

reasonable, and adequate.  All of these steps reinforce Lead Counsel's belief that settling the case at this juncture will provide a commendable return for the Class.

Accordingly, Lead Counsel and Lead Plaintiff had sufficient information to make an informed and intelligent decision about whether to settle.

### 3.   Maintaining Class Action Status Through Trial Always Presents a Risk

Even if the Amended Complaint survived Defendants' motion to dismiss, Lead Plaintiff would still have to move for class certification.  This motion would be expensive and time-consuming and involve experts.  Defendants would, among other things, inevitably attempt to rebut the presumption of reliance by trying to show that BBBY's stock price was not impacted by the alleged fraud.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014); *cf. Schuler*, 2016 WL 3457218, at *7 ("Defendants may choose to challenge the certification of a litigation class if the case were to move forward[;] there are significant risks in maintaining class certification").

Accordingly, resolving this case now removes the risk of maintaining class action status through trial.

### 4.   Defendants' Ability to Withstand a Greater Judgment

The Settlement was not driven by a risk that further litigation would jeopardize BBBY's ability to pay.  "Indeed, in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial

judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the settlement." *NFL*, 821 F.3d at 440; *see also Stevens v. SEI Invs. Co*., No. CV 18-4205, 2020 WL 996418, at *5 (E.D. Pa. Feb. 28, 2020). This factor does not affect the Settlement here, particularly because Lead Plaintiff faced significant risks on numerous other fronts. *See supra* at 11-19.

## III.   THE PLAN OF ALLOCATION IS REASONABLE AND FAIR

A Plan of Allocation "need only have a reasonable, rational basis when created by competent and experienced counsel." *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *6 (E.D.N.Y. Apr. 11, 2014); *see also Boyd v. Coventry Health Care Inc*., 299 F.R.D. 451, 461 (D. Md. 2014) ("In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect[.]   [G]iven that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis"). The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Merck & Co. Vytorin ERISA Litig*., No. 08-CV-285 (DMC), 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010) (citing *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)).

Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan*, 667 F.3d at 328. Here, Lead Counsel formulated the Plan of Allocation to be consistent with the securities laws and to reflect the two alleged corrective disclosures. *See In re Datatec*, 2007 WL 4225828, at *5 (approving plan because it was "rational and consistent with Lead Plaintiffs' theory of the case").[15]

The Plan of Allocation here is reasonable and fair. Lead Counsel formulated the Plan of Allocation with the help of a damages expert, consistent with the principles of loss causation. Hasson Decl. ¶ 64. The Plan of Allocation recognizes differences in damages incurred by those who bought and, if applicable, sold their shares at different prices and times during the Class Period, reflecting the different damages due to the purchase and sale prices that they paid and the amount of alleged artificial inflation in BBBY common stock at the time of their purchases. *Id.* ¶ 65. The Plan of Allocation also rationally allots different damages depending on whether Class Members held BBBY shares (that they purchased during the Class Period) at the time of one or both of the two alleged corrective disclosures. *Id.* The Settlement

---

[15] *See also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a pro rata basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"); *see also Ocean Power*, 2016 WL 6778218, at *23 ("pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'") (quoting *Sullivan*, 667 F.3d at 328.

Fund will be distributed on a *pro rata* basis depending on the Class Member's recognized losses.  *Id.* ¶ 63.

In sum, Lead Counsel submits that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Class Members with losses suffered due to the conduct alleged in the Amended Complaint and, thus, should be approved.

## IV.    FINAL CERTIFICATION OF THE CLASS

The Third Circuit has long acknowledged that certifying a class for settlement is proper.  *See*, *e.g.*, *Schuler*, 2016 WL 3457218, at *6, 12 (granting final class certification in connection with motion for final approval of settlement); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 508 (D.N.J. 1997), (citing *GMC Trucks*, 55 F.3d at 778) ("Federal Rule of Civil Procedure 23 allows the Court to certify a class for settlement purposes only"), *aff'd,* 148 F.3d 283.

In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and determined that "pursuant to Rule 23(e)(1)(B)(ii) of the Federal Rules of Civil Procedure… it [would] likely be able to certify the Class solely for purposes of the proposed Settlement."  ECF No. 78 at 3.  Specifically, the Court found that each requirement for certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met or will likely be met for purposes of

the proposed Settlement.  *Id.* at 3-4.  The fact that nothing has changed since the entry of the Preliminary Order to alter the propriety of the Court's preliminary certification of the Class further supports final approval.[16]

### A.  The Class Meets the Requirements of Rule 23(a)

#### 1.  Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable.  In the Third Circuit, numerosity is presumed when a class consists of 40 or more members.  *See, e.g., NFL*, 821 F.3d at 426 ("There is no magic number of class members needed for a suit to proceed as a class action.  We have set a rough guidepost in our precedents, however, and stated that numerosity is generally satisfied if there are more than 40 class members").  Throughout the Class Period, BBBY common stock traded actively on the NASDAQ exchange.  These shares were purchased by thousands of investors, making joinder impracticable.

#### 2. Rule 23(a)(2): Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  In securities fraud cases, the commonality requirement is satisfied where it is alleged that named plaintiff "share[s] at least one

---

[16] *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig*., No 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (granting final approval and noting that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

question of fact or law with the grievances of the prospective class." *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *4 (D.N.J. June 28, 2018); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 n.10 (3d Cir. 2009) ("only one question of law or fact in common is necessary").

Meeting the commonality requirement is not a high threshold, and the Third Circuit has "acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable." *NFL*, 821 F.3d at 427; *see also Shapiro*, 2018 WL 3158812, at *4 (The commonality "requirement may be satisfied by a single common issue and is easily met").

Here, all members of the Class purchased BBBY common stock during the Class Period, and the central questions of whether Defendants issued actionable misstatements and omissions regarding the Program, and whether Defendants acted with the requisite mental state, are the same for all members of the Class.

Accordingly, there are common questions of law and fact warranting class treatment for settlement purposes.

### 3. Rule 23(a)(3): Lead Plaintiff's Claims are Typical

Rule 23(a)(3) is satisfied "when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by

defendants, and (3) their claims are based on the same legal issues." *Shapiro*, 2018 WL 3158812, at *5 (internal citations omitted). "Typical" does not mean "identical." *See, e.g., Schuler*, 2016 WL 3457218, at *3 ("The typicality requirement does not mandate that all putative Class Members share identical claims"). The Third Circuit has "set a low threshold for typicality," and "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *NFL*, 821 F.3d at 428 (internal citations and quotation marks omitted).

Here, Lead Plaintiff's claims are typical of those of the Class for settlement purposes. Like other Class Members, Lead Plaintiff purchased publicly traded BBBY common stock during the Class Period and suffered damages based on the alleged misrepresentations and omissions that Defendants made to the investing public.

### 4. Rule 23(a)(4): Lead Plaintiff Is an Adequate Representative

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is measured by: "(l) the qualifications, experience, and general abilities of the plaintiffs' lawyers to conduct the litigation; and (2) whether the interests of the lead plaintiffs are sufficiently aligned with the interests of the absentees." *Schuler*, 2016 WL 3457218, at *4. Both prongs are met here.

Lead Plaintiff has represented and will continue to represent the interests of the Class fairly and adequately.  There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Class.  Likewise, Lead Counsel has extensive experience in complex securities litigation and class action proceedings, is well qualified and able to conduct the Action, and has ably and effectively represented Lead Plaintiff and the proposed Class throughout the Action.[17]

### B.  The Class Meets the Requirements of Rule 23(b)(3) – Predominance and Superiority

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is "readily met" in securities class action claims.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, common questions of law and fact predominate over individual questions for settlement purposes because the alleged fraudulent statements and omissions affected all Class Members in the same manner.

In addition, class-wide reliance is established in this Action either through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims are predicated, in part, upon omissions of material fact, or alternatively based on the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988).  Applying either presumption dispenses with

---

[17]  Accordingly, Lead Counsel satisfies the Class Counsel requirements of Rule 23(g) and has already been approved by the Court to represent the class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). *See* ECF No. 78.

the requirement that each Class Member prove individual reliance on the alleged misstatements or omissions.  *See id.*

Further, resolving this case as a class action is far superior to litigating thousands of individual cases where the expense for a single investor would likely exceed its losses.  *See*, *e.g.*, *In re Heckmann Corp. Sec. Litig.*, No. C.A. 10-378-LPS-MPT, 2013 WL 2456104, at *8, 14 (D. Del. June 6, 2013) (superiority requirement "easily satisfied" in 10(b) cases where individual investors suffer damages "too small to justify a suit against a large corporate defendant").

Accordingly, common questions predominate for settlement purposes, further supporting final certification of the Class for settlement purposes.

## V.    NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS

Notice of the proposed Settlement to the Class, as approved by the Court in the Preliminary Approval Order (ECF No. 78), satisfied Rule 23's requirement of "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

The Claims Administrator mailed 75,552 Notices to potential Class Members, posted the Internet Notice and Proof of Claim form on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines, and published the Summary Notice in both *The Wall Street Journal* and *Investor's*

*Business Daily* as well as on *PR Newswire*. *See* Hasson Decl. Ex. 3 (Segura Decl.) ¶¶ 12-16. Thus, notice has been given to the Class as required by the Preliminary Approval Order.

Both the substance of the Internet Notice and the means of dissemination satisfied these standards. The Court-approved notice included all the information required by Rule 23(c)(2)(B) and the PSLRA, including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Settling Parties' reasons for proposing the Settlement; (vi) the attorneys' fees and costs sought, including the requested reimbursement of time to Lead Plaintiff; (vii) how to opt out of the Class; (viii) how to object to the Settlement, Plan of Allocation, requested attorneys' fees or expenses, or the proposed Lead Plaintiff reimbursement; and (ix) the binding effect of a judgment on Class members. *See* ECF No. 66-7.

This combination of individual first-class mail to all Class members who could be identified with reasonable effort, supplemented by notice in appropriate, widely circulated publications, transmitted over the newswire, and posted on the internet, was "the best notice practicable under the circumstances." Fed. R. Civ. P. 23 (c)(2)(B); *see In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x. 815, 816 (3d Cir. 2010) (describing notice combining mail to known class members and publication in *Investor's Business Daily* and over newswire); *Zimmer Paper Prod.,*

*Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause").

The notice program here readily satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable" as it "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). Clearly, the notice program was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the notice given to the Class satisfies due process and Rule 23.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) grant final approval of the Settlement; (ii) approve the Plan of Allocation; (iii) grant final certification of the Class for settlement purposes; and (iv) enter the Judgment in the form attached as Exhibit C to the Stipulation (ECF No. 66-6).

Dated: April 28, 2022                    Respectfully submitted,

                                         /s/ Richard Elem
                                         _____

                                         Jan Meyer
                                         Richard Elem
                                         **LAW OFFICES OF JAN MEYER &
                                         ASSOC., P.C.**
                                         1029 Teaneck Road
                                         Second Floor
                                         Teaneck, New Jersey  07666
                                         Tel: (201) 862-9500
                                         Email: jmeyer@janmeyerlaw.com
                                                 relem@janmeyerlaw.com

                                         *Liaison Counsel for Lead Plaintiff and the
                                         Settlement Class*

                                         **BERNSTEIN LIEBHARD LLP**
                                         Stanley D. Bernstein
                                         Laurence J. Hasson (admitted pro hac vice)
                                         Joseph R. Seidman, Jr. (admitted pro hac
                                         vice)
                                         10 East 40th Street
                                         New York, NY  10016
                                         Telephone: (212) 779-1414
                                         Facsimile: (212) 779-3218
                                         bernstein@bernlieb.com
                                         lhasson@bernlieb.com
                                         seidman@bernlieb.com

                                         *Lead Counsel for Lead Plaintiff and the
                                         Settlement Class*

                                         **POMERANTZ LLP**
                                         Jeremy A. Lieberman
                                         Brian Calandra
                                         600 Third Avenue, 20th Floor
                                         New York, New York 10016
                                         Telephone: (212) 661-1100

Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
bcalandra@pom.law

*Additional Plaintiffs' Counsel*